UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MARK KAPITI,

                        Plaintiff,

   -     against    -

RAYMOND W. KELLY, in his official capacity
as Commissioner of the New York City Police
Department, PROPERTY CLERK, New York
City Police Department, and The CITY OF NEW
YORK,

                        Defendants.

-----------------------------------------------------------x

Docket No.:  07 Civ. 3782
(RMB) (KNF)

**Hon. Kevin N. Fox  (M.J.)**

## MEMORANDUM OF LAW OF PLAINTIFF IN OPPOSITION TO DEFENDANTS' MOTION TO UNSEAL CRIMINAL RECORDS

### PRELIMINARY STATEMENT

Plaintiff Mark Kapiti submits this Memorandum of Law in opposition to the letter motion of defendants seeking an order, pursuant to N.Y. Crim. Proc. L. § 160.50, unsealing the police, criminal court and District Attorney records generated in connection with Mr. Kapiti's May 15, 2006 arrest for "Unlawfully Dealing with Fireworks".  Incident to that arrest, defendants seized and ultimately disposed of Mr. Kapiti's vehicle – a 2006 Acura MDX leased from Honda Financial Services ("Honda Financial")  – only three months after the arrest, without providing Mr. Kapiti with a prompt post-seizure retention hearing as

required by the Due Process Clause and articulated by the Court of Appeals of the Second Circuit in *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), *cert. denied*, 539 U.S. 969 (2003) ("*Krimstock I*"), and in subsequent decisions.  *See Jones v. Kelly*, 378 F.3d 198 (2d Cir. 2004) ("*Krimstock II*"); *Krimstock v. Kelly*, 2005 U.S. Dist. LEXIS 43845 (S.D.N.Y. Dec. 2, 2005) (Mukasey, J.) ("the *Krimstock II* remand"); *Krimstock v. Kelly*, 464 F.3d 246 (2d Cir. 2006) ("*Krimstock III*"); *Krimstock v. Kelly*, 506 F. Supp. 2d 249 (S.D.N.Y. 2007) (" the *Krimstock III* remand").

As demonstrated below, plaintiff cannot begin to meet the onerous burden imposed by CPL § 160.50 for unsealing criminal records.  Plaintiff has failed to demonstrate that the records it seeks are legally or factually relevant to the issues herein or even likely to exist, let alone that there are "compelling circumstances" warranting the drastic relief requested.  Accordingly, plaintiff's motion should be denied.

## FACTS

The facts relevant to this motion have already been set forth by Mr. Kapiti, under oath, in his Verified Complaint, filed May 8, 2007. They are summarized below to the extent necessary to address the issues raised by plaintiff's motion.

***The initial seizure*:** According to the criminal information, Mr. Kapiti was observed "placing fifteen (15) boxes inside the cargo compartment of a 2006 Acura SUV . . . [which] contained . . . fireworks in excess of five hundred dollars . . .." A copy of this criminal court document, previously produced to the defendants by plaintiff, is annexed to the accompanying Declaration of Steven L. Kessler as Exhibit "A". Mr. Kapiti was charged with two misdemeanors and a violation, all relating solely to the fireworks.

Consistent with the Verified Complaint, in which Mr. Kapiti states under oath that "[t]he seized vehicle . . . was parked at the time of the arrest" (Verified Complaint ¶ 28), the criminal information does not allege that Mr. Kapiti was observed using his vehicle to transport fireworks. Indeed, the charges allege only that Mr. Kapiti was "dealing with fireworks". *See* Exhibit "A". In fact, as the information makes clear, Mr. Kapiti's car was *parked in front of his own house* at the time of the arrest – hardly proof of transportation.

3

***The Property Clerk's defective invoice***: In light of the specificity and limited scope of the criminal charges, it is remarkable that, in the section of the Property Clerk's Motor Vehicle/Boat Invoice ("the Invoice") for Mr. Kapiti's Acura entitled "Remarks" , where it must be "[b]riefly explain[ed] why vehicle was taken into custody", the clerk typed in: "AT TPO DEFT WAS TRANSPORTINGI [sic]  ILLEGAL FIREWORKS FROM PENNSYLVANIA INTO NEW YORK CITY".   A copy of the Invoice is attached to the Kessler Declaration as Exhibit "B".

