UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARK KAPITI,                                                    07 Civ. 3782 (RMB) (KNF)

                Plaintiff,

    -against-

RAYMOND W. KELLY, in his official
Capacity as Commissioner of New York City
Police Department, Property Clerk, New York
City Police Department, and The City of New York,

                Defendants.
------------------------------------------------------------x   **AFFIRMATION IN SUPPORT**

THE CITY OF NEW YORK,

                Plaintiff,

    -against-

AMERICAN HONDA FINANCE CORPORATION
d/b/a HONDA FINANCIAL SERVICES,

                Defendant.
------------------------------------------------------------x

STATE OF NEW YORK   )
                             ) ss:
COUNTY OF NEW YORK )

      MICHAEL A. ROSENBERG, an attorney duly admitted to practice law before the Courts of the State of New York and the Federal Courts, Southern District of New York, affirms the following under penalty of perjury:

    1. I have been retained by the Third-Party Defendant, AMERICAN HONDA FINANCE CORPORATION s/h/a HONDA FINANCIAL SERVICES ("HONDA"). I make this application, pre-answer, for the limited purpose of seeking a dismissal of the Third-Party action

1

and not for purposes of appearing generally herein.

2. I am familiar with the facts and circumstances surrounding this controversy, and have personal knowledge thereof in my capacity as counsel to Third-Party Defendant, HONDA, based upon my own involvement herein and the books, records and files maintained by my client, and the interviews conducted of my client by me. The affidavit of MS. TARA SCHOOLCRAFT submitted in support has been read by me and the same is incorporated by reference.

3. I make this affirmation in support of Third-Party Defendant, HONDA's, application to dismiss the Third-Party complaint on various grounds enunciated and enumerated in Rule 12(b) of the Federal Rules of Civil Procedure.

### A. PROCEDURAL BACKGROUND

4. The Plaintiff, MARK KAPITI, ("KAPITI") commenced his action on or about May 15, 2007 by the service of a Summons and Verified Complaint seeking damages for numerous violations of 42 U.S.C. § 1983. ("Exhibit "A").

5. The Defendants, RAYMOND W. KELLY, PROPERTY CLERK and THE CITY OF NEW YORK, (collectively the "CITY OF NEW YORK") interposed an Answer on or about August 3, 2007. (Exhibit "B").

6. The Defendants, CITY OF NEW YORK, served a Witness Subpoena upon then yet unnamed HONDA on or about October 15, 2007. (Exhibit "C")

7. HONDA served its responses to the Witness Subpoena on or about February 7, 2008 and May 13, 2008. (Exhibit "D").

8. The Defendants, CITY OF NEW YORK, attempted service of its Third-Party action on or about March 14, 2008, almost a year after issue was joined with Plaintiff, KAPITI. (Exhibit "E").

9. The Defendants, CITY OF NEW YORK, filed its defective affidavit of service on or about March 20, 2008. (Exhibit "F").

10. HONDA now moves for dismissal on a number of grounds, including, but not limited to, lack of *in personam*, lack of subject matter jurisdictions and a failure to state a claim upon which relief can be granted.

11. The Court's attention is respectfully called to Exhibit "F" previously annexed, and constituting the Third-Party Plaintiff's affidavit of service which is defective on its face.

### B. ARGUMENTS – THE INSTANT APPLICATION

### I. LACK OF *IN PERSONAM* JURISDICTION

12. HONDA is entitled to rely upon this affidavit of service as to the manner and method of service. Affidavits of service establish, *prima facie*, that service was effectuated or attempted in the manner described therein. *Old Republic Ins. Co. v. Pac. Fin. Servs. Of Am., Inc.,* 301 F.3d 54, 57 (2D Cir. 2002). *Howard Johnson Int'l, Inc. v. Wang,* 7 F. Supp. 2d 336, 339 (S.D.N.Y. 1998), *Acceptance Insurance Company v. Home Medical of America, Inc.,* 2005 WL 3471780 (04 Civ. 9338 WHP).

