purchase agreement, district attorney, ownership, invoice, deprived, random, custody, police department, property interest, termination, City Rule, seized property, renumbered, redeeming, printed

**LexisNexis(R) Headnotes** • Hide Headnotes

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

**HN1** The appellate court must construe a plaintiff's pro se complaint liberally. More Like This Headnote | Shepardize: Restrict By Headnote

Constitutional Law > Procedural Due Process > Scope of Protection

**HN2** Although a plaintiff does not have title to items held by the government, the supreme court has held that he nonetheless acquires an interest in continued possession and use of goods, because a contract entitles him to possession and use of the chattel before transfer of title. Installment payments that a plaintiff makes on an item prior to summary repossession gives rise to a possessory interest in the goods, dearly bought and protected by contract, that is sufficient to invoke the protection of U.S. Const. amend. XIV. More Like This Headnote | Shepardize: Restrict By Headnote

Constitutional Law > Procedural Due Process > Scope of Protection

**HN3** When a meaningful post-deprivation remedy is available at state law, a state employee's negligent deprivation of a prisoner's property is not actionable under 42 U.S.C.S. § 1983. The high court broadened this holding to encompass even intentional deprivations. State law post-deprivation remedies satisfy due process in such cases because, when deprivations of property are effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply impracticable since the state cannot know when such deprivations will occur. More Like This Headnote | Shepardize: Restrict By Headnote

Constitutional Law > Procedural Due Process > Scope of Protection

**HN4** An adequate post-deprivation remedy is a defense to a 42 U.S.C.S. § 1983 due process claim only where the deprivation is random and unauthorized. By contrast, the existence of independent state relief does not defeat a § 1983 claim where the deprivation complained of results from the operation of established state procedures. More Like This Headnote | Shepardize: Restrict By Headnote

Constitutional Law > Procedural Due Process

**HN5** The rules of the City of New York specify procedures for obtaining the release of items held by the property clerk. These rules state that a prisoner whose property is held as arrest evidence may recover it by presenting a release from the district attorney. New York City, N.Y., Rules of the City of New York, tit. 38, § 12-03. Where the property is an automobile, a representative of the owner may obtain release by showing a notarized letter of authorization and proof of ownership. New York City, N.Y., Rules of the City of New York, tit. 38, §§ 12-14 to -17. A lien holder may redeem a vehicle upon submission of a copy of a sales agreement which was signed by the owner and a notarized statement stating said person is in arrears in payment. New York City, N.Y., Rules of the City of New York, tit. 38, § 12-19. A fatal flaw in the city rules is that they provide no notice or procedure for the resolution of disputes concerning the ownership of an automobile prior to its release to a lien

holder.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Constitutional Law > Procedural Due Process > Scope of Protection

**HN6** The system established by the city rules, authorizing the property clerk to release a vehicle without giving notice to the arrestee who holds the voucher for it, and creating no procedure by which prisoners can contest the city's handing over of vehicles to lienholders, does not comport with the requirements of U.S. Const. amend. XIV.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN7** The burden of proving that no genuine factual dispute exists rests on the party seeking summary judgment, and inferences drawn from the evidence proffered must be viewed in the light most favorable to the party opposing the motion.  More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** MARCELIN ALEXANDRE, pro se, Dannemora, NY, for Plaintiff-Appellant.

MORDECAI NEWMAN, Assistant Corporation Counsel, Appeals Division, New York, NY (Paul A. Crotty, Corporation Counsel of the City of New York), for Defendants-Appellees.

**JUDGES:** Before OAKES, MESKILL, and CALABRESI, Circuit Judges.

**OPINIONBY:** CALABRESI

**OPINION:**

[*407] CALABRESI, *Circuit Judge:*

In this action, brought pursuant to 42 U.S.C. § 1983, plaintiff Marcelin Alexandre alleges, among other things, that he was deprived of an automobile and some jewelry without due process of law because these items (which were seized by defendant Robert Cortes, a detective with the New York City Police Department), were not returned to him and he was not notified of the procedures for recovering them. Alexandre further alleges that the City of New York and the New York City Police Department (collectively, the [**2] "City") improperly selected, trained, and supervised Cortes. He therefore seeks compensatory and punitive damages. The United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge*) granted summary judgment in favor of defendants and dismissed the complaint, principally on the ground that Alexandre had adequate state law remedies for the deprivations, and therefore that no federal cause of action for a violation of due process could lie.

