UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MARK KAPITI,

                          Plaintiff,

          -        against        -

RAYMOND W. KELLY, in his official capacity
as Commissioner of the New York City Police
Department, PROPERTY CLERK, New York
City Police Department, and The CITY OF NEW
YORK,

                          Defendants.

-----------------------------------------------------------x

Docket No.: 07 Civ. 3782 (RMB)

**Hon. Richard M. Berman (J.)**


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTIONS FOR CLASS CERTIFICATION AND FOR RECONSIDERATION OF ORDERS COMPELLING THE UNSEALING OF PLAINTIFF'S CRIMINAL FILE

STEVEN L. KESSLER (SK-0246)
Law Offices of Steven L. Kessler
122 East 42nd Street, Suite 606
New York, New York 10168-0699
(212) 661-1500

Attorneys for Plaintiff
MARK KAPITI

Eric M. Wagner (EW-4153)
*On the Memorandum*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    Class Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The Unsealing Orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

LEGAL CONTEXT OF THIS MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    THIS ACTION SATISFIES THE STANDARD FOR CLASS CERTIFICATION

    SET FORTH IN FEDERAL RULE 23.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        Standard on this Motion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        Timing of this Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        Rule 23(c)(1)(B): Defining the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        The Four Factors of Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            Numerosity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            Adequacy of Representation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        Appointment of Class Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        Rule 23(b): The Second Set of Certification Factors. . . . . . . . . . . . . . . . . 19

POINT II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      THE COURT'S PRIOR UNSEALING ORDERS SHOULD BE
      RECONSIDERED AND VACATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## <u>TABLE OF AUTHORITIES</u>

*CASES*

*Alexandre v. Cortes*, 140 F.3d 406, 413 (2d Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . 6

*Califano v. Yamasaki*, 442 U.S. 682 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gen. Tel. Co. Of the Southwest v. Falcon*, 547 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . 12

*Heerwagen v. Clear Channel Communications*, 435 F.3d 219 (2d Cir. 2006) .. . . . . . . . 12

*Holness v. City of New York*, No. CV 2003-5598 (E.D.N.Y. Jan. 9, 2004). . . . . . . . . . . 24

*In re Agent Orange Product Liability Litigation MDL No. 381*, 818 F.2d 145 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006). . . . . . . . . . . . . . 21

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). . . . . . . . . 21

*Jane Doe v. Yorkville Plaza Assoc.*, 1996 WL 343059 (S.D.N.Y. June 21, 1996). . . . . . 23

*Jones v. Kelly*, 378 F.3d 198 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), *cert. denied*, 539 U.S. 969 (2003) . . . . . *8*

*Krimstock v. Safir*, 2000 WL 1702035 (S.D.N.Y. 2000), *vacated and remanded sub nom. Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), *cert. denied*, 539 U.S. 969 (2003) . . .. . . 8

iv

*Krimstock v. Kelly*, 99 Civ. 12041, slip op. (MBM) (S.D.N.Y. Oct. 27, 2003)............ 9

*Krimstock v. Kelly*, 2005 U.S. Dist. LEXIS 43845 (S.D.N.Y. Dec. 2, 2005). ....... 9, 10

*Krimstock v. Kelly*, 464 F.3d 246 (2d Cir. 2006).................................. 9

*McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972). ............................. 6

*McClendon v. Rosetti*, 1993 WL 15825 (S.D.N.Y. May 12, 1983).................... 6

*Parker v. Time-Warner Entertainment Co.*, 331 F.3d 13 (2d Cir. 2003)............. 12

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001). ........... 12

## STATUTES AND RULES

42 U.S.C. § 1982 ............................................... 9

38-A R.C.N.Y. Chapter 12, Subchapter B ......................................... 6

N.Y. City Admin. Code § 14-140 ... ................................ 6-7, 10-11

Federal Rule of Civil Procedure 23...................................... 13-22

## SECONDARY AUTHORITY

S. Kessler, *New York Criminal and Civil Forfeitures* (LexisNexis 2007) ... .......... 6

S. Kessler, *The City's New DWI Forfeiture Laws Fail the Constitutional Challenge,*
N.Y.L.J., July 8, 1999, at 1, col. 1 ........................................ 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
MARK KAPITI,

                         Plaintiff,

        -      against     -

RAYMOND W. KELLY, in his official capacity
as Commissioner of the New York City Police
Department, PROPERTY CLERK, New York
City Police Department, and The CITY OF NEW
YORK,

                         Defendants.
-----------------------------------------------------------x

Docket No.: 07 Civ. 3782 (RMB)

**Hon. Richard M. Berman (J.)**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTIONS FOR CLASS CERTIFICATION AND FOR RECONSIDERATION OF ORDERS <u>COMPELLING THE UNSEALING OF PLAINTIFF'S CRIMINAL FILE</u>

### <u>PRELIMINARY STATEMENT</u>

Plaintiff Mark Kapiti submits this Memorandum of Law pursuant to an Order of this Court granting him leave to move for the following relief: (1) certification of this proceeding as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and (2) reconsideration and vacatur of the Court's Order affirming Magistrate Judge Fox's grant of defendants' motion to compel the unsealing of the file of plaintiff's acquittal in the State criminal case.

