```
                                                         1


 1

 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   ---------------------------------------------X
     MARK KAPATI,
 4
                                    PLAINTIFF,
 5

 6        -against-           Case No:
                              07 CV 3782
 7

 8   RAYMOND W. KELLY, in his official capacity as
     Commissioner of the New York  City Police
 9   Department, and THE CITY OF NEW YORK,

10                                  DEFENDANTS.
     ---------------------------------------------X
11

12              DATE: May 29, 2008

13              TIME: 2;15 P.M.

14

15

16       EXAMINATION BEFORE TRIAL of a Witness,

17   RITA BIENIEWICZ, taken by the Plaintiff,

18   pursuant to Notice and to the Federal Rules of

19   Civil Procedure, held at the offices of

20   Corporation Counsel, 100 Church Street, New

21   York, New York, before a Notary Public of the

22   State of New York.

23

24

25
```

2

```
 1

 2   A P P E A R A N C E S:

 3

 4   LAW OFFICES of STEVEN L. KESSLER
          Attorney for Plaintiff
 5        The Chanin Building
          122 East 42nd Street
 6        New York, New York 10168
          BY: STEVEN L. KESSLER, ESQ.
 7

 8

 9   MICHAEL CARDOZA, ESQ.
          Corporation Counsel
10        Attorney for the Defendants
          100 Church Street
11        New York, New York
          BY: PHILIP S. FRANK, ESQ.
12            DAVID HAZEN, ESQ.
          File #: 2007016236
13        Control #. HHH02015

14                  *         *         *

15

16

17

18

19

20

21

22

23

24

25
```

1

2  R I T A   B I E N I E W I C Z, called as a

3  witness, having been first duly sworn by a

4  Notary Public of the State of New York, was

5  examined and testified as follows:

6  EXAMINATION BY

7  MR. KESSLER:

8      Q.  Please state your name for the

9  record.

10     A.  Rita Bieniewicz

11     Q.  Where do you reside?

12     A.  My work address is 198 East 161st

13 Street, Bronx, New York 10451.

14         MR. HAZAN:  For the record, I'm

15     representing the witness for this

16     deposition.

17     Q.  Is that correct?

18     A.  Yes.

19     Q.  Good afternoon, Mr. Bieniewicz,

20 it's nice to see you again.  Have you ever

21 been deposed before?

22     A.  No.

23     Q.  The way I'm going to work it is I'm

24 going to ask you question, you answer them. You

25 are under oath so I expect nothing but truthful

6

1
2       Q.   '07?
3       A.   Yes.
4       Q.   In 2006, you were handling the
5   misdemeanor cases?
6       A.   Yes.
7       Q.   In preparation for today, did you
8   review any documents?
9       A.   Yes.
10      Q.   What documents did you review?
11      A.   I looked over the file of
12  Mr. Kapiti.
13      Q.   When you refer to the file, are
14  those the documents that you supplied to the
15  city pursuant to our request?
16      A.   Those are the documents that I
17  supplied.  If I can look over them before --
18      Q.   I'm going to have marked
19  collectively what's been Bates stamped as --
20  the last digit is missing.  What's been Bates
21  stamped N city 118 through New York City 128;
22  is that correct Mr. Frank?
23           MR. FRANK:  That's correct.
24           MR. KESSLER:  I ask it be marked
25       Plaintiff's Exhibit 12.

                                                              7

 1
 2              (Whereupon, the aforementioned
 3         replace was marked as Replace Exhibit
 4         Replace for identification as of this
 5         date by the Reporter.)
 6         Q.   I'm going to ask that you take a
 7    look at what's been marked Plaintiff's exhibit
 8    12?
 9         A.   (PERUSING).
10         Q.   Is that the file you are referring
11    to?
12         A.   These are documents that were
13    within the file that you are referring to.
14         Q.   Was there anything in addition you
15    reviewed that was part of the file that was not
16    -- that is not part of this packet?
17         A.   The white folder.  I reviewed our
18    people's white folder with the notices and
19    arraignment information and the criminal
20    complaint.
21              MR. HAZEN:  For the record
22         defendants' don't have it.  Defendant's
23         -- that information is pursuant to 16050
24         and we have not been able to get it
25         because of the pending motion before