Adding to the confusion is the fact that the first eight letters of the word "TRANSPORTINGI" are X-ed out, but not the remainder of the word (which would read "TINGI") or the sentence.  Thus, the form fails to set forth the Property Clerk's basis for claiming that fireworks previously allegedly located in Pennsylvania came to be found in New York City.

The cross-outs suggest that the clerk initially typed in the word "transporting" on the assumption that the seized vehicle met the statutory standard for "having been used as a means of committing crime or employed in aid or furtherance of crime", as the law requires.  *See* N.Y. City Admin. Code § 14-140(b).

4

Then, apparently noticing that there were no allegations of transportation in the criminal information, the clerk partially deleted the word, but forgot to substitute another verb indicating what illegal act Mr. Kapiti was allegedly committing with the car.  It therefore appears that, at best, the Property Clerk's basis for taking custody of and retaining plaintiff's vehicle was not supported by the underlying criminal allegations, and, at worst, that there was no articulated basis at all for its retention.  Significantly, the Invoice indicates that the seized vehicle was being held for "Forfeiture", not as arrest evidence.  Verified Complaint ¶ 30; Ex. "B".

*Plaintiff requests a* **Krimstock** *hearing***:** On May 23, 2006, immediately upon receiving notice of his right to a *Krimstock* retention hearing, plaintiff went to a location designated by the defendants and filed a claim to the seized vehicle requesting its release and return.  Plaintiff also filed a request for the retention hearing.  Verified Complaint ¶ 31.

A Petition and Notice of Hearing ("the Notice") confirms the seizure of the vehicle, the invoicing of the seizure by the Property Clerk, and defendants' receipt of Mr. Kapiti's request for a retention hearing.  See Kessler Decl. Ex. "C".  The Notice set the hearing for June 5, 2006, at 2:00 p.m., at 40 Rector Street, New York County.  The Notice is signed by a Gina Klein, on behalf of the "New York

City Police Department Legal Bureau, Civil Enforcement Unit".  Id.  See Verified

Complaint ¶ 32.

The Notice further confirms, as the Invoice indicated, that Mr. Kapiti's

vehicle is being held for potential forfeiture "as the alleged instrumentality of a

crime, pursuant to section 14-140," not as arrest evidence.  Kessler Decl. Ex. "C".

It is therefore unclear why the Notice includes the following paragraph: "In cases

in which the District Attorney has determined that the vehicle is needed as

evidence in a criminal proceeding, including any appeals in such proceeding, the

hearing may not be held during the period the vehicle is so needed."  Id.

***Defendants' covert efforts to deprive plaintiff of the requested* Krimstock**

***hearing*:** The documentation on this matter clearly evidences defendants' strategy

of ensuring that, despite the provisions of the Notice guaranteeing a prompt

retention hearing, the hearing would never be held.  Apparently, during this

period, the NYPD Property Clerk's Legal Bureau had unilaterally decided to carve

out a loophole from *Krimstock*'s mandate of providing a prompt post-seizure

hearing to *all* claimants from whom a vehicle is seized pursuant to section 14-140.

*See, e.g., Ford Motor Credit co. v. Louie*, 44 A.D.3d 315, 843 N.Y.S.2d 329 (1st

Dep't 2007) (in dispute with same underlying facts during same time period as

case at bar, City returned lessee's vehicle to lessor without providing retention hearing or commencing forfeiture proceeding).

In an effort to reduce the OATH hearing docket, defendants apparently instituted an unwritten policy of denying vehicle lessees the due process protections of a prompt retention hearing and the right to contest a filed civil forfeiture action. Defendants did this end-run around the Second Circuit's rulings by contacting leasing companies as soon as a lessee filed a request for a *Krimstock* hearing, 'notifying' the lessor that the lessee had breached the provision of the lease declaring a default if the vehicle is seized by a governmental authority (regardless of the outcome of that seizure), and offering to hand over the vehicle to the leasing company before the hearing was held. Apparently aware of the high-stakes game they were playing, defendants would seek in exchange for the vehicle's return a release and hold harmless agreement from the lessor in an attempt to insulate defendants from liability to the lessee for constitutional and other violations.