13. The only prescribed methods of service are those enunciated by statute. (See: F.R.C.P. Rule 4; C.P.L.R. § 311 and B.C.L. § 306). These statutes prescribed the manner and method of service upon a foreign corporation authorized to do business in the State of New York such as HONDA.

14. The Third-Party Plaintiff-Defendants, CITY OF NEW YORK, elected to employ a manner not so prescribed, to wit: "suitable age and discretion". Such service, even if permissible, is only applicable for service upon an individual (F.R.C.P. 4(e)(2)), not a foreign corporation authorized to do business within the State, and requires, under New York law, an

additional mailing of the pleadings. (C.P.L.R. § 308(2)).

  15. The affidavit of service filed with this Court is deficient on its face for the following reasons:

    (a)  The affidavit does not state the Court of record;

    (b)  The affidavit does not recite a case number;

    (c)  The affidavit recites an <u>impermissible method of service</u> upon a foreign corporation authorized to do business within the State of New York;

    (d)  The affidavit does not recite that an additional mailing, was made, even assuming, *arguendo*, that that method of service was permissible;

    (e)  The affidavit does not recite the military status of the person served when attempting service upon an individual; and

    (f)  The affidavit does not indicate whether or not the Process Server held a valid license for such employment if he alleges to be a professional Process Server.

  16. The Court may order a dismissal of the claims against the unserved parties. (*Montalbano v. Easco Hand Tools Inc.*, 766 F. 2d 737 (2d Cir. 1985); *Estate of Ungar v. Palestinian Auth.,* 396 F. Supp. 2d. 376 (S.D.N.Y. 2005)). Such dismissal is warranted here. Service was not effectuated by any means permitted by Federal or State law.

## II. LACK OF SUBJECT MATTER JURISDICTION

  17. While it is recognized that the Court may exercise supplemental jurisdiction, the

Court should not do so where <u>there really is no Federal issue at stake</u>.

    18. Even assuming the validity of the Hold Harmless Agreement upon which the Third-Party Plaintiff, Defendants, CITY OF NEW YORK bases its claim, <u>there is no Federal issue to be determined</u>:

    (a)    There is no Federal law, Constitutional law or Treaty Question underlying this matter (28 U.S.C. §1331);

    (b)    There is no diversity of Citizenship. HONDA is a foreign corporation, licensed to do business within the State of New York, and the Southern District (28 U.S.C. §1332);

    (c)    There has been no finding of damages, against the CITY OF NEW YORK, even though there is a recitation by the Plaintiff that his <u>due process violations</u> entitle him to move more than $75,000; and

    (d)    The subject vehicle is no longer in issue. Plaintiff, KAPITI, makes no claim against HONDA for damages for disposition of the vehicle. Only the CITY OF NEW YORK is authorized to seize a vehicle and hold it for forfeiture. Only the CITY OF NEW YORK, therefore, is in a position to violate a party's constitutional due process and it cannot shield itself by seeking protection from HONDA by the institution

of a Third-Party action.

19. This Court is warranted in finding that <u>there is no subject matter jurisdiction</u> even though the Plaintiff, KAPITI, has sought damages for § 1983 violations. There is no federal question between the CITY OF NEW YORK and HONDA. (*American Cas. Co. of Reading, Pa. v. Heartland By-Products, Inc.,* 2003 WL 740866 (S.D.N.Y., 2003) *Rader v. Mfrs. Cas. Ins. of Philadelphia,* 242 F. 2d 419 (2D. Cir 1957) holding that an action primarily on an indemnification agreement associated with a bond is not an action "on a bond" under § 1352.)

20. The mere fact that federal law might apply (which it does not in the instant matter) is insufficient to establish federal question jurisdiction. The Court must find a complete preemption of State law. (*Ell v. S.E.T. Landscape Design, Inc.* 34 F. Supp. 2d 188, 191 (S.D.N.Y. 1999)).

21. The threshold question in the primary matter before this Court is whether or not Plaintiff, KAPITI, has been deprived of a Federal Constitutional or Federal Statutory right. Based upon the allegation in the Verified Complaint, the answer would appear to be yes. The Plaintiff's complaint is brought pursuant to 42 U.S.C. § 1983 for alleged violations of KAPITI's Fourth, Eighth and Fourteenth Amendment rights.