Alexandre appeals that ruling, arguing that the post-deprivation remedies available to him were insufficient to satisfy the requirements of due process. We agree that the state law remedies were inadequate with respect to the automobile, and therefore reverse in part. We also conclude that the deprivation of the jewelry may, perhaps, be actionable under § 1983, but that Alexandre's claims concerning these items must be reconsidered by the district court in the light of the 1991 amendments to the Rules of the City of New York. We, therefore, vacate and remand on these claims.

**Background**

For purposes of this appeal, the following facts must be taken as true. In August 1991,

Detective Cortes arrested Alexandre [**3] as a suspect in a robbery. At the time of the arrest, Alexandre was getting into a 1982 Porsche automobile, which Cortes seized. n1 Cortes also confiscated some gold jewelry that Alexandre had in his possession. Later, after Alexandre was taken to the New York City Police Department's 70th Precinct, he was provided with the police department property clerk's ("property clerk" or "clerk") invoices for both the vehicle and the jewelry. Alexandre was subsequently charged with second degree murder, robbery in the first and second degrees, and a variety of lesser offenses. He was convicted in September 1992, and was sentenced on October 22, 1992; he is currently serving his sentence at the Clinton Correctional Facility, a New York State prison.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 According to the police department property clerk's invoice, the car was not involved in any crime, and was taken into custody solely because Alexandre was entering it at the time of his arrest.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

At the time of Alexandre's arrest, title to the Porsche automobile was held [**4] by I&B Business Corporation ("I&B"). Alexandre and his wife were in the process of buying the car pursuant to a purchase agreement with I&B, and had already paid a substantial portion of its purchase price. n2 Upon [*408] payment of the balance, they were to receive title from I&B.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Alexandre alleges that his wife and he owed $ 300 more (on the purchase price of $ 3,400) for the car. Evidence in the record suggest that they may actually have owed $ 1,300. For purposes of this case, however, the discrepancy is irrelevant.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Rather than release the car to Alexandre's wife (the car's co-owner), as she requested, Cortes contacted I&B (the holder of title to the vehicle). On September 3, 1991, Isaal Gerstein, Vice President of I&B, appeared at the 70th Precinct and presented Cortes with the purchase agreement that Alexandre and his wife had executed for the Porsche, along with a notarized letter from Gerstein, on I&B letterhead, stating that because Alexandre and his wife had failed to make all of the required payments under [**5] the purchase agreement, I&B would "take possession of the vehicle and all monies [previously paid on the note] will be forfeited." n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The purchase agreement provided that:

> I hereby agree that in the event that I fail to make any payment or any part of any payment on my loan from you, . . . you are authorized by me and have the right to take said automobile back from me, without the necessity of court order or any judicial process. I further agree that if it becomes necessary for you to

On November 29, 1993, Alexandre received a letter from the law secretary to Administrative Judge Ronald J. Aiello of the New York Supreme Court (in response to a letter Alexandre had sent to that court concerning the district attorney's failure to release the jewelry). The secretary's letter explained that the district attorney had returned one of the pieces of jewelry to its original owner, and had sent the rest back to the property clerk. In December 1993, Alexandre sent a letter to the property clerk requesting information on the procedures for obtaining release of these remaining items. Although it does not appear from the record that Alexandre received a response to that letter, the defendants concede that,

> take said automobile back, you are permitted to do so at any time of the day or night and may enter and remove said car from my property or any other property where I may leave said car.
>
> . . . .
>
> I understand that should it become necessary for you to take back said car and I redeem same by making full payment to you, this payment will include any of your costs for taking back the car.
>
> . . . .
>
> I agree that you are not required to give me any notice before you take said car, and that my failure to make any payment on time according to my loan contract, will be my notice that you have the right to take back the automobile.

Both Alexandre and his wife signed the agreement.