## SUMMARY OF ARGUMENTS

**Class Certification:** In Point I, plaintiff demonstrates that this is an appropriate point in the litigation to certify this case as a class action, and that, as a substantive matter, the arguments and defenses asserted by defendants in recent Court filings virtually dictate the certification of a class, as these arguments and defenses raise systemic issues applicable to the entire class of lessees of motor vehicles whose cars have been seized by the defendants and returned to the leasing company without a *Krimstock* hearing or the commencement of forfeiture proceedings.

There can be little dispute that the basic requirements of numerosity, commonality, typicality and adequate representation are all substantially present. Further, FRCP 23 specifically authorizes certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Here, defendants have argued that people who lease their vehicles, as a group, are not entitled to the same rights and protections as those who finance or pay cash for their cars. Thus, defendants have "refused to act" – i.e., refused to provide *Krimstock* hearings or commence forfeiture actions – "on grounds generally applicable to the class" – i.e., their status as lessees.

Accordingly, it is not only well within the Court's broad discretion to certify the class, but certification offers the most efficient and appropriate means to resolve the systemic constitutional issues raised by defendants in this litigation. Therefore, certification should be granted.

2

**The Unsealing Orders**:  In Point II, plaintiff demonstrates that the Court applied the wrong legal standard in granting defendants' motion to unseal the criminal records of plaintiff's acquittal.  As even the authorities cited in defendants' submissions make clear, the courts have applied only one standard on such motions: pleading necessity under FRCP 11, not the liberal relevance test of Rule 26.  Had the Court applied the correct standard, it would have been manifest that defendants have not, and cannot, meet the correct burden on a motion to unseal.  Among other things, defendants filed their answer nearly a year ago.  Thus, they cannot plausibly claim that the criminal file is necessary to prepare their answer.  Nor have defendants shown that the unsealing is necessary to defend this action, particularly after the Assistant District Attorney assigned to handle Mr. Kapiti's criminal case testified at her deposition last week that her office retained a complete copy of the sealed file from the time Mr. Kapiti was acquitted of the underlying charges in December 2006.  In any event, the criminal file has virtually no relevance to the claims and defenses in this case.

Further, the material sought will have even less relevance if this Court grants plaintiff's motion for class certification, as the issue of probable cause for the seizure of plaintiff's vehicle – the only relevance claimed by defendants – can have no bearing on defendants' refusal to grant lessees the same rights and procedural protections as those who finance or pay cash for their cars.  Accordingly, on reconsideration, the Court's prior orders should be vacated and defendants' unsealing motion should be denied.

3

## THE FACTS

Plaintiff Mark Kapiti is the classic 'little guy' who stumbles onto something big. Married and the father of two, Mr. Kapiti is a pizza maker and building superintendent from the Bronx.  In May 2006, his brand new leased Acura MDX was seized by the NYPD, while parked, for allegedly being used to "deal in" fireworks.

When Mr. Kapiti's criminal case was finally tried in December 2006, he was acquitted of all charges.  At that point, under the law, his Acura should have been returned to him by the NYPD.  By that time, however, his car was long gone.  After unilaterally canceling Mr. Kapiti's *Krimstock* hearing in June – his only chance to secure the return of the vehicle – defendants turned over the vehicle to the leasing company in August 2006.  The lessor auctioned off the car in October, saddling Mr. Kapiti with a deficiency judgment and a repossession stain on his credit report.  A man of modest means whose father helped him qualify for the lease, Mr. Kapiti has not been able to finance or lease another car since that time.   See the accompanying Declaration of Steven L. Kessler, dated June 5, 2006, Exhibit "A" (Verified Complaint).

When Mr. Kapiti first filed this civil rights action last spring, neither he nor his counsel had any idea that it presented anything more than a modest claim for damages in a matter that had apparently fallen through the cracks of the City's vast impoundment machinery.  At that point, Mr. Kapiti wanted nothing more than reparations for the money he lost and the damage he sustained to his credit when the City canceled his *Krimstock*

4

hearing and then turned over his car to the leasing company instead of holding it for potential forfeiture as required by law.

Not until the last few months – ironically, in defendants' filings with the Court in support of their application to unseal – has it become clear that what happened to Mr. Kapiti was deliberate and part of a system-wide strategy to deprive lessees of the rights mandated by the *Krimstock* decisions and defendants' own rules. It now appears that Mr. Kapiti suffered solely because of his lessee status, and that he is but one of many who have been subjected to the same treatment for the same arbitrary reasons.