                                                                  8

1
2          judge Burman in this case.
3               MR. KESSLER:  The complaint I have
4          a copy of.
5               MR. HAZEN:  As part of this file.
6               MR. KESSLER:  No, not as part of
7          this file.
8               MR. HAZEN:  It's our position that
9          that complaint was produced before the
10         case was sealed as part of a different
11         file and those documents as they are
12         contained in the district attorney's
13         file are sealed and that's why they are
14         not been produced as part of the
15         district attorney's file.
16              MR. KESSLER:  I'm going to mark
17         this as Plaintiff's 13.
18              (Whereupon, the aforementioned
19         replace was marked as Replace Exhibit
20         Replace for identification as of this
21         date by the Reporter.)
22         Q.   I'm happy to call him as a witness
23   but for purposes of today, do the parties
24   stipulate that 13 is the cover sheet copy of
25   the cover sheet that came with among other

                                                                9

1
2   things the ADA's file?
3          MR. FRANK:  Yes.
4       Q.   According to the cover sheet, it
5   indicates that what's been produced among other
6   things is quote ADA Bieniewicz file concerning
7   the leased vehicle Bates stamped NYC. 118-128.
8   It is correct that there were other items as
9   part of the file that were not produced in the
10  document that I'm showing you now; correct?
11      A.   Yes.
12         MR. HAZAN:  Again just for me the
13      record those documents are sealed.
14         MR. KESSLER:  For the record I'm
15      going to ask for sanctions but you've
16      made your record.
17         MR. HAZEN:  For the record it would
18      be improper for you to ask for sanctions
19      because those documents are sealed and
20      you have objected to us getting access
21      to those documents.
22      Q.   Other than the white folder that
23  you referred to, the criminal court complaint
24  and the documents before you, anything else you
25  reviewed in preparation for coming here today?

10

1
2       A.   I might have glanced at the DA
3   summary write up which we staple to the white
4   folder.  In essence it's the same as the white
5   folder.
6       Q.   We'll call that as part of the
7   white folder.  Anything else?
8       A.   No.
9       Q.   Did you speak to anybody about the
10  case?
11      A.   Other than Mr. Frank and Mr. Hazen,
12  no.
13      Q.   When did you speak to Mr. Frank and
14  Mr. Hazen?
15      A.   I believe it was the beginning of
16  last week.
17      Q.   When were you asked to produce your
18  file?
19          MR. HAZEN:  Objection.  I'm
20      instructing her not to answer.
21      A.   I spoke --
22          MR. HAZEN:  I'm instructing you not
23      to answer as to when she talked to you.
24      You are asking contents.
25          MR. KESSLER:  You maybe

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com
10

                                                        17

 1
 2          Q.   Other than the documents that you
 3   mentioned, so that's what was produced, the
 4   complaint that's Plaintiff's 14 and the folder,
 5   is there anything else that made up part of
 6   your file?
 7          A.   Motions.  But I did not review
 8   them.
 9          Q.   Were there motions as part of this
10   case?
11          A.   Yes.
12          Q.   Anything else?
13          A.   Not to my recollection.
14               MR. HAZAN:  Can I have moment
15          quickly just to speak to my client.
16               MR. KESSLER:  You may.
17               (Whereupon, a short recess was
18          taken.)
19               MR. HAZEN:  The witness would like
20          to clarify an answer to a question that
21          she previously gave.
22               THE WITNESS:  I neglected to say
23          that there was also a file police
24          paperwork within the white folder.  The
25          exact contents I wouldn't be completely

18

1
2          sure but it would include the OMNI for
3          arrest complaints and possibly the chart
4          of the police officers days off.
5     Q.   Anything else?
6     A.   I wouldn't know exactly what the
7  police paperwork was.
8     Q.   Would there be any notes other than
9  on the file?
10    A.   No.
11    Q.   Anything from you or the assistant
12 who may have been handling the case in the part
13 other than on the file?
14         MR. HAZEN:  Objection to form.
15    A.   Are you referring to status sheets?
16    Q.   I'm referring to whatever.
17    A.   The case was on for several
18 adjournments so there's a likelihood there were
19 status sheets both possibly if I stood on the
20 case my notations and if the ADA stood on the
21 case in the part her notations.
22    Q.   Would there be any notes of yours
23 for example, if you had a meeting with police
24 officer involved in the case?
25         MR. HAZEN:  Objection to form.