This is what occurred here. Within a week of receiving Mr. Kapiti's request for a *Krimstock* hearing, defendants had already managed to negotiate and execute a deal with Honda Financial for the return of the car to the lessor. A copy of the Release and Hold Harmless Agreement, executed by Honda Financial on May 30,

7

2006 – five days before Mr. Kapiti's scheduled *Krimstock* hearing – is attached to the Kessler Declaration as Exhibit "D".  In the Hold Harmless Agreement, Honda Financial further promises that it "will not release this vehicle to the customer nor any relatives or friends of our customer without your consent."  Id.  This agreement is confirmed by an entry dated June 6, 2006, on a computer printout entitled "CEU [Civil Enforcement Unit] Voucher Tracking System", which states: "HONDA finance will take possession.  HONDA signed HH [Hold Harmless]. File to basket for approval." (the "CEU Printout").  A copy of the CEU printout is attached to the Kessler Declaration as Exhibit "E".   After execution of this agreement, Honda refused to accept further lease payments from the plaintiff.

Thus, five days *before* the scheduled *Krimstock* hearing, unbeknownst to Mr. Kapiti, the defendants had already contracted away the property right the hearing was intended to protect – Mr. Kapiti's right to the possession, use and enjoyment of the seized vehicle during the pendency of the forfeiture proceedings. Verified Complaint ¶¶ 35-36.

*Defendants' last-minute, unilateral cancellation of plaintiff's* **Krimstock hearing**: On June 5, 2007, as plaintiff was preparing to travel to the hearing, he received a telephone call from an agent of the defendants informing him that the hearing had been canceled and would not be rescheduled and that therefore there

8

would be no purpose for plaintiff to travel to the hearing location.  In fact, the

information provided had been accurate and the hearing had been canceled.

Defendants' letter motion concedes that it canceled the hearing.  Hazan Ltr. at 2.

No written notice of the cancellation was ever provided.  Plaintiff was not

informed of the reason for the cancellation, nor was he given an opportunity to

contest the cancellation.  Verified Complaint ¶¶ 33-34.

***Defendants' attempt to change the basis for the retention of plaintiff's***

***vehicle***:  In the course of this litigation, defendants have stated that, although

agreements were signed by Honda Financial for the return of plaintiff's car prior to

the scheduled *Krimstock* hearing, the vehicle was not physically returned to the

lessor at that time.  Defendants have further stated that the hearing was canceled

upon notification from the District Attorney's office that the vehicle was needed as

evidence in the criminal case against Mr. Kapiti.  This claim appears to be

confirmed by the CEU Printout entry for June 5, 2006, which states "Awaiting

DAR [District Attorney's Release].  ADA Rita Benevich wants car for evidence,

will call when released. . .."  See Kessler Decl. Ex. "E".

Defendants' reliance on an 'arrest evidence' designation as a basis for

denying Mr. Kapiti a prompt retention hearing in accordance with *Krimstock* is

presumably grounded upon the internal policy referenced in the Notice and quoted

9

above, providing that, if the property is needed as arrest evidence, "the hearing may not be held during the period the vehicle is so needed." Kessler Decl. Ex. "C", at 2.

Defendant's position is contradicted by the record. First, it conflicts with the CEU Printout itself, which specifically indicates, in the Field marked "Hearing Disp.": "NEEDED BY DA AS EVIDENCE – NO". Kessler Decl. Ex. "E", at 1.

Second, defendants' own procedures for holding property as arrest evidence were not followed. While *Krimstock III*, which held that claimants whose vehicles are held as arrest evidence are entitled to a hearing, applies only to seizures after September 15, 2006, *Krimstock II*, *supra*, decided August 5, 2004, and the *Krimstock II* remand, decided December 2, 2005, were both in effect during the period of the seizure and retention of Mr. Kapiti's car. The *Krimstock II* remand laid out the then-current rules for designating property as arrest evidence, providing, in pertinent part:

> After the District Attorney receives the notice [of a request for a *Krimstock* hearing], the District Attorney shall respond *in writing* to the Police Department *so that such response is received prior to the date of the scheduled hearing*, that either (I) the vehicle is needed as potential evidence in a criminal proceeding, or (ii) the vehicle is not so needed. If the District Attorney responds that the vehicle is so needed, then the OATH hearing will not be held until the conclusion of the criminal proceeding for which the vehicle is needed as

evidence . . ..  The Police Department will forward a copy of the District Attorney's response *to the claimant and the OATH*.

*Krimstock II* remand, 2005 U.S. Dist. LEXIS 43845, at *8 to *9 (emphasis added).