22. While the complaint asserts specific facts which serve as a basis for a deprivation of constitutional rights, the Third-Party Plaintiff's suit must be dismissed pursuant to Rule 12(b). The Court should not exercise supplemental jurisdiction nearly to hear what is apparently a State Law claim by the Third-Party claim.

23. The Courts have noted that 42 U.S.C. § 1983 have been utilized by Plaintiff's alleging a wide assortment of grievances, some significant and others less so. The Third-Party

pleading presents an extreme example to which a litigant seeks to corrupt the use of the statute. There is no reason for the Third-Party Plaintiff to have involved HONDA in a manner which clearly falls below the federal mandate. The Court should properly dismiss the Third-Party action for lack of subject matter jurisdiction and a failure to state a federal claim.

24. In the words of the Fifth Circuit in *Rehman v. Elverd Independent Sch. Dist.*, 639 F.2d 257, 258 (5th Cir. 1981):

> Federal courts are proper forums for the resolution of serious and substantial federal claims. They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States. Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a workload That taxes their capacity. Each litigant who improperly seeks federal judicial relief for a petty claim forces other litigants with more serious claims to await a day in court. When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly. (See also *Parratt*, 451 U.S. 527 (1981); *Ingraham v. Wright,* 430 U.S. 651 (1977).

25. F.R.C.P. Rule 12(b)(6) authorizes a Motion to Dismiss for "failure to state a claim upon which relief can be granted." Although the Court, in assessing the sufficiency of the pleadings, assumes the truth of all factual allegations and contrues all reasonable inferences in favor of the Plaintiffs, in order to survive a motion to dismiss, "the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action." *York v. Association of the Bar of the City of New York,* 286 F.3d 122, 125 (2d Cir. 2002).

26. Where it appears that the [plaintiff] can prove no set of facts in support of his claim

which will entitle him to relief, the court must grant a motion under F.R.C.P. 12(b)(6). *See Gant v. Board of Education,* 69 F.3d 699, 673-74 (2d Cir. 1995).

27. Here, the Third-Party complaint can offer nothing to state a constitutional deprivation of Plaintiff, KAPITI's rights by HONDA. Instead, the Third-Party Plaintiff asserts a baseless and conclusory action predicated upon an agreement which was clearly designed by the CITY OF NEW YORK to cover instances involving damage to property seized by the CITY and returned to a Third-Party. The notion that HONDA is responsible for the wrongful and intentional acts committed by the CITY OF NEW YORK is without basis in fact or law and is an abuse the Civil Rights statute.

28. Under § 1983, in order to survive a motion to dismiss under F.R.C.P. 12(b)(6), a [third-party] complaint must allege specific facts establishing:

> (1) the conduct complained of must have deprived a person of the rights, privileges or immunities secured by the federal constitution; and
> (2) the conduct complained of must have been committed by a person acting under color of state law.

*(See Parratt v. Taylor,* 451 U.S. 527, 531-535 (1981) overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327 (1986); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-57 (1978)).

29. [Third-Party] Complaints alleging § 1983 violations "must contain specific allegations of fact" since "allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." (*See Hamphreys v. Mager,* 962 F.Supp. 347 (E.D.N.Y. 1997) (*quoting Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir. 1997 (citation omitted).

30. The Second Circuit has repeatedly held [third-party] complaints relying on the civil

rights statutes are insufficient unless they contain some "specific allegations of fact" indicating a deprivation of rights, instead of a "litanty of general conclusions that shock but have no meaning." (*Dewick v. Village of Penn Yan,* 972 F.Supp. 166, 169 (W.D.N.Y. 1997)) (*quoting Barr V. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). See also *Daniels v. City of Binghamton,* 947 F.Supp. 590, 596 (N.D.N.Y. 1996) (although plaintiff's allegations "may state a…[constitutional] violation in form, they fail to do so in substance, since they 'consist [ ] of nothing more than naked assertions, and set [ ] forth no facts upon which a court could find a violation of… capital civil rights…'")(*quoting Martin v. New York State Dept. of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1978)(per curiam)).