- - - - - - - - - End Footnotes- - - - - - - - - - - - - [**6]

Gerstein then immediately resold the Porsche to Cortes. Cortes kept it for two months and then conveyed it to an unnamed third party. n4

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n4 It is unclear from the record whether Cortes and Gerstein struck the deal for this second sale of the Porsche when Cortes informed I&B that the car was in police custody (or at any other time prior to Gerstein submitting his claim for its release), or whether, instead, the transaction was first suggested after defendants released the Porsche to I&B.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

The jewelry, by contrast, remained in the custody of the police property clerk until September 16, 1992, when Cortes signed out the envelope containing it, and noted on the property clerk's invoice that it was to be delivered to the Brooklyn District Attorney's Office.

Defense counsel at Alexandre's sentencing (in late October 1992) asked the court about the disposition of the jewelry. The court directed counsel to contact the district attorney prosecuting the case and request the return of the items. The record indicates that [**7] counsel, Alexandre, and Alexandre's wife all made repeated attempts to secure the return of these items from the district attorney -- but to no avail.

somewhere between the vouchered jewelry being released from the Brooklyn Property Clerk's Division to Defendant Cortes, who brought it to the Brooklyn District Attorney's Office[,] and plaintiff's attempt to retrieve such property, it was misplaced, lost, or perhaps even stolen. In any event, it was never returned [**8] to its proper repository in the Property Clerk's Division.

Accordingly, in June 1994, Alexandre filed this suit, in which he alleged that the defendants, acting under color of state law, deprived him of the car and jewelry when they (1) seized those items and improperly failed to return them, and (2) did not adequately inform him of the procedures he must follow to secure their release.

[*409] The district court, in its Memorandum and Order granting defendants' motion for summary judgment, suggested that Alexandre did not have a property interest in the Porsche because I&B held title (subject to payment of the balance owed under the purchase agreement). The court then held that even if Alexandre did have a property interest in the car, no § 1983 action could lie under *Hudson v. Palmer*, 468 U.S. 517, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984), for the loss of either the car or the jewelry because Alexandre had adequate post-deprivation remedies under state law, see *id.* at 531. The court also found that Alexandre's allegations against the City were "not sufficiently definite to state a claim" because they did not "establish a causal connection between any dereliction of the [**9] City and a denial of Alexandre's rights." On those grounds, the court granted summary judgment in favor of all defendants.

HN1 Construing his *pro se* complaint liberally, as we must, see, e.g., *Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir. 1989) (*per curiam*), Alexandre principally raises two arguments on appeal. First, because the unconstitutional deprivations of his property resulted from established City procedures and not from a random or unauthorized act, the existence of post-deprivation remedies under state law does not foreclose his due process claim. Second, assuming that these established City procedures permit claimants to recover seized property in a way that satisfies due process, the description of the procedures in New York City Administrative Code § 14-140 was misleading and did not provide Alexandre with constitutionally adequate notice.

Discussion

This case is only the most recent in a string of due process challenges to the procedures employed by the property clerk in New York City. As early as 1972, we held in *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972), that § 435-4.0 of the New York City Administrative Code -- which governed the [**10] disposition of property being held by the property clerk -- was unconstitutional in two respects: n5 First, prisoners whose property was being held by the clerk did not receive any meaningful notice of the procedures for recovering it; and, second, § 435-4.0 improperly placed the burden of proof on the prisoner to "establish that he had a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner," N.Y.C. Admin. Code § 435-4.0(f) (Supp. 1971) (subsequently renumbered as N.Y.C. Admin. Code § 14-140(f)). This arrangement impermissibly permitted the imposition of criminal sanctions in the absence of unlawful conduct. See *McClendon*, 460 F.2d at 114-16. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 Even before *McClendon*, however, some of the state courts had condemned the procedures then in place. See *McClendon*, 460 F.2d at 116 (citing *In re Marshall*, 17 Misc. 2d

285, 181 N.Y.S.2d 413, 416 (Sup. Ct. 1959) (describing the procedures as involving "insolence of office"); *Gonzales v. Leuci*, 120 N.Y.L.J., Nov. 1, 1948, at 993 ("It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury."), quoted in *United States v. Herzfeld*, 271 F. Supp. 185, 189 (S.D.N.Y. 1967); *Country-Wide Ins. Co. v. Rosetti*, N.Y.L.J., July 17, 1970, at 8 (N.Y. Civ. Ct. 1970) (stating that the procedures reflect "a studied indifference to the rights of the public")). [**11]

n6 Although § 435-4.0 was later renumbered as § 14-140, it has not been materially changed since *McClendon*. See *Butler v. Castro*, 896 F.2d 698, 701-02 (2d Cir. 1990).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