This case therefore has already had the valuable impact of bringing to light a secret policy and practice that appears to have been crafted specifically to evade the orders of the Court of Appeals and this Court in *Krimstock* and improperly reduce the City's retention hearing caseload. Class certification will give that secret practice the bright spotlight it deserves. As Mr. Kapiti's allegedly 'inferior' status as a lessee appears to be the City's sole defense to this case, and that defense necessarily implicates the rights of every lessee whose vehicle has been or will be seized in the City of New York, it is crucial that this case be tried as a class action.

## LEGAL CONTEXT OF THIS MOTION

This motion for class certification, and, indeed, the entire proceeding, must be considered within its extensive legal and procedural context. The City has a long and notorious history of violating the civil rights of its citizens in forfeiture matters arising under Section 14-140 of the New York City Administrative Code and refusing to alter its conduct until forced to do so by multiple federal rulings. *See, e.g., McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972) (declaring § 14-140 unconstitutional and directing that it be redrafted).

More than two decades after *McClendon*, the City still had not revised its statute. *See Alexandre v. Cortes*, 140 F.3d 406, 413 (2d Cir. 1998) ("Nearly twenty-six years have now gone by since our decision in *McClendon*, yet the City has still not amended its Administrative Code to eliminate the unconstitutional provisions of § 14-140"). In a second decision, this Court again had to spell out to the City how not to violate the Constitution. *See McClendon v. Rosetti*, 1993 WL 15825 (S.D.N.Y. May 12, 1993). Some of this Court's directives were finally embodied in the Rules of the Property Clerk promulgated in 1998. *See* 38-A R.C.N.Y. Chapter 12, Subchapter B; *see generally* S. Kessler, *New York Criminal and Civil Forfeitures*, §§ 7.01 to 7.06 (LexisNexis 2007) (history of *McClendon* and related issues).

These court rulings, ordinances and rules set forth explicit procedures with respect to the constitutional seizure, retention and disposition of property, including notice and

timing requirements, and procedures for property vouchering and issuance of District

Attorney releases. Among the procedures instituted were the requirements that the City

(1) commence a forfeiture action with respect to seized property within 25 days of receipt

of a written demand; (2) retain seized property until the conclusion of related criminal

proceedings, and (3) return the property to the accused person upon the conclusion of

proceedings and/or a finding that the claimant is not guilty of the crime charged. N.Y.

City Admin. Code § 14-140(a)-(d).

Even after all of this federal oversight, there remained substantial constitutional

issues with respect to defendants' procedures. These became pronounced with the

institution of Mayor Giuliani's zero-tolerance DWI "initiative" in 1999. Under this

program, rather than promulgate new rules, defendants utilized the unrevised section 14-

140 as the basis for seizing and forfeiting the vehicles of motorists arrested for driving

while intoxicated. There were numerous infirmities with this DWI initiative. *See*

Kessler, *The City's New DWI Forfeiture Laws Fail the Constitutional Challenge*,

N.Y.L.J., July 8, 1999, at 1, col. 1.

The DWI initiative brought section 14-140 back into the spotlight, and the large

number of cars seized gave rise to a substantial class of aggrieved parties, culminating in

the filing of a class action challenging the constitutionality of the procedures for the

seizure and retention of motor vehicles under the DWI program. Although the plaintiffs

were rebuffed by the District Court, the Court of Appeals for the Second Circuit reversed

and found that the City's retention procedures violated due process. *See Krimstock v.*

*Safir*, 2000 WL 1702035 (S.D.N.Y. 2000), *vacated and remanded sub nom. Krimstock v.*

*Kelly*, 306 F.3d 40 (2d Cir. 2002), *cert. denied*, 539 U.S. 969 (2003) ("*Krimstock I*").

The Second Circuit focused on the due process implications of the City's

temporary retention of vehicles during the period prior to commencement of forfeiture

proceedings where there is no judicial oversight, finding such warrantless deprivations of

property rights to be of substantial constitutional dimension. The Court therefore held

that the City must provide vehicle claimants with a prompt post-seizure retention hearing

before a neutral magistrate, at which the City must satisfy a three-part burden to retain the

vehicle pending trial: (1) probable cause for the seizure; (2) probable validity of

continued retention, and (3) absence of less restrictive means of ensuring the vehicle's

availability for forfeiture. *See Krimstock I*, 306 F.3d at 53.