19

1
2          Are we talking about when whether are or
3          whether there would be hypothetically.
4          A.   On the white folder, it's my
5    practice to write down.
6          Q.   Other than the white folder, would
7    there be any sheets like the yellow pad I have
8    here or something like that?
9          A.   Not to my recollection.
10         Q.   Let me see if I understand.  You
11   are aware that the records were sealed
12   following the acquittal?
13         A.   Yes.
14         Q.   How does the sealing of the records
15   affect the district attorney's file mainly your
16   file that the office keeps in the office?
17              MR. HAZEN:  Objection to the form.
18         You can answer to the extent you know.
19         A.   Do you mean physically affect?
20         Q.   Yes.
21         A.   The court file and my file are kept
22   at different places but it's my understanding
23   that it's no longer public record and that's
24   all I know.
25         Q.   Is anything physically removed from

20

1
2      the DA file, from your file?
3          A.   No.
4          Q.   Because of the sealing?
5          A.   No.
6          Q.   Your file remains the same way it
7      was after the case was over; correct?
8          A.   That's correct.
9          Q.   Is there a notation marked on the
10     file indicating that the record is now sealed?
11         A.   No.  There is a record of my
12     closing it out and putting it in closed files.
13         Q.   How would you know then if this
14     particular record was sealed or if it was still
15     open?
16             MR. HAZEN:  You can answer to the
17         extent you know.
18         A.   In in particular case, I looked it
19     up on our system which is called Bronx DA and
20     it said sealed pursuant to 16050 and that's
21     when I knew the case was sealed.
22         Q.   Whether when that?
23         A.   A couple of weeks ago.
24         Q.   In response to this litigation?
25         A.   Yes.

                                                                21

```
 1
 2          Q.   Did you have any reason to look at
 3   or check the file from the time after
 4   Mr. Kapati's acquittal until you were contacted
 5   about this case?
 6          A.   No.
 7          Q.   Did you in fact look at the file at
 8   any time between then and now?
 9          A.   After the acquittal?
10          Q.   Yes.
11          A.   No.  I just remembered one other
12   thing that would be in the file.  My trial
13   notes.
14          Q.   What would that be?
15          A.   My script of the testimony.  The
16   questions, not the answers of the witness.
17              MR. HAZEN:  Just to clarify the
18          last question.  The last question I
19          think you mistakeningly said from then
20          until then.  It should be until the
21          time she found out about this case.
22              MR. KESSLER:  So corrected.
23          Q.   Do you know if it is proper or
24   legal to review for any purpose let alone for
25   this case, information that has been sealed by
```

22

1
2    court order?
3        A.   I don't know.
4             MR. HAZEN:  Objection.
5        Q.   Other than the items you mentioned,
6    and the papers in front of you, which encompass
7    Plaintiff's 12 and Plaintiff's 14 collectively,
8    is there anything else that you know of that is
9    part of the ADA's file in this case?
10            MR. HAZEN:  Objection.
11            MR. KESSLER:  You can answer.
12       A.   Not to my recollection.
13       Q.   Is there anything else you reviewed
14   other than the items you just mentioned?
15       A.   No.
16       Q.   You were assigned the case in you
17   said May 2006?
18       A.   After reviewing the file, my
19   estimation is late May or early June.
20       Q.   Was it then assigned to you for the
21   duration?
22       A.   Yes.
23       Q.   Do you recall if it was in fact
24   late May or early June?
25       A.   After reviewing the file, I don't