Here, there is no evidence that the District Attorney provided written notice that it needed plaintiff's vehicle as arrest evidence at any time, let alone prior to the scheduled date of plaintiff's noticed *Krimstock* hearing.  Indeed, the entry on the CEU Printout is dated the *same day* as the hearing which, under the applicable rules, would be too late even if it were in writing.  Certainly, nothing from the D.A. was served on the plaintiff prior to the hearing or, indeed, at any time in the proceeding or since.  Nor is there anything in the CEU file turned over to plaintiff by defendants.  Further, the August 16, 2006 entry on the CEU Printout indicates that on or about that date, CEU received a *District Attorney's release*, thus conclusively establishing the the car was not needed as arrest evidence.  Indeed, it is beyond comprehension how a car could be needed as evidence to prove a charge of "dealing with fireworks."  In any event, the CEU Printout entry noted above makes it clear that the formal status of the retention of the vehicle as "held for forfeiture" – and for no other purpose – never changed from the time of seizure until its return to Honda Financial.

Thus, the entire 'arrest evidence' incident, rather than providing a legitimate basis for defendants' continued retention of plaintiff's vehicle and unilateral cancellation of plaintiff's scheduled *Krimstock* hearing, suggests a sham transaction manufactured in a vain attempt to bolster defendants' otherwise unsupportable denial of plaintiff's constitutional rights.

***Defendants' unauthorized and covert return of plaintiff's vehicle to Honda Financial***:  After defendants' cancellation of his OATH hearing, plaintiff retained counsel to assist him in securing the release and return of the seized vehicle.  Plaintiff's prior counsel contacted both Honda and the defendants on numerous occasions, orally and in writing, but was unsuccessful in securing the return of the seized vehicle to plaintiff.  See Verified Complaint ¶ 37; Kessler Decl. Ex. "E", at 1 (CEU entry dated 9/21/06 regarding efforts of plaintiff's prior counsel to secure return of vehicle); Id. Ex. "F" (copies of correspondence from plaintiff's prior counsel to Honda).   Upon information and belief, on October 13, 2006, despite plaintiff's diligent efforts, the seized vehicle was sold at auction, resulting in a deficiency balance of $5,817.99, which Honda then took steps to recover from plaintiff.  Verified Complaint ¶ 38.

***Plaintiff's acquittal, after trial, on all charges***: On December 14, 2006, plaintiff was acquitted of all criminal charges in connection with his May 15, 2006

12

arrest for allegedly "dealing with fireworks". Verified Complaint ¶ 39. A copy of the Certificate of Disposition is attached to the Kessler Declaration as Exhibit "G". See also Kessler Decl. Ex. "E", at 1 (12/19/06 entry, stating "Confirmed w/ADA Benevich that the D was brought to trial and was acquitted. . ..")

Even treating defendants' secret deal with Honda as a "claim" by Honda to the car, defendants were required by statute to retain the vehicle until the conclusion of the criminal proceedings:

> d. Disputed ownership. If any claim to the ownership of such property or money shall be made on oath before the judge, by or in behalf of any other persons than the person arrested, and such accused person shall be held for trial or examination, such property or money *shall remain in the custody of the property clerk until the discharge or conviction of the person accused and until lawfully disposed of*.

N.Y. City Admin. Code § 14-140(d) (emphasis added).

Had defendants complied with their own regulations, the vehicle would have been in the possession of the Property Clerk in December 2006 and would have been available to be returned to Mr. Kapiti upon his acquittal on the criminal charges, as also required by statute. *See* N.Y. City Admin. Code § 14-140(c) (providing for the return of seized property if "the judge of the criminal court shall be satisfied from the evidence that the person arrested is innocent of the offense charged . . ..")

13

As a result of the foregoing violations by the defendants, plaintiff incurred damages, including payments to Honda, lost initial payments under the lease, payments to prior counsel in an attempt to recover the vehicle, costs of substitute transportation, and costs of insuring a non-existent vehicle.  Further, because the disposition of the vehicle was listed as a 'repossession' on plaintiff's credit history, his credit has been irreparably damaged and he has been unable to qualify for financing on another vehicle to this day.

# ARGUMENT

## POINT I

### DEFENDANTS CANNOT BEGIN TO MEET THEIR BURDEN ON A MOTION TO UNSEAL CRIMINAL RECORDS

Defendants have failed to properly articulate, let alone satisfy, their burden on this motion. Even the nature of the relief requested is wrong. Defendants seek an Order "compel[ing] plaintiff to produce an executed unsealing release, pursuant to New York Criminal Procedure Law § 160.50." Hazan Ltr. at 1. No authority is provided for ordering a former defendant to execute an unsealing release, and this office can find none.