31. In the instant third-party matter, the best that the CITY OF NEW YORK can point to is a Hold Harmless Agreement which does not apply to intentional deprivation of Civil Rights, and it certainly cannot point to any conduct by HONDA depriving Plaintiff, KAPITI of any rights or privileges or that HONDA was in any way acting under color of state law.

32. State Courts have been vested with the final say on the interpretation of state law (*See* 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.").

33. In the landmark case of *Erie R.R. Co. v. Tompkins,* Justice Brandeis recited Justice Holmes's words: "[T}he voice adopted by the State as its own … should utter the last word." 304 U.S. 64, 79, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1938).

34. While in diversity cases, under the *Erie* doctrine, "a federal court must attempt to decide the case as the highest court of the state supplying the law would…the same principle

may be applied for the same reasons…the underlying substantive rule involved is based on state law and the states highest court is the best authority on its own law." (*Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed 2d 886 (1967)).

     35.  The best the CITY OF NEW YORK can do is point to a state law contract, void on a number of grounds as the only underpinning for its Third-Party action.  While the contract can be defeated, the appropriate place for its ultimate demise is in the State Supreme Court.  This Court should not be bothered with a matter that does not present a Federal question, nor should the Court seek to hold HONDA responsible for the intentional violation of due process by the CITY OF NEW YORK in its dealings with Plaintiff, KAPITI.  Under the *Erie Railroad* doctrine, in diversity cases, the Federal Courts must apply State judge-made law (common law) on any substantive issue where there is no Federal Statute on point such is the case in the instant matter.

### III.  THE THIRD-PARTY ACTION IS PREMATURE

     36.  Notwithstanding all other infirmities, <u>the Third-Party action is premature</u>.  Even if the indemnification, Hold Harmless Agreement was valid (which it is not), the CITY OF NEW YORK has jumped the gun.  The CITY waited almost one (1) year to commence its Third-Party action.  It should have continued to wait to determine if an adverse outcome obtained.  Instead, however, it went ahead a "muddied the waters" by attempting to serve HONDA.

     37.  New York law provides that under an agreement of indemnification, a claim does not accrue unless and until the indemnified party has made a payment or actually suffered a loss.  (*In Re RMM Records and Video Corp.,* 372 B.R. 603 (S.D.N.Y. 2007), quoting *Pfizer, Inc. v. Stryker Corp.,* 348 F. Supp 2d 131, 150-151 (S.D.N.Y. 2004)).

38. The CITY OF NEW YORK has not yet paid the Plaintiff anything, nor has there been a finding against it, so <u>there is no loss</u>. The right to indemnification, if any, only arises when the claiming party faces a fixed liability, even though it has not yet paid the claim and suffered no damage. (Citing *In Re: RMM Records & Video Corp.* quoting *Pfizer v. Stryker Corp., supra.*).

### IV. THERE IS NO CONSIDERATION FOR THE HOLD HARMLESS AGREEMENT

39. The existence of consideration is a fundamental requisite if there is to be a valid contract. (*Weiner v. McGraw-Hill, Inc.,* 52 N.Y.2d 458 (1982), *Stern v. Espeed, Inc.,* 2006 WL 2741635 (S.D.N.Y. 2006).

40. While HONDA vigorously disputes the validity of the agreement, it certainly disputes any consideration flowing between the CITY OF NEW YORK and itself. HONDA is the "innocent owner" of the subject vehicle. The CITY OF NEW YORK's own rules and policies require that the vehicle be given to only the innocent owner. (New York Administrative Code § 14-140; Property Clerk Rules; Rules of the CITY OF NEW YORK)

41. The Rules above, coupled with the decided case law, together with the opinions and guide lines of this Court's JUDGES LASKER and MUKASEY, required that HONDA must receive the subject vehicle by law and contract. (*Krimstock v. Kelly* 3006 F. 3d 40 (NY 2002); *Property Clerk v. BMW Financial,* 293 A.D. 2d 378, 740 NYS 2d 608 (1st Dept. 2002); *Property Clerk v. Pagano,* 170 A.D. 2d 30 (1st Dept 1997); *County of Nassau v. Patel,* 10 Misc. 3d 1052, 809 N.Y.S. 2d 480 (2nd Dept. 2005)).