On remand in *McClendon*, Judge Morris E. Lasker of the United States District Court for the Southern District of New York issued an order that established constitutional procedures for the disposition of property held by the clerk, and set forth the method by which notice of those procedures would be given to arrestees from whom such property was seized. See *Butler v. Castro*, 896 F.2d 698, 700-02 & n.1 (2d Cir. 1990) (describing history of *McClendon* on remand and reprinting Judge Lasker's order). As we explained in *Butler*:

> Under Judge Lasker's order, a voucher must be given to an arrestee for non-contraband property seized. The voucher must also give notice of the procedures to be followed to recover such property. A claimant must make a demand upon the property clerk for his property or money within 90 days of the earlier of (i) the [*410] termination of the criminal proceeding, or (ii) the issuance by [**12] the District Attorney of a release indicating that the property or money is not needed as evidence. The City must, within ten days of a timely demand, either return the item or items in question or initiate judicial action to authorize their continued detention. In the absence of a timely demand, the property clerk may dispose of the property.

*Id.* at 702-03.

The City did not, however, amend its Administrative Code to reflect our decision in *McClendon*. See *id.* at 701-02. And so Judge Lasker's order, rather than § 14-140, continued to govern redemption of property from the clerk at least until February 1990, when we issued our decision in *Butler*, see *id.* at 703.

*Butler* involved a due process challenge very similar to that brought in *McClendon*. The plaintiff in *Butler* had his automobile and some other personal property seized by the New York City Police because he was in possession of them at the time of his arrest. He alleged, however, that he was not given clerk's vouchers for the items (though he was entitled to such vouchers under Judge Lasker's order), and hence did not receive notice of the actual procedures for redeeming the property. [**13] (The procedures were printed on the back of the clerk's vouchers but were otherwise unavailable to arrestees.) See *id.* at 699. He was thus forced to rely on the invalid provisions of § 14-140 (which were still printed in the Administrative Code), and could not avail himself of "the primary remedy for an arrestee's

"reclaiming of seized property" -- the procedure established by Judge Lasker's order. *Id.* at 703.

We agreed that the plaintiff had been misled, and held (1) that the harm he suffered was "the result of an established procedure of misinforming claimants who do not receive notice by voucher of the prevailing procedures for recovery," *id.* at 704; (2) that the City's "failure to eliminate the obsolete provisions of the Code and to publicize the actual procedures to be followed deprived Butler of an adequate state remedy" for the deprivation of his property, *id.* at 703, and hence (3) that a § 1983 action for a due process notice violation could lie, *id.* at 700.

Alexandre's claims that he was deprived of his automobile and jewelry without due process are modeled on those in *Butler*. Our disposition of this case, therefore, depends chiefly on the determination [**14] of whether the procedures in place for redeeming seized property at the time of Alexandre's arrest complied with the requirements of due process as explicated in *McClendon* and *Butler*.

I. The Automobile

A. Protected property interest

Before we undertake a *McClendon-Butler* analysis regarding the Porsche, we first address defendants' argument that Alexandre has failed to state a claim for a due process violation because he had no property interest in the vehicle.

The record is clear that Alexandre and his wife owed money on the car to I&B (the original seller) under a purchase agreement, that they had paid most of the purchase price, that they were to have paid the balance over time, and that they were in arrears. It is also undisputed that I&B retained title to the vehicle pending satisfaction of the agreement. Moreover, I&B had the right to repossess the automobile "without the necessity of court order or any judicial process" if Alexandre and his wife failed to make timely payment under the contract. (The agreement also appears to have afforded Alexandre the right to redeem the car if it was repossessed.) Defendants aver that, because Alexandre did not yet have [**15] title to the car, it was not his "property," and hence he could not have been deprived of any interest in it.