The Court found that a prompt post-seizure hearing is necessary to "protect [the]

use and possession of property from arbitrary encroachment", and that the unique nature

of a motor vehicle raises particularly significant constitutional issues: "deprivation of

[the] means of transportation for [substantial] periods of time requires an opportunity to

be heard." *Krimstock I*, 306 F.3d at 53. In a subsequent decision affirming the right to a

prompt hearing even where a vehicle is claimed to be held as arrest evidence rather than

for potential forfeiture, the Second Circuit again emphasized "the importance of a vehicle

to an individual's ability to work and conduct the affairs of life . . . and the serious harm

8

resulting from the undue retention of a vehicle by the government . . .." *Krimstock v. Kelly*, 464 F.3d 246, 255 (2d Cir. 2006).

The Court affirmed these rights without regard to whether the vehicle is leased, financed or purchased outright.  Indeed, such a distinction would contravene the Court's emphasis on the right to the *use* and *possession* of a vehicle, as well as decades of jurisprudence granting leases the same constitutional protection as title ownership.  *See*, *e.g.*, 42 U.S.C. § 1982 (affirming the constitutional right "to inherit, purchase, *lease*, sell, hold and convey real and *personal property*") (emphasis added); *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) (due process protects "any significant property interest").

After two remands, Chief Judge Mukasey issued an Amended Order and Judgment setting forth procedures and rules for the City to follow and granting plaintiffs' motion to certify a class consisting of "all persons whose vehicles have been seized by the [NYPD] upon arrest, and kept in police custody for a prospective or pending action to forfeit such vehicles . . .." *Krimstock v. Kelly*, 2005 U.S. Dist. LEXIS 43845, at *2 (S.D.N.Y. Dec. 2, 2005) ("*Krimstock II remand*").[1]  The District Court Orders established the Office of Administrative Trials and Hearings ("OATH"), which would handle the retention hearings required by *Krimstock I*.

---

[1] The second remand related to the issue of post-seizure retention hearings for vehicles held as arrest evidence rather than for potential forfeiture.  Chief Judge Mukasey's original order on remand from *Krimstock I* was unreported.  *See Krimstock v. Kelly*, 99 Civ. 12041, slip op. (MBM) (S.D.N.Y. Oct. 27, 2003).  On appeal from that Order, the Second Circuit issued its second decision in the litigation, *Jones v. Kelly*, 378 F.3d 198 (2d Cir. 2004) ("*Krimstock II*").  The remand from *Krimstock II* resulted in the Amended Order and Judgment discussed in text.

9

The various rules and procedures set forth in the *Krimstock II* remand, without exception, seek to protect the rights of the *registered* owner, not the title owner, of the vehicle. For example, the registered owner has the primary right to receive notice of the *Krimstock* hearing, attend the hearing, and seek the return of the vehicle *pendente lite*:

> 5.     The claimant seeking release of the vehicle at the hearing may be either *the person from whom the vehicle was seized*, if that person was in lawful possession of the vehicle, or the owner if different from such person. Only one person or entity may appear as claimant at the hearing, *and preference shall be given to the registered owner of the vehicle.*

*Krimstock II* remand, 2005 U.S. Dist. LEXIS 43845, at *7 (emphasis added).

Further, if the registered owner appears at the *Krimstock* hearing and prevails, it is the registered owner, not the title owner, that is entitled to the return of the vehicle:

> Absent a timely finding by the OATH judge that the Police Department has met the burden of proof as to the issues at the hearing, the vehicle shall be released *to the claimant . . ..*"

*Krimstock II* remand, 2005 U.S. Dist. LEXIS 43845, at *7 (emphasis added).

Finally, as noted above, under section 14-140 and the Property Clerk Rules, as required by the *McClendon* rulings, it is the registered owner who is entitled to be notified of, and participate in, the forfeiture proceedings. Indeed, a seized vehicle may be turned over only to the person arrested and charged with the underlying crime:

> d.  Disputed ownership.  If any claim to the ownership of such property or money shall be made on oath before the judge, by or in behalf of any other persons than the person arrested, and such accused person shall be held for trial or examination, such property or money *shall remain in the custody of the property clerk until the discharge or conviction of the person accused and until lawfully disposed of.*

10

N.Y. City Admin. Code § 14-140(d) (emphasis added).

Thus, the statute requires that the seized property be held pending the conclusion of proceedings, and contains no exception for leased vehicles, leasing companies or title owners.  There is no provision that permits the City to 'cut a deal' with the leasing company for a 'give-back' without court oversight and approval before the conclusion of proceedings involving the vehicle.  Further, as section 14-140(d) makes clear, any party other than accused who seeks possession of the seized property must, at the very least, file a "claim . . . on oath" with the Court and, presumably, demonstrate that its legal right to the vehicle is superior to that of the claimant.