In the caselaw relating to unsealing of criminal records, the relief sought is not an order compelling a party to execute a release, but directing the court to unseal the records. Perhaps defendants have avoided this body of law because to invoke it here would raise the far more serious issue of a federal court directing a state court to perform an act reserved by statute to the state court's discretion. Certainly, defendants cite no authority for *that* result.

Defendants' attempt to invent a new kind of motion should be rejected, particularly because defendants have also invented a new burden of proof to accompany their invented motion. According to defendants, their motion should

be granted because "relevance for the purposes of discovery is an extremely broad concept." Hazan Ltr. at 3 (citation omitted). Defendants' motion herein, unlike the motion in their cited case, is not one to compel discovery; it is a motion to unseal records. Plaintiff has no issue with defendants' characterization of the scope of discovery under the Federal Rules of Civil Procedure, but those rules are not the basis for the pending motion.

Defendants' avoidance of the law relating to the unsealing of records is not surprising, given the burden imposed on parties moving for such relief. As construed by the New York Court of Appeals, Crim. Proc. L. § 160.50, by its terms, permits unsealing of records in three circumstances only: (1) where requested by a prosecutor in a marijuana prosecution where the defendant requests and adjournment; (2) "to a law enforcement agency if justice requires that such records be made available to it" or (3) to agencies that issue gun licenses. *See Matter of Hynes v. Karassik*, 47 N.Y.2d 659, 663, 419 N.Y.S.2d 942, 944-45 (1979). Defendants do not claim entitlement to relief on any of these statutory bases.

The Court of Appeals has also suggested that in the context of attorney disciplinary proceedings, under "extraordinary circumstances", it is possible that

records could be unsealed pursuant to the court's "inherent authority over records." *Hynes*, *supra*. This power, however, is exceedingly limited:

> Such discretionary power may be invoked . . . upon a compelling demonstration, by affirmation, that without an unsealing of criminal records, the ends of protecting the public through investigation and possible discipline of an attorney cannot be accomplished.

*Matter of Dondi*, 63 N.Y.2d 331, 338, 482 N.Y.S.2d 431, 435 (1984).

Defendants do not allege that their motion meets this standard either. First, this is not a disciplinary proceeding. Second, plaintiff's vague general complaints of "severe prejudice" in their ability to present a defense hardly constitute the kind of extraordinary circumstances and public interest contemplated by the case law under Crim. Proc. L. §160.50.

Further, as discussed below, were a lesser burden to somehow apply, defendants could not satisfy that either, as they have failed to articulate a valid legal or factual basis for seeking the records allegedly contained in the criminal files sought herein.

## POINT II

## DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT THE RECORDS SOUGHT WOULD BE RELEVANT TO A VIABLE LEGAL DEFENSE, LET ALONE SUPPORT THEIR CLAIM OF 'SEVERE PREJUDICE' IF THE RECORDS ARE NOT UNSEALED

***Summary of defendants' argument***:  The linchpin of defendants' argument is that the sealed criminal records must be made available to them so that they can review the entire file that was allegedly available to the NYPD Property Clerk's Legal Bureau on June 5, 2006, the date Mr. Kapiti's *Krimstock* hearing was scheduled to be held until it was unilaterally canceled by defendants.  Under defendants' theory, once they have these alleged documents – in fact, as defendants have conceded, there is no proof that the file contains or ever contained *any* documents other than those already in the parties' possession – they will have a chance to recreate the hearing that never took place and establish that, if it had taken place, they would have prevailed.  Having prevailed, defendants would have been awarded rightful temporary possession of plaintiff's vehicle.  Thus, defendants argue, Mr. Kapiti was actually in no worse position without the hearing than he would have been with one, thereby rendering his damages 'nominal' in nature.  In short, defendants claim that the non-availability of Mr. Kapiti's criminal file is preventing them from mounting this potentially dispositive defense.

18

As discussed below, the building blocks of defendants' argument cannot withstand even modest scrutiny.

**_Mr. Kapiti's property interest in the vehicle_:** Defendants challenge Mr. Kapiti's property interest in the vehicle. Indeed, this is the crux of their entire argument, from their claim that plaintiff lacked standing to challenge the seizure of the vehicle to the contention that, had they prevailed at the _Krimstock_ hearing, "the car would have been returned to Honda".