42. <u>No consideration passed between these participants</u>. There was neither a benefit to the promisor (HONDA) nor a detriment to the promisee (CITY OF NEW YORK) and therefore,

no binding contract.

## V. THE HOLD HARMLESS AGREEMENT IS A CONTRACT OF ADHESION

43. Notwithstanding its own rules and policies and the case law in HONDA's favor, the CITY OF NEW YORK demanded HONDA sign the Hold Harmless Agreement as a precondition to receipt of the subject vehicle, its own property.

44. In essence, THE CITY OF NEW YORK adopted the posture, "no Hold Harmless Agreement, no vehicle".

45. <u>Such posture was coercive and made the Hold Harmless a contract of adhesion</u>. A contract of adhesion refers to a standardized contract form offered essentially on a "take it or leave it" basis. Such cases offer no real bargaining opportunity and are under such conditions that obtaining the desired result cannot be achieved without acquiescing to the demanded form contract. (See SCHOOLCRAFT aff'd at paragraphs 5 and 6); *Miner v. Walden,* 101 Misc. 2d 814, 422 N.Y.S. 2d 335 (1979)).

46. To be considered unenforceable, as is Hold Harmless Agreement, there must be imposed substantial unfairness on the party of weaker position (HONDA) or because the terms of the agreement are unduly burdensome, oppressive contrary to public policy or unconscionable. (*Aviall, Inc. v. Ryder System, Inc.,* 913 F. Supp. 826, S.D.N.Y. 1996).

47. A further discussion of the Agreement's unconscionability will be had below. However, just as the CITY OF NEW YORK is precluded, as a precondition to the return of a vehicle, demand a general release regarding vehicle's physical condition, it cannot require an "innocent owner" to sign a Hold Harmless Agreement in exchange for something the CITY <u>must</u> give, and the owner must receive, to wit: its property, the subject vehicle.

## VI  THE LANGUAGE OF THE HOLD HARMLESS DOES NOT APPLY TO VIOLATIONS OF 42 U.S.C. § 1983

48. The language of the Hold Harmless Agreement must, as in any other situation, be construed against the draftsman of the agreement (*Jacobson v. Sassower* (1985) 66 NY2d 991, 499 NYS2d 381, 489 NE2d 1283).  This is particularly true as to the contract of adhesion (*Turski v. Chiesa* (1977) 89 Misc. 2d 443, 391 NYS2d 803).  Where there is an inconsistency in verbiage in an instrument, the language must be construed strongly against the drawer of the instrument. (*Kalb v. Chemical Bank New York Trust Co.* (1969) 62 Misc. 2d 458, 309 NYS2d 502).  As a corollary to the general rule, a contract drawn by one party must be construed, if its meaning is doubtful, most favorably to the other party.  (*Moran v. Standard Oil Co.* (1914) 211 NY 187, 105 NE 217).

49. The Hold Harmless Agreement was prepared and drafted by the CITY OF NEW YORK, and it alone is responsible for its content.  (See SCHOOLCRAFT aff'd at paragraph 5).

50. The language as drafted only applies, and is intended to only apply to the <u>release</u> of the vehicle and not to its seizure or the circumstances surrounding the seizure.  Therefore, if the CITY OF NEW YORK failed to give Plaintiff, KAPITI, his due process protections, HONDA is not, and cannot, be held responsible.  To hold otherwise would be void as against public policy and patently absurd.

51. The operative language of the release says that the "Releasor will hold harmless…Releasee for any damage….in connection with <u>property</u> vouchered under Property Clerk... invoice # B103699" [emphasis supplied].  <u>Violations for the seizure, and in particular, due process violations leave the CITY OF NEW YORK solely responsible to the Plaintiff.</u>

**VII THE CITY OF NEW YORK FAILED TO**

## FULFILL A MATERIAL TERM OF
## THE HOLD HARMLESS AGREEMENT

52. It cannot be disputed that the CITY OF NEW YORK seized Plaintiff, KAPITI's, vehicle and held it for forfeiture. Such is a matter of public record. (Exhibit "F") Further, it cannot be disputed that Plaintiff, KAPITI's OATH hearing scheduled for June 5, 2006 was abruptly cancelled and not rescheduled (Exhibit "G").