The Supreme Court expressly rejected this argument in *Fuentes v. Shevin*, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972). *Fuentes* involved (in part) two separate appeals by plaintiffs whose personal property had been replevied after they fell behind on installment payments. In each of the cases, the seller retained title to the goods until such time as the installment contract was satisfied.

[*411] HN2 Although the plaintiffs did not have title to the replevied items, the Supreme Court held that they nonetheless had acquired an "interest in continued possession and use of the goods," because the conditional sales contracts "entitled them to possession and use of the chattels before transfer of title." *Id.* at 86. Specifically, the substantial installment payments that the plaintiffs had made on the items prior to summary repossession gave rise to a "possessory interest in the goods, dearly bought and protected by contract, [that] was sufficient to invoke the protection of the Due Process Clause." *Id.* at 86-87 (footnote omitted).

Under *Fuentes*, it is clear [**16] that the substantial sums that Alexandre paid for the Porsche gave him a protected possessory interest in the car. Hence, dismissal of Alexandre's claim on the ground that the vehicle was not his "property" is precluded by *Fuentes*.

B. Adequacy of post-deprivation remedy

JAN-23-2006 16:33
Case 1:07-cv-03782-RMB-KNF   Document 50-6   Filed 06/03/2008   Page 9 of 15
Get a Document - by Citation - 140 F.3d 406
P.02
Page 9 of 15

he district court held, and the defendants argue on appeal, that post-deprivation remedies available under state tort law (including actions for replevin and trespass to chattels) are adequate to redress any injury that Alexandre may have suffered because of the defendants' release of the Porsche to I&B. In so arguing, defendants rely on *Parratt v. Taylor*, 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986), and *Hudson*, 468 U.S. 517, 82 L. Ed. 2d 393, 104 S. Ct. 3194. In *Parratt*, the Supreme Court held that, HN3⨀when a meaningful post-deprivation remedy was available at state law, a state employee's negligent deprivation of a prisoner's property was not actionable under § 1983. See *Parratt*, 451 U.S. at 543-44. In *Hudson*, the High Court broadened this holding to encompass [**17] even intentional deprivations. See *Hudson*, 468 U.S. at 533. The Court reasoned that state law post-deprivation remedies satisfy due process in such cases because, "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." Id. n7

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 The Court subsequently overruled *Parratt*, in part, and held that mere negligence by a state official could not constitute a deprivation of life, liberty, or property under the Due Process Clause of the Fourteenth Amendment. See *Daniels*, 474 U.S. at 330-32. This holding, however, left undisturbed *Parratt's* general rule concerning post-deprivation remedies and their sufficiency for due process purposes. It also did not dilute *Hudson's* extension of the *Parratt* doctrine to intentional deprivations.

- - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

But "HN4⨀an adequate post-deprivation remedy is a defense to a Section 1983 due process claim only where [**18] the deprivation is random and unauthorized." *Butler*, 896 F.2d at 700. By contrast, "the existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures." Id.; see *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982) (holding that *Parratt* "was not designed to reach . . . a situation" where the deprivation resulted from an established state procedure); see also *Hudson*, 468 U.S. at 532-33 n.13 (summarizing *Logan*); *Sullivan v. Town of Salem*, 805 F.2d 81, 86 (2d Cir. 1996) (explaining that where a deprivation occurs "pursuant to town policy, *Parratt* and its progeny, which apply only to random, unauthorized conduct, are simply inapposite").

Here, certain aspects of the release of Alexandre's Porsche to I&B -- in particular, Cortes' telephone call to I&B reporting that the vehicle was in police custody -- may well have been "random and unauthorized." And there is no allegation, nor is there any indication in the record, that it is the official policy or custom of the City to provide holders of titles or liens on "innocent" [**19] automobiles in the custody of the clerk with notice that the vehicles are being so held. For that reason, Alexandre does not state a claim for a due process violation on the basis of Cortes' telephone call to I&B. n8

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Cortes' purchase of the car from I&B is a different matter. Cortes states in his affidavit that he obtained permission from his commanding officer, as he was required to do, before he purchased the vehicle from I&B at the time that it was turned over to I&B. See generally N.Y.C. Police Dep't Patrol Guide 5 (rev. 91-4) (prohibiting police officers from "purchas[ing]

or acquiring property of another, without approval of commanding officer, knowing or having reason to know, that such property was held in custody of [the Police] Department"). Because we conclude that defendants' release of the Porsche to I&B constituted a due process violation, however, we need not and do not decide either (a) whether Cortes' subsequent purchase of the vehicle, with oral permission of his commanding officer, might itself have infringed Alexandre's property rights; or (b) if so, whether Alexandre nonetheless had adequate remedies at state law for the deprivation.

- - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**20]

[*412] By contrast, defendants' release of the car to I&B was effected in accordance with the City's published procedures. Alexandre's § 1983 action arising out of that conduct is not, therefore, barred by *Parratt* and *Hudson*. n9

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 For the same reason, we conclude that Alexandre's allegations against the City are sufficient to state a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). See, e.g., *Sullivan*, 805 F.2d at 86-87 (holding that a "town itself could be liable if its policy or the implementation thereof caused the . . . deprivation of property.").

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

HN5 The Rules of the City of New York ("City Rules") specify procedures for obtaining the release of items held by the property clerk. These Rules state that a prisoner whose property is held as arrest evidence may recover it by presenting a release from the District Attorney within 90 days of the issuance of the release or the termination of criminal proceedings, whichever [**21] is sooner. See R. City N.Y. tit. 38, ("City Rule") § 12-03. Where, as in this case, the property in question is an automobile, the City Rules permit a representative of the owner to obtain release by showing a notarized letter of authorization and proof of ownership. See *Id*, §§ 12-14 to -17. And, they allow a lienholder to redeem a vehicle upon submission of "a copy of [a] sales agreement which was signed by [the] owner and a notarized statement on company letterhead stating said person is in arrears in payment." *Id*, § 12-19.

A fatal flaw in the City Rules is that they provide no notice or procedure for the resolution of disputes concerning the ownership of an automobile prior to authorizing its release to a lienholder. n10 To be sure, the City Rules do establish a formal procedure for settling disputes between a prisoner and a *victim* over the ownership of property in the custody of the property clerk:

> Where the arresting officer and District Attorney cannot determine the true owner, the Property Clerk becomes a stakeholder. Each claimant is provided with the identity of the other and referred to Civil Court. The Property Clerk will release property as directed [**22] by a Civil Court order. The other option is to have the claimants reach a mutual agreement as to the distribution of property. This agreement must be in writing and duly notarized.

*Id*, § 12-04. n11 But this section does not govern situations, such as the one

before us, in which a *third party* holding a note on a [*413] vehicle makes a claim. In such instances, only City Rule § 12-19 controls.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 The New York City Administrative Code does provide that:

> If any claim to the ownership of . . . property or money [held by the clerk] shall be made on oath before the judge, by or in behalf of any other persons than the person arrested, and such accused person shall be held for trial or examination, such property or money shall remain in the custody of the property clerk until the discharge or conviction of the person accused and until lawfully disposed of.

N.Y. City Admin. Code § 14-140(d). This provision (even assuming that it survives our decision in *McClendon*) is, however, inapplicable to the instant case for at least two reasons. First, under City Rule § 12-19, a lienholder may assert its claim of ownership without any judicial procedure, so § 14-140(d) would not normally be invoked where a prisoner and a lienholder each assert ownership of a vehicle. Second, because § 14-140(d) requires retention of the property until after discharge or conviction of a prisoner, it appears to be applicable only to property that is evidence in the criminal proceeding, and not to lawfully held items that were seized solely because they were in the prisoner's possession at the time of arrest.

[**23]

n11 This case does not raise any due process challenge to that procedure, nor do we state any opinion with respect such matters. We point to City Rule § 12-04 merely to highlight, by way of comparison, the complete absence in the City Rules of any formal procedures for dealing with competing claims of ownership as between a prisoner and a lienholder.

- - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

HN6↑The system established by the City Rules, authorizing the property clerk to release a vehicle without giving notice to the arrestee who holds the voucher for it, and creating no procedure by which prisoners can contest the City's handing over of vehicles to lienholders, does not comport with the requirements of the Due Process Clause, as interpreted by our case law. See *McClendon*, 460 F.2d at 114-15 (holding that § 435-4.0(e) of the New York City Administrative Code, now renumbered as § 14-140(e), does not satisfy due process because it does not inform claimants of the procedures they must follow to redeem their property, and because it authorizes the clerk to dispense with such property without requiring a showing of the owner's guilt). Under [**24] these circumstances, a cause of action under § 1983 is not foreclosed by *Parratt* and *Hudson*. n12 See *Butler*, 896 F.2d at 700; *Sullivan*, 805 F.2d at 86. Summary judgment in favor of the defendants was, therefore, improper.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n12 We note that, although I&B held legal title to the car, it was, under *Fuentes*, effectively a lienholder (retaining title to the Porsche subject only to payment of the balance owed on it), to whom City Rule § 12-19 authorized the property clerk to release the vehicle.

- - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## II. *The Jewelry*

Unlike the property clerk's release of the automobile to I&B, which was governed by the special rules pertaining to claims by a lienholder, Alexandre's jewelry was held pursuant to the City's normal rules for storing and disposing of property found in the possession of an arrestee. Alexandre argues that the Administrative Code is ambiguous and misleading because it does not describe the actual, lawful procedures by which a prisoner may seek release of property in the care of the [**25] clerk. For this claim he relies on our decisions in *McClendon* and *Butler*.

Nearly twenty-six years have now gone by since our decision in *McClendon*, yet the City has still not amended its Administrative Code to eliminate the unconstitutional provisions of § 14-140. Moreover, eight years have passed since *Butler*, and the City has not even changed the Code to reflect the procedures that are *in fact in place* for the dispensation of property by the clerk. Compare N.Y.C. Admin. Code § 14-140 *with* City Rules §§ 12-01 to -19. n13 Thus, it is certainly understandable that a prisoner might claim that the City, by not correcting the Code, continues systematically to mislead arrestees about the procedures for redeeming their property.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n13 Accordingly, we add our voice to that of the Appellate Division, which, some eleven years ago, stated:

> In passing, we note the absence of any ameliorative legislation with respect to Administrative Code § 14-140 in the more than thirteen years since the entry of the *McClendon* order. This would seem to be a matter worthy of legislative attention.

*Property Clerk v. Seroda*, 131 A.D.2d 289, 295, 521 N.Y.S.2d 233, 238 (App. Div. 1987), *quoted in Butler*, 896 F.2d at 703.

- - - - - - - - - - End Footnotes- - - - - - - - - - - [**26]

The instant case differs in two material respects from *Butler*, however. First, in *Butler*, the plaintiff alleged that he was not provided with a property clerk's voucher. As a result, he did

Case 1:07-cv-03782-RMB-KNF    Document 50-6    Filed 06/03/2008    Page 13 of 15
JHN-23-2006  16:35                                                        P.06
Get a Document - by Citation - 140 F.3d 400

not receive the list of procedures (printed on the back pursuant to Judge Lasker's *McClendon* order) that he was required to follow to recover his property from the clerk. See *Butler*, 896 F.2d at 699. He alleged, therefore, that he was denied notice of those procedures in the only form that was available to arrestees. By contrast, it is undisputed that, in the case before us, Alexandre was issued property clerk's invoice number E311362 for the jewelry.

If this invoice was identical, or substantially similar, to the vouchers that the City was using at the time of our decision in *Butler*, Alexandre received a statement of the procedures for reclaiming property that satisfied the notice requirements of the Due Process Clause. Cf. *Butler*, 896 F.2d at 703 (holding that an arrestee who does not receive such a voucher "would not know of the need to make a demand on the property clerk and the burden on the City either to return the property or to bring a judicial action," and that [**27] "because the Administrative Code has not been amended to reflect the *McClendon* procedures, [such] a claimant is led to believe that no such procedures exist").

[*414] Although the record in this case contains multiple copies of the front of the jewelry voucher that Alexandre received, it does not include any copies of the back of that voucher. It is possible, therefore, that the City no longer uses invoices that comply with Judge Lasker's order. If so, then Alexandre was not -- as required by *Butler* -- given a list of the actual procedures in effect.