By surreptitiously handing plaintiff's car back to Honda without any hearing or court authorization, defendants served the roles of judge, jury and executioner, which is precisely the outcome the *Krimstock* decisions sought to avoid.  The key to *Krimstock* and the related rules, statutes and decisions is that no property rights may be determined, either on a temporary or permanent basis, without review by a neutral factfinder.  Because of the defendants' secret policy, Mr. Kapiti, and thousands like him, were deprived of the constitutional rights deemed to be critical by the Second Circuit in the *Krimstock* and *McClendon* decisions.  Defendants' unilateral 'carve-out' from these rulings is not only contempt of Court, but a constitutional violation on a massive scale.  Apparently, defendants need yet another dose of federal "guidance".  Class certification will ensure that the necessary changes are real and lasting.

11

# ARGUMENT

## POINT I

### THIS ACTION SATISFIES THE STANDARD FOR
### CLASS CERTIFICATION SET FORTH IN FEDERAL RULE 23

**Standard on this motion**

In making a class certification determination, "a district court should not evaluate the merits of the underlying claims.  Rather, it should conduct a rigorous analysis to determine whether the elements of [FRCP] 23 have been satisfied." *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 225 (2d Cir. 2006) (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)).   That analysis is reviewed under a "deferential standard" and will not be disturbed on appeal absent a clear abuse of discretion.  *See Califano v. Yamasaki*, 442 U.S. 682, 703 (1979); *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007)*; Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 162 (2d Cir. 2001).  Further, an appellate court will "exercise even greater deference when the district court has certified a class than when it has declined to do so."  *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) (internal quotations omitted) (citing, *inter alia*, *Parker v. Time-Warner Entertainment Co.*, 331 F.3d 13, 18 (2d Cir. 2003)).

Here, rigorous analysis of the parties' positions conclusively demonstrates that class certification is appropriate and necessary to ensure a just resolution of the litigation.

12

**Timing of this Motion**

Rule 23 requires the Court to "determine by order whether to certify the action as a class action . . . at an early practicable time." Fed. R. Civ. P.23(c)(1)(A). As plaintiff demonstrated in his May 8, 2008 pre-motion letter to the Court, determining what is "an early practicable time" is a fact-driven judgment call. Here, neither plaintiff's Verified Complaint nor defendants' answer assert class-wide claims or defenses. See Kessler Decl. Exhibits "A" (Verified Complaint) & "B" (answer).

It has not been until the past few months that defendants have begun to assert arguments that raise class issues. Defendants' recent court filings now contend that lessees such as Mr. Kapiti are not entitled to due process protection under *Krimstock* or, more broadly, any of the protections conferred by *McClendon* and related laws and rules, including the right to the return of the vehicle upon the successful termination of proceedings relating to the vehicle.

Accordingly, it has only recently become evident that defendants' defense of this case, if successful, would substantially diminish the property rights of thousands of people. Thus, now is the appropriate time to certify the case as a class action.

**Rule 23(c)(1)(B): Defining the Class**

Rule 23 provides, *inter alia*, that "[a]n order certifying a class action must define the class and the class claims, issues, or defenses . . . .." Fed. R. Civ. P. 23(c)(1)(B).

13

Defendants' opposition to plaintiff's letter application contended that plaintiff had not adequately defined the proposed class. Defendants, however, helpfully suggested that an appropriate class would consist of "individuals who (1) leased vehicles; (2) had their leased vehicle seized by the NYPD pursuant to . . . . arrest; and (3) had the vehicle returned to the leasing company . . ." Kessler Decl. Ex. "D" at p. 4.

This proposal is acceptable to the plaintiff, with two additions. First, the class must include lessees who were deprived of a *Krimstock* hearing, whether or not their vehicle was ultimately returned to the leasing company. Second, as defendants' deprivation of the rights of lessees appears to be based on lack of title ownership, the class should also include any purchasers who did not hold title to their vehicles because of the terms of their installment contracts.


## The Four Factors of Rule 23(a)

The issues presented satisfy the four basic class action factors of FRCP 23(a) – numerosity, commonality, typicality and adequacy of representation. Indeed, defendants' primary argument in their opposition to plaintiff's letter application with regard to these factors was that such factors were not met because plaintiff had defined the class too broadly. As noted above, however, defendants proposed a narrower class that they believed would satisfy the requirements of the Rule. As plaintiff, with minor

adjustments, has agreed to defendants' redefinition of the class, the entire issue should be deemed moot. Thus, the four factors are addressed only briefly below.