Defendants contend that "plaintiff was not entitled to a due process hearing because, amongst other reasons, at the time the vehicle was released to Honda he did not have a property interest in the vehicle." Hazan Ltr. at 2. This contention is so vague and slippery that it is almost sanctionable in and of itself.

To the extent that defendants are claiming, as they have throughout this litigation, that a lessee lacks standing to seek the return of a seized vehicle at a _Krimstock_ hearing, defendants are wrong. As a matter of constitutional law, due process protection extends to "any significant property interest." _Fuentes v. Shevin_, 407 U.S. 67, 876 (1972). A leasehold is a property right, and there is no question that rights conferred by a lease are entitled to constitutional protection. _See_ 42 U.S.C. § 1982 (recognizing the constitutional right "to inherit, purchase, _lease_, sell, hold and convey real and _personal property_") (emphasis added).

19

Indeed, a primary purpose of the right to a prompt post-seizure hearing enforced by the Second Circuit in *Krimstock* is to "protect [the] *use and possession* of property from arbitrary encroachment". *Krimstock I*, 306 F.3d at 53 (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993)). It is the "[d]eprivation of [the] means of transportation for [substantial] periods of time [that] requires an opportunity to be heard". *Krimstock I*, at 53 (quoting *Lee v. Thornton*, 538 F.2d 27, 32 (2d Cir. 1976)).

The New York Court of Appeals has reached the same conclusion. *See Property Clerk v. Harris*, 9 N.Y.3d 237, 245, 2007 WL 4047394, at **4 (Nov. 19, 2007) (*Canavan* held that "'defendants' – who presumably could be sole owners, co-owners, or merely in lawful possession of a seized vehicle – had a due process right to a hearing") (citing *County of Nassau v. Canavan*, 1 N.Y.3d 134, 144, 770 N.Y.S.2d 277, 285-86 (2003)). Shipping someone's car off to the leasing company – which has no interest in the use and possession of the property and no interest in maintaining such use and possession pending the outcome of the forfeiture proceeding – causes a harm no different than the car's forfeiture to the government, and thus implicates the same due process protections. Indeed, this is precisely why the Second Circuit held in *Krimstock III* that categorizing seized property as arrest evidence still triggers due process concerns. *See Krimstock III*, 464 F.3d at 255 ("given the importance of a vehicle to an individual's ability to

20

work and conduct the affairs of life . . . and the serious harm resulting from the undue retention of a vehicle by the government, some immediate judicial review of the retention is required").

Even at the local level, defendants' position is indefensible. The *Krimstock II* remand which, as noted above, sets forth the rules applicable to the time period in this case, clearly states that a "claimant of a seized vehicle has the right to a hearing at OATH". It further states:

> 5.    The claimant seeking release of the vehicle at the hearing may be either *the person from whom the vehicle was seized*, if that person was in lawful possession of the vehicle, or the owner if different from such person. Only one person or entity may appear as claimant at the hearing, *and preference shall be given to the registered owner of the vehicle.*

*Krimstock II* remand, 2005 U.S. Dist. LEXIS 43845, at *7.

It is undisputed that Mr. Kapiti is both "the person from whom the vehicle was seized" and "the registered owner of the vehicle." According to *Krimstock II*, therefore, he was the only person or entity qualified to appear at the *Krimstock* hearing for his vehicle. Thus, defendants' position is completely undermined by its own rules – rules promulgated by this Court. In light of the foregoing, defendants' argument lacks a reasonable basis in law or fact.

Defendants, however, attempt to hedge their bets by stating that Mr. Kapiti lacked a property interest in the leased vehicle "at the time the vehicle was

21

released to Honda". Defendants fail to reveal when the vehicle was so released. However, according the CEU Printout, that date was not until mid-August 2006. Mr. Kapiti's *Krimstock* hearing was scheduled for June 5, 2006. Thus, defendants' argument is virtually incomprehensible, although it appears to concede that Mr. Kapiti had a property interest at the time of the scheduled *Krimstock* hearing.