53. The language of the Hold Harmless Agreement further says "…whereas the subject vehicle has been seized and whereas Releasee (CITY OF NEW YORK) intends to commence, or has commenced, a forfeiture action to obtain legal title to the subject vehicle…"

54. The truth is, the CITY OF NEW YORK, neither proceeded with a forfeiture action, nor did it reschedule and make available to Plaintiff, KAPITI, his required hearing on the probable validity of the detention and seizure of the subject vehicle in the first instance. Further, the CITY OF NEW YORK could never obtain title to the vehicle because that subject vehicle was the lawful property of the innocent owner, HONDA.

55. As a consequence of the CITY OF NEW YORK's failure to proceed with the forfeiture action, the CITY failed to comply with a material representation of the Hold Harmless Agreement.

56. Under New York law, <u>when one party commits a material breach of the terms and conditions of a contract, the other party is relieved, or excused, from its further performance obligations</u>. (*Westchester v. Hunt Health Systems, Ltd.,* 330 F. Supp 2d 383, S.D.N.Y., 2004)

## VII INDEMNIFICATION DOES NOT APPLY TO
## THE INTENTIONAL TORTS AND, IN PARTICULAR,
## DUE PROCESS VIOLATIONS

57. <u>A party to an indemnification agreement may not seek indemnification against

14

claims for their own intentional acts.  Claims involving intentional torts (such as due process violations) require a finding of fault precluding indemnification.  (*Campers' World Intern, Inc. v. Perry Ellis Intern, Inc.,* 2002 WL 1870243 (S.D.N.Y.)).

58.  "The CITY intentionally violated the Plaintiff's Due Process rights under Section 42 U.S.C. 1983 and 'actually participat[ing]… in the wrongdoing cannot receive the benefit of' indemnification by a non-participating Third Party."  (*Campers' World,* supra quoting *Sabater v. Lead Indus. Ass'n, Inc.,* 2001 WL1111505 (S.D.N.Y. 2001)).

59.  The right to indemnity may arise either by contract or by operation of law, but is not available to one who violates another's civil rights.  (*Anderson v. Local Union No. 3, Intern. Broth. Of Elec. Workers* 582 F. Supp. 627; PROSSER, *The Law of Torts §50; Restatement (Second) of Torts § 886A(3); Sybertsen v. Great American Ins. Co.,* 267 A.D. 2d 854 (3rd Dept 1999).

60.  Not only is indemnification unavailable under these circumstances (Civil Rights and Due Process violations), but to find otherwise would be to validate an otherwise unconscionable agreement.  The CITY OF NEW YORK would then be at liberty to seize vehicles with impunity and happily violate others' constitutional protections under the mistaken belief that the car companies would pay for such violative conduct.

## VIII THE CITY OF NEW YORK VIOLATED ITS OWN PROTOCOLS

61.  The CITY OF NEW YORK has codified its protocols regarding disposition of vehicles seized and held for forfeiture (NYC Admin. Code § 14-140, Rules of the CITY OF NEW YORK and PROPERTY CLERK'S Rules).  Those rules and protocols have since been expanded by the Second Circuit, case law and the guidelines enunciated by this very Court.

62. It cannot be denied that the subject vehicle leased by Plaintiff, KAPITI, was subject to forfeiture (Exhibits "F" and "G" previously annexed). Nor can it be denied that the subject vehicle was returned to HONDA in exchange for a Hold Harmless Agreement within days of Plaintiff, KAPITI's schedule OATH hearing.