"HN7 The burden of proving that no genuine factual dispute exists rests on the party seeking summary judgment, and inferences drawn from the evidence proffered must be viewed in the light most favorable to the party opposing the motion." *Abrams v. United States*, 797 F.2d 100, 103 (2d Cir. 1986) (citation omitted). We cannot, therefore, assume that the back of Alexandre's voucher listed the information that, in *Butler*, we held was necessary to satisfy the notice requirements of the Due Process Clause. For that reason, we cannot conclude that summary judgment for the defendants is appropriate on the basis of the voucher alone. n14 [**28]

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n14 If, on remand, defendants offer evidence that Alexandre's voucher did contain the information required by Judge Lasker's order, a summary judgment would be proper under *Butler*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Our inquiry cannot end there, however, because of a second, crucial, difference between this case and *Butler*. Although the City has never amended § 14-140 of the Administrative Code, it did, in June 1991 (after our decision in *Butler*), alter the City Rules to reflect at least a portion of the procedures put in place by Judge Lasker. Specifically, the City Rules now provide that "arrest evidence" of which the prisoner is the owner will be:

> Released to claimant upon presentation of a District Attorney's release. This demand must be made within 90 days of the termination of criminal proceedings or within 90 days after the issue of a District Attorney's release, whichever is sooner. Therefore, in older cases, a Certificate of Disposition is required to determine whether the demand is timely. (If a claim is untimely, the [**29] case is referred to the Legal Division for a final determination.)

City Rule § 12-03.

The record in this case demonstrates that Alexandre failed to comply with the requirement of this rule that a claim for the items be made to the property clerk within 90 days of the termination of criminal proceedings against him. n15 See City Rule § 12-03. Accordingly, if the procedure set forth in amended City Rule § 12-03 -- or in City Rule § 12 more generally -- satisfies the requirements of the Due Process Clause, as explicated in *McClendon*, and the City Rules also provide adequate notice of that procedure to claimants, as mandated by *Butler*, then Alexandre's untimely filing of his claim with the property clerk bars any subsequent § 1983 action regarding the jewelry.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 The first claim that Alexandre made to the property clerk for the return of the jewelry appears to have been by letter on December 29, 1993 -- long after criminal proceedings against him terminated with the passing of sentence on October 22, 1992.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[**30]

Both of these questions raise serious issues that were not discussed by the parties, either in the district court or on appeal. And the district court did not consider them when it ruled on defendants' motion for summary judgment. Under the circumstances, we decline to consider the effect, if any, that the City Rules may have on Alexandre's claim. Instead, we remand this claim to the district court, which, after briefing and development of the record, can, far better than we, decide these matters in the first instance. We also instruct that court to appoint counsel to represent Alexandre. As to the merits of these issues, we, of course, take no position.

**Conclusion**

Because the release of Alexandre's car to I&B occurred pursuant to the City's established administrative procedures governing claims made to the property clerk by vehicle lienholders, we reverse the grant of summary judgment with respect to the automobile. We also vacate and remand with regard to the jewelry, in order to permit the district court to consider what effects, if any, the 1991 amendments to the City Rules may have on Alexandre's claims.

[*415] The judgment of the district court is REVERSED IN PART, VACATED [**31] IN PART, AND REMANDED for further proceedings consistent with this opinion.

Service: Get by LEXSEE®
Citation: 140 F.3d 406
View: Full
Date/Time: Monday, January 23, 2006 - 4:06 PM EST

* Signal Legend:
●- Warning: Negative treatment is indicated
■- Questioned: Validity questioned by citing refs

07 Civ. 3782 (RMB) (KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK KAPITI,

                Plaintiff,

  -against-

RAYMOND W. KELLY, in his official
Capacity as Commissioner of New York City
Police Department, Property Clerk, New York
City Police Department, and The City of New York,

                Defendants.
-----------------------------------------------------------x

THE CITY OF NEW YORK,

                Plaintiff,

  -against-

AMERICAN HONDA FINANCE CORPORATION
d/b/a HONDA FINANCIAL SERVICES,

                Defendant.

---

**NOTICE OF MOTION WITH SUPPORTING AFFIDAVITS
AND EXHIBITS**

---

*MICHAEL A. ROSENBERG, ESQ.*

Attorney for

**AMERICAN HONDA FINANCE CORPORATION**

122 East 42nd Street, Suite 606
New York, New York 10168

Tel: (212) 972-3325
Fax: (212) 972-3329