**Numerosity**: Defendants have not disputed that the class, as they have redefined it, is sufficiently numerous to warrant certification. Thus, numerosity should be deemed established as a matter of law. Nevertheless, some interesting matters have arisen during the depositions conducted within the past few days that shed further light on this issue. At the deposition of defendants' witness, Sergeant George Triffon, defendants' counsel repeatedly stated that the witness was being produced to testify only about facts, and not policies and procedures. Yet Officer Triffon had been with the Civil Enforcement Unit ("CEU") for three years, admitted serving as an OATH hearing attorney on at least several occasions, and, as a law student during this period (he was admitted to practice in March 2008), the witness conceded some familiarity with the *Krimstock* decisions and Chief Judge Mukasey's rules. Officer Triffon was a legally savvy witness. When his counsel objected to any question remotely related to policy and procedure, the witness suddenly lacked knowledge or recollection necessary to supply a responsive answer, despite the fact that he worked in the CEU from 2005 until January 2008. See Kessler Decl. ¶¶ 7-8 & Exhibits "F" and "G". Indeed, Officer Triffon even lacked knowledge as to why he was designated by defendants as their fact witness. See Ex. G, at 10.

Counsel's attempts to prevent defendants' witness from testifying about matters both relevant and within his knowledge raise serious ethical questions. Worse, these

efforts have been for nought, as defendants' submissions to this Court do not dispute that defendants had a systemic policy or practice of denying lessees the due process and procedural rights mandated by *Krimstock, McClendon* and the applicable rules and regulations. Further, defendants' counsel were understandably distressed when, at the deposition of Honda Finance's witness – a deposition defendants aggressively fought to conduct for the past two months – the witness who defendants' counsel could not 'control' testified that she was personally familiar with "hundreds" of leased vehicle give-backs negotiated with Honda by the City over a period of many years. See Kessler Decl. ¶ 9 & Ex. "H". On the reasonable assumption that defendants have negotiated a similar quantity of give-backs with every other car manufacturer, the testimony of Honda's witness instantly confirms a class of thousands. In sum, the class is sufficiently numerous for purposes of Rule 23(a)(1).

**Commonality:** The second Rule 23(a)(1) factor requires the movant to show that "there are questions of law or fact common to the class." The issue of whether defendants' practice of denying vehicle lessees the same due process and procedural protections as people who finance or pay cash for their cars is common to the entire class of lessees. Indeed, while this factor requires only that there be common questions of law *or* fact, here there are both. All proposed class members have had the similar factual experience of being denied their *Krimstock* hearing and the right to their day in court in a

civil forfeiture proceeding.  Legally, all class members have been denied similar due process rights.  Thus, the commonality element is easily satisfied.

**Typicality:** Under the third factor of Rule 23(a)(1), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Mr. Kapiti's experience – being denied a *Krimstock* hearing because he is a lessee, and being denied his right to appear in and defend a forfeiture action by the defendants' unilateral decision to turn over his car to the leasing company – appears to be typical of defendants' treatment of the entire class of lessees and other non-titled registered owners.

**Adequacy of Representation:** Mr. Kapiti will more than adequately serve as the representative of the lessee class.  Given the commonality and typicality of Mr. Kapiti's experience with the defendants, there should be no conflicts between his interest and those of other lessees.  Although defendants sought to attack Mr. Kapiti's adequacy as a class representative because he did not know that Raymond Kelly was Commissioner of the NYPD and a named defendant in this lawsuit, there is no requirement that a class representative be legally savvy.  Critically, defendants do not, and cannot, dispute that plaintiff's experience with the defendants makes him an appropriate class representative.

## Appointment of Class Counsel

In addition to defining the class and the issues, a certification order must "appoint class counsel under Rule 23(g)."  Rule 23(c)(1)(B).  Plaintiff's counsel will be an

effective and representational class counsel.  Defendants' opposition to plaintiff's letter

application attacked the adequacy of plaintiff's counsel to represent the class primarily on

the ground that counsel has not handled numerous class actions.[2]  While extensive class

action experience is relevant, it is not determinative.  Plaintiff's counsel is highly

experienced in the specialized areas of law presented by the proposed class litigation.

Plaintiff's counsel has litigated forfeiture-related civil cases with federal, state and local

governments throughout the country for the past twenty years, prior to which time he was

head of the Asset Forfeiture Unit of the Bronx District Attorney's Office, and served as a

member of the Forfeiture Law Advisory Group of the New York State District Attorney's

Association.  Plaintiff's counsel is also an Adjunct Professor at New York Law School,

and the author of, *inter alia,* a three-volume treatise, *Civil and Criminal Forfeiture:*

*Federal and State Practice* (West Group 1993 & Supp. 2008), a one-volume treatise, *New*

*York Criminal and Civil Forfeitures* (LexisNexis 2007), and eight chapters in Weinstein,

Korn & Miller's *New York Civil Practice.*  Plaintiff's counsel has lectured extensively on

forfeiture-related topics and testified before the National Conference of State Legislators

and the New York City Council on forfeiture issues.  Plaintiff's counsel's viewpoints are

widely cited in court opinions and in the general media.  Plaintiff's counsel's experience

is more than sufficient to protect the interests of the proposed class.