To the extent defendants are contending that the vehicle was properly released to Honda Financial in August 2006 because, at that time, Honda was no longer accepting Mr. Kapiti's lease payments, defendants' contentions are again contradicted by the plain language of their own laws. First, the *Krimstock II* remand provides that, following an OATH hearing, "[a]bsent a timely finding by the OATH judge that the Police Department has met the burden of proof as to the issues at the hearing, the vehicle shall be released *to the claimant* . . .." *Krimstock II* remand, 2005 U.S. Dist. LEXIS 43845, at *7.

Second, Section 14-140 provides that, upon the conclusion of the proceedings and/or a finding that the claimant is not guilty of the crime charged, the court is to order "the property clerk . . . to deliver such property . . . to the accused person, and not any attorney, agent or clerk of such accused person." N.Y. City Admin. Code § 14-140[c]. Simply put, Honda Financial was not the "accused person" and was not permitted to receive the seized vehicle absent their

filing a "claim . . . on oath" and a formal determination that Honda Financial, not Mr. Kapiti, was the appropriate recipient of the vehicle.  Defendants served the roles of judge, jury and executioner – which is precisely the outcome *Krimstock* is designed to avoid.  The key to *Krimstock* is that no property rights may be determined, either on a temporary or permanent basis, absent review from a neutral factfinder.  Mr. Kapiti was never given that right.

    ***Defendants cannot establish, let alone conclusively, that they would have prevailed at plaintiff's* Krimstock *hearing*:** In attempting to describe what their burden would have been at plaintiff's *Krimstock* hearing, defendants again misstate the law and the facts.

    Although defendants have failed to produce a copy of the "Notice of Right to a Retention Hearing" served on the plaintiff and filed with the defendants by the plaintiff on May 23, 2006, there can be no dispute that it was required to contain the specific language set forth in Judge Mukasey's *Krimstock II* remand decision. That notice makes clear that the City's burden at the retention hearing involves proving three issues by a preponderance of the evidence: "(1) whether probable cause existed for the arrest of the vehicle operator; (2) whether it is likely that the City will prevail in an action to forfeit the vehicle; *and* (3) whether it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture." *Krimstock II* remand, 2005 U.S. Dist. LEXIS 43845, at

*7 (emphasis added). The notice is also required to state that "[o]nly one person may appear as claimant . . . [and] priority will go to the registered owner of the vehicle."

To the extent that defendants are arguing – and again it is unclear – that the result of the *Krimstock* hearing would have been the return of the vehicle to Honda Financial, that contention is unsupported by the law, as the car cannot be returned to someone other than the claimant at a proceeding at which only the claimant may appear. See Hazan Ltr. at 2 ("if there had been a hearing, plaintiff would not have prevailed and the car would have been returned to Honda").

Further, defendants' contention that, with the unsealed criminal file in their hands, they will be able to prove that they could have demonstrated at the OATH hearing that Mr. Kapiti was not "likely to prevail in his criminal case" flies in the face of the facts. Mr. Kapiti was *acquitted after a trial*. Presumably, at that trial, the prosecutor had the criminal file and every opportunity to prove the People's case. Defendants fail to explain why the OATH judge would have been more impressed with the 'evidence' than the criminal court judge.

Finally, defendants disregard the fact that the City's burden at an OATH hearing is *conjunctive*; thus *all three* elements must be established. As defendants fail to even theorize how they would have met the third prong of the test, particularly in a case where the claimant was not even *driving* the vehicle, let

24

alone driving in a negligent or reckless manner, defendants have essentially conceded that their entire 'we would have won' argument is a sham. There is simply no way that defendants can conclusively *prove* that they would have won at the hearing. To the contrary, the record overwhelmingly demonstrates that the opposite would have occurred – Mr. Kapiti would have prevailed, just as he did in the criminal case.

In summary, defendants have not met the burden of establishing that the criminal files are even relevant, let alone crucial, to their defense of this case.

## CONCLUSION

For all the foregoing reasons, defendants' motion to unseal criminal records should be denied, together with costs and fees of defending this motion pursuant to 42 U.S.C. § 1988.

Dated:      New York, New York
            January 24, 2008

                              Respectfully submitted,

                              LAW OFFICES OF STEVEN L. KESSLER

                    By:    _Steven L. Kessler_____

                              Steven L. Kessler (SK-0426)
                              *Attorneys for Plaintiff Mark Kapiti*
                              122 East 42nd Street, Suite 606
Eric M. Wagner (EW-4153)      New York, N.Y. 10168
    *On the Memorandum*        (212) 661-1500