63. The return of the subject vehicle to HONDA at a time when an OATH hearing was scheduled, however, violated the CITY OF NEW YORK's own protocols:

    (a)    When there is competing claims for property (vehicle) subject to forfeiture, the CITY should properly commence a "stakeholder" proceeding. (*Alexander v. Cortes,* 140 E. 3d 406 Exhibit "H");

    (b)    Use and occupancy (lease) with the right to purchase the subject vehicle is a constitutionality protected "interest" and required either the stakeholder proceeding, an OATH hearing, or the commencement of a forfeiture proceeding for judicial determination (*Alexandre,* supra at 411);

    (c)    A failure to follow CITY policy is not a defense to a § 1983 claim for damages and legal fees (*Alexandre,* supra, *Butler v. Castro,* 896 F. 2d 698, 700 (2d Cir 1990) "The existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results

from the operation of established state procedures").

(d) OATH Hearings are mandatory. (*Krimstock,* supra.) JUDGE MUKASEY of this very Court established guidelines for the conduct of those hearings, which hearings cannot be denied. It is clear, under *Krimstock*, if the CITY provides a prompt hearing, but fails to meet its burden at the hearing, the seized vehicle <u>must</u> be returned to the claimant, *pendente lite (*the forfeiture proceeding)*;*

(e) Therefore, a hearing <u>must</u> be had for the probable validity of the "stop" and "detention" to be tested. The CITY cannot circumvent this requirement at the expense of the Plaintiff's due process protections. The CITY has argued that the Plaintiff would not have prevailed at the OATH hearing. Such is pure conjecture and wishful thinking because no hearing was ever held.

(f) The CITY OF NEW YORK had many options, but chose to return the subject vehicle to HONDA. It did so at its peril. It could have, and most probably should have:

    (i) conducted the OATH hearing on June 5, 2006 as scheduled;

    (ii) conducted the OATH hearing after June 5, 2006, even though the subject vehicle was released to HONDA;

    (iii) commenced a stakeholder action for declaratory relief; or

    (iv) commenced a forfeiture action for judicial determination.

64. The CITY OF NEW YORK chose none of its own policy options then available. Instead it returned the subject vehicle to HONDA for the extracted Hold Harmless Agreement.

65. The CITY OF NEW YORK's official policy is not to release the subject vehicle without a <u>Court Order</u>. It's failure to adhere to its own stated policy, *ipso facto*, subjects it to attack, including claims for § 1983 violations, without recourse against HONDA.

66. For the reasons stated above, and for the arguments presented herein, the Court must find that the Third-Party Plaintiff lacks *in personam* and subject matter jurisdictions and that the Hold Harmless Agreement is invalid and void as against public policy, thereby dismissing the Third-Party complaint against HONDA in all regards.

WHEREFORE, your affirmant respectfully prays that an Order be made and entered granting the Third-Party Defendant, AMERICAN HONDA FINANCE CORPORATION, s/h/a HONDA FINANCIAL SERVICES the following relief:

  (a) granting the Third-Party Defendant's application in all respects;

  (b) granting the Third-Party Defendant's application and dismissing the Third-Party Summons and Complaint for lack of *in personam* jurisdiction;

  (c) granting the Third-Party Defendant's application and dismissing the Third-Party Summons and

18

      Complaint for lack of subject matter jurisdiction;

 (d)  granting the Third-Party Defendant's application and dismissing the Third-Party Summons and Complaint for failure to state a valid cause of action upon which relief can be granted;

 (e)  granting the Third-Party Defendant's application and dismissing the Third-Party Summons and Complaint and granting such other and further relief as to this Court may seem just, reasonable, and equitable, together with the costs and disbursements of prosecuting the instant application.

Dated: New York, New York
    May 22, 2008

               s/Michael A. Rosenberg, Esq.
               MICHAEL A. ROSENBERG, ESQ. (8770)
               Attorney for Third-Party Defendant
               **AMERICAN HONDA FINANCE CORPORATION**
               122 East 42nd Street, Suite 606
               New York, New York 10168
               (212) 972-3325

  Pursuant to 22 NYCRR 130-1.1a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief, and after reasonable inquiry, the contentions contained in the annexed document(s) are not frivolous.

               s/Michael A. Rosenberg, Esq.

MICHAEL A. ROSENBERG, ESQ.

MICHAEL A. ROSENBERG, ESQ.