---

[2]Defendants also argued that plaintiff's counsel should not serve as class counsel because he sublets office space from Honda's counsel.  At this point, plaintiff hopes that defendants' counsel will not pursue this scurrilous line of attack in formal motion practice before this Court.  However, plaintiff stands ready to address the issue on reply, if necessary.

18

**Rule 23(b): The Second Set of Certification Factors**

As noted above, in addition to the four-factor test of Rule 23(a), a movant for class certification must demonstrate that class status is warranted under at least one of the three further factors set forth in subdivision (b).  Here, to satisfy this requirement, plaintiff need not plumb the depths of obscure caselaw (although there is plenty of law to support it), because the language of the Rule itself is directly on point.  Rule 23(b)(2) provides that a matter should be certified as a class action if, in addition to the subdivision (a) factors:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . ..

Fed. R. Civ. P. 23(b)(2); *see*, *e.g.*, *In re Agent Orange Product Liability Litigation MDL No. 381*, 818 F.2d 145, 166 (2d Cir. 1987) (affirming class certification because "the trial is likely to emphasize critical common defenses applicable to the plaintiffs' class as a whole").

Here, defendants have "refused to act on grounds generally applicable to the class" by denying lessees and other non-titled registered vehicle owners the right to a *Krimstock* hearing and the right to appear in and defend a forfeiture action prior to the disposition of the vehicle – rights required to be provided to all registered owners, and in fact provided to all registered owners *other than* lessees.  Defendants' refusal to act violates these lessees' due process rights to be heard regarding the temporary and permanent deprivation of their motor vehicles at every stage of the retention process, essentially

19

'cutting out their tongues' by preventing them from being heard by a neutral magistrate

from the moment their vehicles are seized until after the vehicles are repossessed and sold

out from under them at auction.

Defendants' refusal to treat lessees equally with other registered owners warrants

"final injunctive relief or corresponding declaratory relief with respect to the class as a

whole . . .." Fed. R. Civ. P. 23(b)(2). In fact, both declaratory and injunctive relief are

already sought in plaintiff's complaint, and easily extended to the entire class. To correct

the wrong done to lessees by defendants' conduct, lessees' due process rights should be

recognized via a declaratory judgment, and an injunction should issue directing

defendants to provide lessees with the same due process and procedural rights accorded

all other registered vehicle owners.

Accordingly, plaintiff more than meets the requirements for class certification

imposed by Rule 23(b). In addition, although it is necessary to satisfy only one of the

three factors in that subsection, plaintiff here can satisfy all three. With respect to

subdivision (1) of Rule 23(b), it is clear that if defendants prevailed in this case on the

basis of their 'lessees have no rights' defense, such a result "would substantially impair or

impede [other lessees'] ability to protect their interests" by creating precedent in favor of

the City that, while not binding in a subsequent case, would be extremely difficult to

overcome. Fed. R. Civ. P. 23(b)(1)(B). On the other hand, because such a ruling would

not be binding, there would be "a risk of . . . inconsistent or varying adjudications with

respect to individual members of the class which would establish incompatible standards

20

of conduct for the party opposing the class . .." *Id.* Rule 23(b)(1)(A).  The appropriate

standard for defendants' treatment of lessees and other non-titled registered owners

should be established from the outset on a systemic basis.  Class action status is the

exclusive procedural vehicle for ensuring such a result.

For similar reasons, plaintiff satisfies subdivision (3) of Rule 23(b).  Because of

the issues presented by defendants' class-wide arguments, "questions of law or fact

common to the members of the class predominate over any questions affecting only

individual members" and "a class action [will be] superior to other available methods for

the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *see In re*

*Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) ("Although 'a

defense may arise and may affect different class members differently, [this] does not

compel a finding that individual issues predominate over common ones.'  So 'long as a

sufficient constellation of common issues binds class members together, variations in the

sources and application of a defense will not automatically foreclose class certification")

(quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir.

2001)).

A class action will also be superior to other methods of resolving the issues herein

because it will bring awareness of the potential loss of significant rights to those who

might not otherwise realize they have a claim.  Without class certification, such

individuals are likely to go uncompensated, and the defendants may be undeterred from

continuing their current course of unequal treatment of vehicle lessees.

21

The "matters pertinent to" findings under subdivision (b)(3) apply strongly to this case as well.  Because lessees tend to have smaller claims, none of which have sufficient value to motivate individual litigation, "the interest of members of the class in individually controlling the prosecution or defense of separate actions" is likely to be minimal or nonexistent.  Fed. R. Civ. P. 23(b)(3)(A).  There is no indication that there is any pending litigation by any lessee seeking similar relief to that sought by plaintiff herein.  Thus, "the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class" should not be a factor.  *Id.* Rule 23(b)(3)(B).  As this Court is the Court that has issued the rules and decisions in the related *Krimstock* litigation, and thus has a vested interest in seeing those rules and orders properly enforced and carried out, it is "desirab[le] . . . [to] concentrat[e] the litigation of the claims in [this] particular forum."  *Id.* Rule 23(b)(3)(C).  Finally, as there are apparently no lawsuits by other potential class members, and this proceeding will give a voice to other small-stakes plaintiffs like Mr. Kapiti, the litigation of these claims and defenses as a class action does not raise the specter of "difficulties . . in the management" of the case.  *Id.* Rule 23(b)(3)(D).

In sum, plaintiff strongly satisfies all of the necessary requirements for the certification of this matter as a class action.  Accordingly, plaintiff's motion for class certification pursuant to FRCP 23 should be granted.

**POINT II**

**THE COURT'S PRIOR UNSEALING ORDERS
SHOULD BE RECONSIDERED AND VACATED**

In the Order granting plaintiff leave to move for class certification, this Court also

authorized plaintiff to seek reconsideration of the Court's orders compelling the unsealing

of plaintiff's criminal file.  Those orders should be reconsidered and vacated as the Court

applied the wrong standard in granting defendants' application.  For example, the Court's

April 28, 2008 Order applied the liberal discovery test of FRCP 26.  Yet, the cases cited

by the Court did not address the issue of unsealing criminal files, but only the use and

production of *unsealed public records*.  In fact, in one of those cases, *Jane Doe v.*

*Yorkville Plaza Assoc.*, 1996 WL 343059 (S.D.N.Y. June 21, 1996), the court *denied* a

request for production of *unsealed* records maintained by the District Attorney.

Significantly, in their opposition to plaintiff's letter application, defendants did not

dispute that the Court applied the wrong standard in ruling on their unsealing motion.

Kessler Decl. Ex. "D".  Indeed, even defendants would be hard-pressed to assert any

substantive opposition, as all of the cases cited in their January 28, 2008 submission to

Magistrate Judge Fox applied the pleading necessity standard of FRCP 11, not the loose

relevance standard of Rule 26.  *See*, *e.g.*, *Holness v. City of New York*, No. CV 2003-5598

(E.D.N.Y. Jan. 9, 2004) ("the data . . . in the sealed arrest records . . . *are necessary*

*before counsel for defendants can submit an answer in a manner consistent with Rule 11*

*of the Federal Rules of Civil Procedure*") (emphasis added).   See Kessler Decl. Ex. "E".

23

Defendants have not and cannot argue that there is a "pleading necessity" for the unsealing of plaintiff's criminal file. Under that standard, defendants – who managed to successfully file their answer nearly a year ago *without* access to the sealed file – are not entitled to an unsealing order. As the Court overlooked the correct standard, the orders should be reconsidered and vacated and the unsealing application denied.

Further, it has recently come to light that defendants have spent the past seven months seeking to unseal a file they already possess. At her May 29, 2008 deposition, the A.D.A. who handled plaintiff's criminal trial acknowledged that, in preparing for her deposition, she reviewed her office's file from that case. See Kessler Decl. Exhibit "I". Her file contained a copy of every document in the sealed file. Incredibly, defendants' counsel refused to produce a complete copy of the A.D.A.'s file, claiming that it would be improper because plaintiff's counsel was seeking to keep it sealed. Yet, defendants' witness had access to, and in fact reviewed the 'sealed' file in preparation for her deposition. Kessler Decl. ¶ 10 & Ex. "I".

It is difficult to conceive how an attorney in a federal proceeding could play a charade of this nature on counsel and the Court. On the merits, defendants can never demonstrate that there is *any* 'pleading necessity' for unsealing a file whose contents their witness – whom defendants identified in their Rule 26 initial disclosures *nine months ago* as a key person with knowledge of the case – has possessed from day one. See Kessler Decl. Ex. "C". In any event, if this case is certified as a class action, the issue of plaintiff's sealed criminal file will be rendered irrelevant to the class claims and defenses,

24

thereby providing yet another basis for reconsidering and vacating the Court's prior unsealing Orders.

## <u>CONCLUSION</u>

For all the foregoing reasons, plaintiff Mark Kapiti respectfully requests that the Court: (1) Certify this matter as a class action pursuant to Federal Rule of Civil Procedure 23; (2) Reconsider and vacate the Court's prior Orders with respect to the unsealing of the file of plaintiff's acquittal in the State criminal case, and (3) Grant plaintiff such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            June 5, 2008

                              Respectfully submitted,

                              LAW OFFICES OF STEVEN L. KESSLER

                    By:    *Steven L. Kessler*
                              Steven L. Kessler (SK-0426)
                              *Attorneys for Plaintiff Mark Kapiti*
                              122 East 42nd Street, Suite 606
                              New York, N.Y.  10168
                              (212) 661-1500

Eric M. Wagner (EW-4153)
      *On the Memorandum*