Docket No. 07 Civ. 3782 (RMB)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK KAPITI,

Plaintiff,

-against-

RAYMOND W. KELLY, in his official capacity as
Commissioner of the New York City Police Department,
PROPERTY CLERK, New York City Police
Department, and THE CITY of NEW YORK,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND FOR RECONSIDERATION OF ORDERS COMPELLING THE UNSEALING OF PLAINTIFF'S CRIMINAL FILE

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Police Commissioner Raymond Kelly and the*
*Property Clerk of the New York City Police*
*Department*
*100 Church Street*
*New York, N.Y. 10007*

Of Counsel: DAVID M. HAZAN
Tel: (212) 788-8084

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ....................................................................................................... 1

ARGUMENT............................................................................................................. 4

POINT I

PLAINTIFF'S LEGAL BASIS FOR
ASSERTING HIS FOURTEENTH
AMENDMENT DUE PROCESS CLAIMS IS
FLAWED AND SHOULD BE
DISREGARDED. ...............................................................................4

POINT II

PLAINTIFF'S DECISION TO PURSUE A
CLASS ACTION ON THE EVE OF THE
CLOSE OF DISCOVERY IS PREJUDICIAL
TO DEFENDANTS. ...........................................................................7

POINT III

PLAINTIFF HAS NOT DEFINED AN
ASCERTAINABLE CLASS, CLASS CLAIMS,
OR RELIEF SOUGHT ON BEHALF OF THE
PROPOSED CLASS............................................................................8

A.  The "Proposed Class" is Unascertainable
and Overly Broad. ........................................................................ 9

B.  Plaintiff Does Not Define The Claims
Brought By The "Proposed Class." ............................................ 10

C.  Plaintiff Does Not Define the Relief
Sought By The "Proposed Class." .............................................. 11

D.  The "Proposed Class" Requires A Central
Issue Of Liability To Be Determined.......................................... 12

E.  Plaintiff's Proposal To Include Purchasers
Of Vehicles Is Overbroad. .......................................................... 12

**Page**

POINT IV

        THE PROPOSED CLASS DOES NOT MEET THE REQUIREMENTS OF FED. R. CIV. P. 23.................................................................................13

        A.    The Proposed Class Does Not Meet The Requirements of Fed. R. Civ. P. 23(a)....................................... 14

               1.    Plaintiff Fails to Satisfy the Rule 23(a) Numerosity Requirement.....................................................14

               2.    Plaintiff Fails to Satisfy the Rule 23(a) Commonality and Typicality Requirements. ....................................................16

               3.    Plaintiff Fails to Show That he and his Counsel are Adequate to Represent The Interests Of The Proposed Class Members Under Rule 23(a)(4)............................................17

        B.    The Proposed Class Does Not Meet The Requirements of Fed. R. Civ. P. 23(b)....................................... 18

POINT V

        PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDERS COMPELLING THE UNSEALING OF PLAINTIFF'S CRIMINAL FILE MUST BE DENIED...............................................................................22

CONCLUSION...................................................................................... 23

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                 **<u>Pages</u>**

<u>Alexandre v. Cortes</u>,
    140 F.3d 406 (2d Cir. 1998)............................................................................5, 13

<u>Amchem Products, Inc. v. Windsor</u>,
    521 U.S. 591 (1997)..........................................................................................21

<u>Ansari v. New York University</u>,
    179 F.R.D. 112 (S.D.N.Y. 1998) .......................................................................15

<u>Burley v. City of New York</u>,
    03 Civ. 0735 (WHP),
    2005 U.S. Dist. LEXIS 4439 (S.D.N.Y. Mar. 23, 2005) ..................................8, 9, 21

<u>Butler v. Castro</u>,
    896 F.2d 698 (2d Cir. 1990)................................................................................5

<u>Califano v. Yamasaki</u>,
    442 U.S. 682 (1979)) ....................................................................................16, 17

<u>Caridad v. Metro-North Commuter Railroad</u>,
    191 F.3d 283 (2d Cir. 1999)..............................................................................13

<u>City of Los Angeles v. Lyons</u>,
    461 U.S. 95 (1983)............................................................................................21

<u>Deposit Guar. Nat'l Bank v. Roper</u>,
    445 U.S. 326 (1980)..........................................................................................15

<u>Eisen v. Carlisle & Jacqueline, DeCoppet & Doremus</u>,
    391 F.2d 555 (2d Cir. 1968)..............................................................................19

<u>In re Fine Paper Antitrust Litigation</u>,
    617 F.2d 22 (3d Cir. 1980)................................................................................17

<u>Forman v. Data Transfer</u>,
    164 F.R.D. 400 (E.D. Pa. 1995).........................................................................12

<u>General Telephone Co. v. Falcon</u>,
    457 U.S. 147 (1982)..................................................................................13, 16, 17

**Cases**                                                            **Pages**

Harris v. Initial Security, Inc.,
  05 Civ. 3873 (GBD),
  2007 U.S. Dist. LEXIS 18397 (S.D.N.Y. Mar. 7, 2007) .......................................19

Hatian Ctrs. Council v. McNary,
  969 F.2d 1326 (2d Cir. 1992)...........................................................................9

In re Initial Public Offerings Securities Litigation,
  471 F.3d 24 (2d Cir. 2006)........................................................................13, 21

Kaczmarek v. International Business Machines Corp.,
  186 F.R.D. 307 (S.D.N.Y. 1999) .......................................................................19

Kaplan v. Pomerantz,
  132 F.R.D. 504 (N.D. Ill. 1990) ........................................................................17

Kingsepp v. Wesleyan University,
  142 F.R.D. 597 (S.D.N.Y. 1992) .......................................................................17

Krimstock v. Kelly,
  306 F.3d 40 (2d Cir. 2002).......................................................................6, 8, 15

Luedke v. Delta Airlines, Inc.,
  155 B.R. 327 (S.D.N.Y. 1993).........................................................................9

Marisol A. v. Giuliani,
  126 F.3d 372 (2d Cir. 1997).............................................................................17

McCarthy v. Kleindienst,
  741 F.2d 1406 (D.C. Cir. 1984) .......................................................................14

McClendon v. Rosetti,
  460 F.2d 111 (2d Cir. 1972).....................................................................4, 5, 8, 15

In re Nigeria Charter Flights Contract Litigation,
  233 F.R.D. 297 (E.D.N.Y. 2006) .....................................................................20

Parker v. Time Warner Entertainment Company, L.P.,
  239 F.R.D. 318 (E.D.N.Y. 2007) .....................................................................19

Primavera Familienstiftung v. Askin,
  178 F.R.D. 405 (S.D.N.Y. 1998) ..................................................................14, 15

- iv -

**Cases**                                                                                   **Pages**

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993)..............................................................................14, 17

Robinson v. Metro-North Commuter Railroad Co.,
    267 F.3d 147 (2d Cir. 2001).....................................................................................19

Sanneman v. Chrystler Corp. n/k/a DaimlerChrysler Corp.,
    191 F.R.D. 441 (E.D. Pa. 2000)..............................................................................12

In re Visa Check/MasterMoney Antitrust Litigation,
    280 F.3d 124 (2d Cir. 2001)...............................................................................13, 14

Wrighten v. Metropolitan Hospitals, Inc.,
    726 F.2d 1346 (2d Cir. 1984)...................................................................................17

**Statutes**

Fed. R. Civ. P. 23.................................................................................................... *passim*

Fed. R. Civ. P. 26(a) .......................................................................................................20

Fed. R. Civ. P. 30(b)(6)....................................................................................................15

New York Administrative Code §435-4.0 .........................................................................4

New York Criminal Procedure Law § 160.50 ..................................................................22

**Miscellaneous**

7a Wright, Millet & Kane, Federal Practice and Procedure § 1760 at 115-132 (1986) ..................9

7a Wright, Miller & Kane §176.91 ...................................................................................18

## PRELIMINARY STATEMENT

Defendants by their attorney Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in opposition to plaintiff's motion for class certification of a plaintiff class under Federal Rule of Civil Procedure 23. Defendants respectfully submit that plaintiff's proposed class is fatally flawed under the certification requirements set for in Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. Individual, material evidentiary differences predominate in all of the claims asserted by the proposed class, precluding certification under the Second Circuit's rigorous requirements. Stated simply, assuming *arguendo* that plaintiff's basis for his legal arguments is correct, the claims of each putative class member will rise or fall based upon highly individualized circumstances. Additionally, the Court should uphold its several previous orders and deny plaintiff's motion for reconsideration of orders compelling the unsealing of plaintiff's criminal file.

## BACKGROUND

In February, 2006, plaintiff signed a lease agreement with Honda Financial Services ("Honda") on behalf of "Marde Enterprises" for a 2006 Acura MDX, # 2HNYD18666H516660 ("the Vehicle"). See Exhibits "I" and "O" annexed to Hazan Decl. Honda was the title owner of the Vehicle. See Exhibit "N" annexed to Hazan Decl. Marde Enterprises was the primary lessee of the vehicle. See Exhibits "I" and Exhibit "EE" at 84:1- 84:11. Plaintiff Mark Kapiti, in his personal capacity, was the guarantor for the lease. See Exhibit "N" annexed to Hazan Decl. The terms of the lease agreement state that the lessee will "be in default if (a) [he] fail[s] to make any payment when due under this Lease;… or (i) the Vehicle is seized or confiscated for any reason by a law enforcement agency…" See Exhibit "I" annexed to Hazan Decl. Further, the lease agreement states that "[I]n the event of default, Lessor, may do any or all of the following without giving advance notice to [the Lessee]: (a) take any reasonable measures designed either to correct the default or to save Lessor from loss, in which case [Lessee] will pay Lessor upon Lessor's request for the costs and expenses incurred; (b) terminate the Lease and [Lessee's] rights to possess and use the Vehicle; (c) take possession of Vehicle by any method or manner permitted by law... (f) pursue any other remedy permitted by law." Id.

On May 15, 2006 plaintiff was arrested for allegedly transporting fireworks in the Vehicle. See Exhibit "A" at ¶ 28 annexed to Hazan Decl. The Vehicle was then impounded by the New York City Police Department ("NYPD"). Id. at ¶ 2. Thereafter, Honda issued a sworn statement, dated May 30, 2006, addressed to the City of New York NYPD Legal Bureau College Point Auto Pound, and signed by

1

Tara Miles, Customer Account Representative for Honda Financial Services that stated "Mark Kapiti is in default of a contractual agreement dated 2/6/06. The account is due for $504.20." See Exhibit "J" annexed to Hazan Decl. Moreover, in said sworn statement, Honda agreed to "indemnify and hold harmless" the City of New York for any liability or claim made against it arising from the release of the Vehicle to Honda. Id. Additionally, Tara Miles signed a release, dated May 30, 2006 wherein Honda agreed to release and indemnify the NYPD from all claims that could be asserted against it for the release of the Vehicle to Honda. See Exhibit "K" annexed to Hazan Decl.

After the Vehicle was seized, the NYPD sent plaintiff a Notice which stated that it was the intention of the Police Department to commence a civil forfeiture proceeding in order to confiscate the Vehicle, and to retain the Vehicle until the conclusion of those proceedings. See Exhibit "L" annexed to Hazan Decl. Moreover, the NYPD advised that it had received plaintiff's acceptance of a hearing to contest the Police Department's retention of the Vehicle, and that a hearing was scheduled for June 5, 2006. Id. Importantly, in bold lettering, the NYPD advised plaintiff that if the District Attorney determined that the vehicle is needed as arrest evidence, the hearing may not be held during the period the vehicle is so needed. Id. On June 5, 2006, Assistant District Attorney Rita Bieniewicz advised George Triffon at the NYPD that she needed to retain the Vehicle as arrest evidence. See Exhibit "FF" at 23:19-27: 13 annexed to Hazan Decl. Therefore, the hearing scheduled for June 5, 2006 was removed from the calendar under OATHS rules. See Exhibit "GG" at 33:23-34:19 annexed to Hazan Decl.

Thereafter, on August 9, 2006 Assistant District Attorney ("ADA") Rita Bieniewicz issued a release of the Vehicle, stating that the Office of the District Attorney, Bronx County, no longer needed the Vehicle as evidence. See Exhibit "M" annexed to Hazan Decl. From June 5, 2006 through August 9, 2006 the Vehicle remained in the NYPD's impound lot as "arrest evidence." Id.

At some point in time before the ADA released the Vehicle, it was determined that civil forfeiture proceedings related to the Vehicle would not be commenced. Instead, after the Vehicle was released by the ADA, it was returned to its owner, Honda. Importantly, Honda advised the NYPD that plaintiff was in default of his lease. See Exhibit "J" annexed to Hazan Decl. Moreover, from a plain reading of the language contained in the lease agreement, plaintiff was in default of the lease simply due to the fact that the Vehicle was seized by a law enforcement agency. See Exhibit "I" annexed to Hazan Decl. Because it was undisputed that Honda was the owner of the Vehicle, it was returned to Honda. See Exhibit "N" annexed to Hazan Decl.

After Honda regained possession of its property, Honda refused to return the Vehicle to plaintiff despite plaintiff's repeated requests to have it returned. See Exhibits "R," "S," "U," and "W" annexed to Hazan Decl. It was Honda's position that plaintiff did not make his February, 2006 lease payment and was therefore, always one month behind in his lease payments. See Exhibit "V" annexed to Hazan Decl. Accordingly, when the police seized the Vehicle, Honda decided to exercise its option to repossess the car based upon plaintiff's default in payments. See Exhibits "Q" and "V" annexed to Hazan Decl. Instead of returning the Vehicle to plaintiff, Honda sold the Vehicle at auction. See Exhibit "T" annexed to Hazan Decl. After the sale of the Vehicle at auction, Honda claimed that plaintiff still owed a balance of $5,817.99. Id.; Exhibit "A" at ¶ 38 annexed to Hazan Decl. Rather than challenging Honda's taking and sale of the Vehicle, plaintiff agreed to pay more than $3,000.00 to settle his outstanding balance with Honda. Id. at ¶ 40.

Plaintiff's Complaint alleges four causes of action. Id. at ¶¶ 41-62. First, plaintiff claims that his Fourth and Fourteenth Amendment Rights were violated by defendants because he was not provided with a "Krimstock hearing." Id. at ¶ 42. Second, plaintiff claims that defendants violated the Fourth and Fourteenth Amendments when defendants failed to adhere to their own procedures by permitting the retention and sale of the Vehicle without due process. Id. at ¶ 48. According to plaintiff, the arbitrary, capricious and irrational nature of defendants' conduct violates the Fourth and Fourteenth Amendments. Id. at ¶ 49. Third, plaintiff claims that his equal protection rights were violated because defendants allegedly target valuable cars for forfeiture and ignore cars of lesser value. Id. at ¶ 52. According to plaintiff, he was the "owner" of a vehicle of substantial value and was the victim of defendants' violation. Id. at ¶ 53. Fourth, plaintiff claims that the alleged "retention and sale" of the Vehicle is "grossly disproportionate" to the outcome of the criminal case and constitutes an excessive fine within the meaning of the Eighth Amendment to the United States Constitution. Id. at ¶¶ 57-58.

Finally, in addition to claiming $400,000 in compensatory damages, plaintiff seeks a declaratory judgment stating that defendants' violated plaintiff's rights under the Due Process Clause, the Equal Protection Clause and the Excessive Fines Clause. Id. at ¶¶ 62.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S LEGAL BASIS FOR ASSERTING HIS FOURTEENTH AMENDMENT DUE PROCESS CLAIMS IS FLAWED AND SHOULD BE DISREGARDED.**

Plaintiff erroneously asks the Court to consider his motion for class certification within the legal and procedural context of a line of cases involving civil forfeitures of property. See Pl. Mem. at 6. Plaintiff fails to recognize that the underlying facts of this case are distinguishable from each of the cases he relies upon. Importantly, a "Krimstock hearing" was not required in plaintiff's case because, after Honda informed the NYPD that it was repossessing the Vehicle because plaintiff defaulted on his lease, the NYPD returned the leased vehicle to its title owner, Honda, rather than retaining it and pursuing forfeiture. Thus, the entire legal basis for plaintiff's claims is flawed and misplaced. For the reasons set forth below, this Court should not consider plaintiff's motion for class certification within the legal and procedural context of the line of forfeiture cases presented in plaintiff's moving papers.

As an initial matter, plaintiff misstates the holdings of the cases cited in his brief that purportedly provide a legal context for his motion for class certification. As background, in 1972 the Second Circuit held that § 435-4.0 of the New York City Administrative Code, which governed the disposition of property being held by the property clerk, was unconstitutional in two respects: First, prisoners whose property was being held by the clerk did not receive any meaningful notice of the procedures for recovering it; and second, § 435-4.0 improperly placed the burden of proof on the prisoner to "establish that he had a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner." McClendon v. Rosetti, 460 F.2d 111 (2d Cir. 1972). Additionally, the Second Circuit in McClendon explicitly limited its holding to factual scenarios where the property clerk refused to return property when the property (1) was not related to any criminal proceedings; or (2) was related to the criminal proceedings but the proceedings had terminated; or (3) was needed as evidence in a criminal proceeding but was no longer needed for that purpose. Id. at 116.

4

On remand in McClendon, the District Court issued an order that established constitutional procedures for the disposition of property held by the clerk in the circumstances set forth by the Second Circuit. See Butler v. Castro, 896 F.2d 698, 700-02 & n.1 (2d Cir. 1990) (describing history of McClendon on remand). The District Court ordered that, "a voucher must be given to an arrestee for non-contraband property seized. The voucher must also give notice of the procedures to be followed to recover such property. A claimant must make a demand upon the property clerk for the property or money within 90 days of the earlier of (i) the termination of the criminal proceedings, or (ii) the issuance by the District Attorney of a release indicating that the property is not needed as evidence. The City must within ten days of a timely demand either return the item or items in question or initiate judicial action to authorize their continued detention. In the absence of a timely demand, the property clerk may dispose of the property." Id. at 702-03.

Here, the NYPD complied with the McClendon cases because the NYPD only retained the Vehicle during the period of time when the District Attorney's Office stated that it needed the Vehicle as arrest evidence. Immediately after the NYPD was notified that the District Attorney's office no longer needed the Vehicle, it was returned to its owner, Honda. Therefore, because the NYPD immediately returned the Vehicle to its owner after it was released by the ADA, the NYPD complied with all holdings in the McClendon cases.

Thereafter, in 1998 the Second Circuit held that a system which creates no procedure by which prisoners can contest the government's handing over of vehicles to *lien holders*, does not comport with the requirements of the Due Process Clause. Alexandre v. Cortes, 140 F.3d 406, 413 (2d Cir. 1998). Clearly, the Alexandre decision is not applicable to the instant case. In the instant case, the Vehicle was returned to its owner, not a lien holder. It is undisputed that Honda was an owner of the Vehicle. Moreover, it is undisputed that plaintiff leased the Vehicle and had not entered into a contract to purchase it. Further, the Vehicle was immediately returned to Honda, the owner, when the NYPD was notified that the District Attorney's Office no longer needed the Vehicle as evidence.

Curiously, plaintiff's moving papers also reference an alleged policy by the Giuliani Administration in 1999 wherein the City allegedly seized and forfeited vehicles of motorists arrested for driving while intoxicated without comporting with the requirements of the due process clause. See Pl. Mem. at 7. Defendants fail to see how or why these facts are relevant to plaintiff's claims. Here, plaintiff's leased vehicle was neither seized as a result of plaintiff driving while intoxicated, nor was the Vehicle held for forfeiture after Honda notified the NYPD that plaintiff defaulted on his lease. Rather,

plaintiff was arrested for allegedly transporting fireworks in the Vehicle. Moreover, the Vehicle was returned to its owner when the Assistant District Attorney no longer needed it as evidence.

Similarly, the Krimstock cases cited by plaintiff are not relevant to the issues presented in this case. The Krimstock cases only apply to fact patterns wherein (1) the government seizes motor vehicles from those accused of driving while intoxicated and of committing other crimes for which a motor vehicle could be considered an instrumentality; and (2) the government maintains possession of the vehicles with the hope of one day gaining title to them by prevailing in civil forfeiture proceedings. Krimstock v. Kelly, 306 F.3d 40, 43 (2d Cir. 2002). The Second Circuit held that individuals have a legal right pursuant to the Due Process Clause to challenge the seizure and retention of their vehicle promptly after the vehicle is seized rather than waiting until civil forfeiture proceedings are complete, often months or years after the seizure. Id. Here, after the NYPD was notified by Honda in May, 2006 that plaintiff defaulted on his lease, the NYPD did not retain the Vehicle for the purpose of proceeding to civil forfeiture proceedings. Rather, the NYPD returned the Vehicle to its owner, Honda. Therefore, the retention hearing guidelines set forth in Krimstock do not apply to this case because a "Krimstock hearing" was unnecessary.

Plaintiff concedes that the purpose of a "Krimstock hearing" is to determine whether the government is entitled to retain a vehicle until civil forfeiture proceedings are complete. In the instant case, however, the Vehicle was not retained for civil forfeiture proceedings. Instead, the NYPD returned the Vehicle to its owner. Therefore, a "Krimstock hearing" was unnecessary. Plaintiff claims that the Vehicle should have been returned to him, not Honda. It is defendants' position that the government is not required to have a "Krimstock hearing" to determine whether it can return a Vehicle in its possession to an uncontested owner, rather than the lessee of the Vehicle. For these reasons, the Court should not consider plaintiff's motion for class certification within the legal and procedural context set forth in plaintiff's moving papers. Moreover, if the Court were to issue an opinion with respect to whether plaintiff was entitled to a "Krimstock hearing," plaintiff's claims would likely be resolved in their entirety.

## POINT II

## PLAINTIFF'S DECISION TO PURSUE A CLASS ACTION ON THE EVE OF THE CLOSE OF DISCOVERY IS PREJUDICIAL TO DEFENDANTS.

Plaintiff's reasoning for waiting until the eve of the close of discovery to advise the court that he intended to add class litigants and move for class certification is wholly disingenuous. See Pl. Mem. at 13. As plaintiff acknowledges, Rule 23 of the Federal Rules of Civil Procedure requires that class issues be determined at the earliest practicable time. See Fed. R. Civ. P. 23. However, in the instant case, defendants were unaware that plaintiff intended to bring his claims on behalf of a class until May 1, 2008, on the eve of the close of discovery, when counsel for plaintiff advised the Court at a court conference that he intended to amend the Complaint to add class allegations. To date, plaintiff has not amended the Complaint to add class allegations and define a proposed class. Therefore, defendants are now put in a position where they are opposing a motion for class certification without knowing with specificity, the definition of the proposed class, the claims brought by the proposed class, and the relief sought on behalf of the proposed class.

Plaintiff disingenuously claims that he was unaware that this case could effect the property rights of thousands of people until he became aware of some of defendants' defenses to plaintiff's claims. As an initial matter, plaintiff's argument fails because defendants have consistently asserted the same defenses since the outset of this litigation. Defendants' Answer to plaintiff's Complaint, dated August 3, 2007, clearly stated that "[d]efendants have not violated any rights, privileges or immunities under the Constitution or laws of the United States or the State of New York or any political subdivision thereof." See Exhibit "B" at ¶ 64. Defendants' legal position has remained consistent since filing their Answer.[1] Specifically, defendants have consistently asserted that they did not violate plaintiff's due process rights when the Vehicle was returned to its owner, Honda.

Second, plaintiff's only basis for requesting class certification at this stage of the litigation (rather than an earlier juncture) is based upon a misrepresentation of defendants' legal position with respect to plaintiff's claims. See Pl. Mem. at 2, 13. Specifically, plaintiff asserts that his only basis for moving for

---

[1] Throughout this litigation defendants have presented several alternative legal theories to the Court, should the Court determine that the instant case is, in fact, a "forfeiture" case, falling within the Krimstock decisions. However, those legal theories are in no way a representation that the City has any policies that violate the due process rights of individuals who have had their vehicles seized by the NYPD.

class certification *at this juncture* is that (1) "Defendants recent court filings contend lessees such as [plaintiff] are not entitled to due process protection under <u>Krimstock</u> or, more broadly, any of the protections conferred by <u>McClendon</u> and related laws and rules, including the right to return the vehicle upon successful termination of proceedings relating to the vehicle;" (2) "defendants have argued that people who lease their vehicles, as a group, are not entitled to the same rights and protections as those who pay cash for their car," and (3) "defendants have… refused to provide <u>Krimstock</u> hearings" based upon individuals' status as lessees. <u>Id.</u> However, these ***are not defendants legal positions*** and there is no evidence that defendants' policies comport with these positions. In fact, defendants do not contest that lessees are entitled to due process rights under <u>Krimstock</u> and <u>McClendon</u> and it is wholly untrue that defendants refuse to provide <u>Krimstock</u> hearings to lessees of vehicles. When the City retains a leased vehicle for the purposes of forfeiture, the lessee is provided with due process in accordance with <u>Krimstock</u>. However, in the instant case, based upon the underlying facts and a variety of considerations, a decision was made to release the Vehicle to its owner, Honda, rather than to retain the Vehicle and pursue forfeiture. Thus, plaintiff's description of defendants' legal position is wholly incorrect. Plaintiff should be prevented from pursuing a class action at this stage of litigation given that his decision to pursue a class action at this stage is based solely on a misrepresentation of defendants' legal positions. Importantly, plaintiff's allegations have not changed since the inception of this lawsuit and he has waited almost a year after filing this action to even mention to the Court and defendants that he intended to purse a class action. Additionally, defendants are prejudiced by plaintiff's decision to pursue a class action on the eve of the close of discovery because they had no opportunity to engage in discovery related to issues discussed, Points III through IV, *infra*. For these reasons plaintiff's application must be denied.

## POINT III

### PLAINTIFF HAS NOT DEFINED AN ASCERTAINABLE CLASS, CLASS CLAIMS, OR RELIEF SOUGHT ON BEHALF OF THE PROPOSED CLASS.

In addition to the express requirements for class certification set forth in Federal Rule of Civil Procedure 23, Rule 23 contains an implicit requirement that the proposed class be "precise, objective and presently ascertainable." <u>Burley v. City of New York</u>, 03 Civ. 0735 (WHP), 2005 U.S. Dist. LEXIS 4439, at *28 (S.D.N.Y. Mar. 23, 2005). Thus, a court must determine, as a threshold matter, whether a

class definition is workable. <u>See</u> 7a Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1760 at 115-132 (1986). A court should not certify an overbroad class. <u>Hatian Ctrs. Council v. McNary</u>, 969 F.2d 1326, 1337-38 (2d Cir. 1992). Additionally, "a proposed class must be clearly defined so that it is 'administratively feasible for a court to determine whether a particular individual is a member.'" <u>Burley</u> at *28. Importantly, "courts have recognized that parties who seek class action certification must establish that a suitable method of identification is 'administratively feasible.'" <u>Luedke v. Delta Airlines, Inc.</u>, 155 B.R. 327, 329-330 (S.D.N.Y. 1993). For the reasons set forth herein, identifying and litigating plaintiff's proposed class would not be administratively feasible and would be both inefficient and burdensome to this Court.

### A. The "Proposed Class" is Unascertainable and Overly Broad.

Plaintiff proposes for the first time in his moving papers that the class consist of individuals who (1) leased vehicles; (2) had their leased vehicle seized by the NYPD pursuant to an arrest; and (3) had the vehicle returned to the leasing company.[2] <u>See</u> Pl. Mem. at 14. Additionally, plaintiff argues that the class "must include lessees who were deprived of a "'<u>Krimstock</u> hearing,' whether or not their vehicle was ultimately returned to the leasing company." <u>Id.</u> Finally, plaintiff argues that the class "should include any purchasers who did not hold title to their vehicles because of the terms of their installment contracts." <u>Id.</u>

As an initial matter, plaintiff makes no recommendation regarding how the proposed class can be ascertained. Upon information and belief a database containing such information does not exist. Moreover, with respect to individuals who were acquitted of the crimes they were arrested for, all arrest records pertaining to their arrest are sealed and inaccessible to the parties pursuant to New York Criminal Procedure Law § 160.50. The task of identifying the individuals in plaintiff's proposed class would be unduly burdensome, unnecessary, and possibly impossible.

Additionally, plaintiff's proposed class is extremely overbroad. Plaintiff's proposal does not take into account fact patterns where (1) members of the proposed class were provided with a form of due process, other than a "<u>Krimstock</u> hearing," prior to their vehicle being returned to the leasing company; (2) members of the proposed class did not request a due process hearing but were given notice of that option; (3) members of the proposed class consented to having their leased vehicle returned to the leasing

---

[2] Plaintiff's representation that defendants suggested that this would be an appropriate class is a complete misrepresentation of defendants' position. It is defendants' position that it is not appropriate to certify a class in this action. Moreover, the class proposed by plaintiff is overbroad and unascertainable.

company; (4) members of the proposed class had no property interest in the vehicle because they had not yet made significant payments on the lease; (5) members of the proposed class had no property interest in the vehicle because they defaulted on the lease and the leasing company repossessed the vehicle; (6) the seized vehicle was returned to the members of the proposed class by the leasing company; (7) members of the proposed class from whom the vehicle was seized were the guarantors on the lease and not the primary lessees; and (8) members of the proposed class from whom the vehicle was seized were not the lessees of the vehicle.  These are just some of the factual variations not contemplated by plaintiff's overly broad class wherein defendants would have alternative legal reasons for why the individual did not receive a "Krimstock hearing."  Because plaintiff's proposed class is extremely overbroad and unascertainable, plaintiff's motion for class certification must be denied.

## B. Plaintiff Does Not Define The Claims Brought By The "Proposed Class."

While plaintiff's Complaint puts defendants on notice of his individual claims of discriminatory treatment, defendants remain unaware of the claims plaintiff intends to pursue on behalf of the proposed class.[3]  Importantly, it appears that some of the claims pled in the Complaint may conflict with the proposed class members' legal arguments and the underlying fact patterns related to their cases.

First, the Second Cause of Action pled in plaintiff's Complaint alleges that defendants' actions towards plaintiff were arbitrary, capricious, and irrational in violation of the Fourth and Fourteenth Amendments.  See Exhibit "A" at ¶¶ 12-15, 47-50.  Further, plaintiff's Complaint alleges that defendants failed to follow their own procedures for retention of property seized incident to an arrest.  Id.  Now, it appears from plaintiff's moving papers that plaintiff's theory for certifying class conflicts with his Second Cause of Action.  Plaintiff appears to argue that the City's actions are not "arbitrary, capricious, and irrational" and in violation of their own procedures, but rather that the City has a well thought out practice that systematically violates the due process rights of the proposed class members.  Given this conflict, plaintiff's Second Cause of Action must either be withdrawn by plaintiff, with prejudice, or plaintiff's motion must be denied.

Second, plaintiff's Third Cause of Action alleges that his equal protection rights were violated because his leased vehicle had substantial value and defendants allegedly target valuable cars for forfeiture and ignore cars of lesser value.  See Exhibit "A" at ¶¶ 16-17, 51-54.[4]  Putting aside the fact that

---

[3] It appears from plaintiff's moving papers that he only intends to pursue his First Cause of Action, alleging deprivation of a "Krimstock hearing," on behalf of the class.  See Exhibit "A" at ¶¶ 41-46.

[4] Defendants note that plaintiff conducted no discovery with respect to this claim and has presented no evidence to support his allegations.  Thus, this claim will likely be dismissed pursuant to a motion for summary judgment.

plaintiff's leased vehicle was never the subject of forfeiture proceedings and was ultimately not held for forfeiture, plaintiff's equal protection claim limits the proposed class to individuals with "valuable cars." However, a class of people who leased "valuable cars" is unascertainable. First, the parties would have to litigate the meaning of "valuable" within the context of the claim. Then the parties would be forced to conduct mini-trials to determine whether each class member's vehicle was "valuable." The parties would have to examine, amongst other things, the age of each vehicle, the mileage of each vehicle, whether each vehicle was damaged in any way, and the maintenance history of each vehicle. Pursuing this claim on behalf of the class would clearly make the class unascertainable. Additionally, if plaintiff pursues this claim on behalf of himself then his allegations would conflict with some class members' claims who have vehicles that are not "valuable." Given this conflict, plaintiff's Third Cause of Action must be either be withdrawn by plaintiff, with prejudice,[5] or plaintiff's motion for class certification must be denied because the class is unascertainable.

Third, plaintiff's Fourth Cause of Action alleges that the retention and sale of plaintiff's leased vehicle, when plaintiff was acquitted of all criminal charges, is an excessive fine in violation of the Eighth Amendment. See Compl. at ¶¶ 18, 55-59. As an initial matter, this claim must fail on its face because it is undisputed that defendants did not retain or sell plaintiff's vehicle. Rather, *Honda* took possession of and eventually sold plaintiff's vehicle because plaintiff allegedly defaulted on his lease. Nevertheless, bringing plaintiff's Fourth Cause of Action on behalf of the proposed class would instantaneously make the proposed class unascertainable. A proposed class of people related to plaintiff's Fourth Cause of Action could only include individuals (1) who were not convicted of the crimes they were charged, (2) whose cars were ultimately sold, and (3) who did not enter into a settlement agreement with the leasing company before their car was sold. A mini-trial would have to be conducted on behalf of each of the proposed class members to make these determinations. For these reasons, plaintiff's motion for class certification must be denied because the proposed class is unascertainable.

## C. **Plaintiff Does Not Define the Relief Sought By The "Proposed Class."**

While plaintiff's Complaint puts defendants on notice of the specific relief he seeks, to date plaintiff has not described the relief that is requested by the proposed class. If the proposed class seeks compensatory damages, then there would have to be individual trials for each class member to determine the specific damages they suffered. Furthermore, if the proposed class is simply requesting declaratory

---

[5] If plaintiff chooses to withdraw certain claims, with prejudice, then he must also withdraw the portion of his claim for a declaratory judgment that relates to the underlying claim being withdrawn. See Exhibit "A" at ¶¶ 60-62.

11

relief then the motion for class certification must be denied for the reasons set forth in Point IV(B)(1). In either case, certifying a class is inappropriate. Moreover, ascertaining a class with damages that are similar or identical to those of plaintiff would be impossible. Therefore, plaintiff's motion for class certification must be denied.

### D. The "Proposed Class" Requires A Central Issue Of Liability To Be Determined.

Courts reject class definitions that "require addressing the central issue of liability in a case" to determine membership since the membership inquiry "essentially require[s] a mini-hearing on the merits of each case." Forman v. Data Transfer, 164 F.R.D. 400, 403 (E.D. Pa. 1995). The need to hold mini-hearings defeats the economic-savings that is a principle justification for the use of a class action. Sanneman v. Chrysler Corp. n/k/a DaimlerChrysler Corp., 191 F.R.D. 441, 446 & 454-57 (E.D. Pa. 2000).

Plaintiff's class definition includes all "lessees and purchasers who did not hold title to the vehicle "who were deprived of a "Krimstock hearing," whether or not their vehicle was ultimately returned to the leasing company." This definition is overbroad. It erroneously assumes that merely not having a "Krimstock hearing" establishes liability and therefore adequately identifies individuals who have claims. This is not the case. Under certain circumstances wherein the City intends to retain a Vehicle for forfeiture and where a Krimstock hearing is requested by an individual a hearing is required. However, there are many situations where a hearing is never requested or where a determination is made not to retain the seized vehicle and the vehicle is returned to its owner. Under those circumstances a "Krimstock hearing" is not required. Thus, in order to ascertain plaintiff's class, the Court would have to make legal determinations regarding when "Krimstock hearings" are required. Additionally, even if the Court made those determinations, plaintiff's proposed class would be unascertainable because individual inquiries would have to be conducted into each proposed class members' underlying fact pattern in order to determine whether he was unlawfully denied a "Krimstock hearing." For these reason, plaintiff's proposed class must be denied as overly broad and unascertainable.

### E. Plaintiff's Proposal To Include Purchasers Of Vehicles Is Overbroad.

Plaintiff argues that purchasers of vehicles who did not hold title to their vehicles should be included in plaintiff's class. See Pl. Mem at 14. The Court should deny this request because purchasers of vehicles and lessees of vehicles have different property rights with respect to who owns the Vehicle. The Second Circuit has already determined that when an individual purchases a vehicle using installment payments, the purchaser is the owner of the Vehicle and the company from whom the vehicle was

12

purchased is simply a lien holder (even though they remain the title holder until the payments on the vehicle are complete). <u>Alexandre v. Cortes</u>, 140 F.3d 406, 413 (2d Cir. 1998).  In the instant case, Honda's interest in the vehicle is clearly different than that of a lien holder who retains title to a vehicle until installment payments for its purchase are complete.  Here, plaintiff had only been leasing his vehicle for a few months when it was seized.  Furthermore, at the conclusion of a lease, the car is generally returned to the title owner of the vehicle unless the title owner and the lessee enter into a purchase agreement at that juncture.  Honda was undisputedly the owner of the Vehicle, not a lien holder at the time it was seized. Therefore, it was appropriate for the NYPD to return the vehicle to Honda.  For these reasons, the Court must not certify a class that includes purchasers of vehicles.

<b><u>POINT IV</u></b>

### THE PROPOSED CLASS DOES NOT MEET THE REQUIREMENTS OF FED. R. CIV. P. 23.

A district judge may certify a class only after making "a determination that every Rule 23 requirement is met." <u>In re Initial Public Offerings Securities Litigation</u>, 471 F.3d 24, 50 (2d Cir. 2006).  In making that determination, the District Court is required to make "a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues." <u>Id.</u>  The District Court  may resolve factual disputes relevant to each Rule 23 requirement to be persuaded that the requirements have been met, even if that resolution overlaps with a decision on the merits.  <u>Id.</u> at 41.  *Plaintiff bears the burden* of establishing that the proposed class satisfies the requirements of Rules 23(a) and (b).  <u>Caridad v. Metro-North Commuter Railroad</u>, 191 F.3d 283, 291 (2d Cir. 1999).  The District Court must conduct a rigorous analysis of the Rule 23 requirements.  <u>General Telephone Co. v. Falcon</u>, 457 U.S. 147, 160-61 (1982). The lesser standard of "some showing" by plaintiffs as to each requirement is not sufficient; rather, all of the evidence must be assessed as with any other threshold issue.  <u>Initial Public Offerings</u>, 471 F.3d at 26. Plaintiff's proposed class fails every requirement for certification.

In order to certify a class, the party seeking class certification must first demonstrate that the proposed class meets the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure: (1) the class is so numerous that joinder of all members is impracticable;  (2)  there are questions of law or fact common to the class; (3) the claims or defenses of the representatives are typical of the claims or defenses of the class; and (4)  the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); <u>In re Visa Check/MasterMoney Antitrust Litigation</u>, 280 F.3d 124, 132-133 (2d Cir.

13

2001). Basically, "Rule 23(a)'s interrelated prerequisites serve as 'guideposts' for determining whether the respective claims are sufficiently similar that a class action will serve as an efficient litigation control device." McCarthy v. Kleindienst, 741 F.2d 1406, 1410 (D.C. Cir. 1984). In the instant case, plaintiff cannot meet any of these requirements.

Second, the party seeking class certification must demonstrate that the proposed class action meets at least one of the requirements of Rule 23(b): (1) prosecution of separate actions by individual parties would create a risk of inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and that a class action is superior to other available methods for adjudication. Fed. R. Civ. P. 23(b); Visa, 280 F.3d at 133.

## A.    The Proposed Class Does Not Meet The Requirements of Fed. R. Civ. P. 23(a).

In the event that this Court finds that the Class meets the threshold identification requirement set forth in Point I, *supra*, the Class does not satisfy the four prerequisites set forth in Fed. R. Civ. P. 23(a). Plaintiff erroneously argues in his moving papers that it is defendants' position that the sole reason these factors are not met is because plaintiff defines the proposed class too broadly. Rather, defendants' position is that in addition to plaintiff defining the proposed class too broadly, for the reasons set forth below, plaintiff fails to meet his burden of proving each of the requirements set forth in Fed. R. Civ. P. 23(a).

### 1.    Plaintiff Fails to Satisfy the Rule 23(a) Numerosity Requirement.

Pursuant to Fed. R. of Civ. Prod. 23(a)(1) plaintiff may sue as representative of a class on behalf of all *only if* "the class is so numerous that joinder of all members is impracticable." The Second Circuit has emphasized that the applicable standard is not whether joinder would be impossible, but merely whether it would be impracticable. See Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

In determining whether a proposed class "is so numerous that joinder of all members is impracticable, courts look at a number of factors, including "(1) judicial economy arising from the avoidance of a multiplicity of actions; (2) the geographic dispersion of class members; (3) the financial resources of class members; (4) the ability of claimants to institute individual lawsuits; (5) the amount of each member's individual claim; (6) knowledge of the names and existence of the potential class members; and (7) whether potential class members have already joined other actions." Primavera Familienstiftung v. Askin, 178 F.R.D. 405 (S.D.N.Y. 1998) (citing Robidoux, 987 F.2d at 936). The class

action device is typically reserved for those situations "where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of...individual suits for damages." <u>Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326, 339 (1980).

As of the filing of the class certification motion, not a *single* person, other than plaintiff Mark Kapiti can be confirmed as a member of plaintiff's proposed class.[6] Therefore, it is virtually impossible for the court to analyze plaintiff's proposed class using the seven factors set forth above in <u>Primavera</u>. Additionally, because the number of members of this class cannot be determined, plaintiff has not shown that "the class is so numerous that joinder of all members is impracticable." Furthermore, plaintiff has submitted no evidence to support the proposition that "permitting this suit to go forward as a class action is necessary to avoid a multiplicity of redundant lawsuits." <u>Ansari v. New York University</u>, 179 F.R.D. 112, 115 (S.D.N.Y. 1998). Importantly, plaintiff also does not have any evidence which suggests that this is a situation where the class members are unable to bring lawsuits on their own behalf because they are incarcerated, unsophisticated, or elderly." <u>Ansari</u>, 179 F.R.D. 112, 115. In fact, plaintiff has provided no evidence to suggest that members of this putative class are people other than those who are well-educated, financially stable members of society. <u>Deposit</u>, 445 U.S. 326, 339. Finally, if plaintiff's assertions that his claims are worth a total of $400,000 are made in good faith, then it would be economically feasible for class members with equivalent claims to bring them on their own behalf. Based upon plaintiff's own valuation of this case, this is not a situation where it is not economically feasible for class members to bring claims on behalf of themselves because the damages are small.

Plaintiff's argument for proving numerosity is based upon misrepresentations of the underlying record and a baseless accusation that conduct of defense counsel "raises serious ethical questions." <u>See</u> Pl. Mem. at 15-16. Contrary to plaintiff's representation, defendants deny that they have a systemic policy or practice of denying lessees the due process and procedural rights mandated by <u>Krimstock</u> and <u>McClendon</u>. In fact, there is <u>no evidence</u> in the record to support such accusations. Furthermore, throughout the course of this litigation plaintiff conducted no discovery related to the policies and practices of the City of New York. With respect to the deposition of Officer George Triffon, defense counsel objected to questions related to the policies and practices of the City of New York because he was not produced for deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) and was not prepared, nor qualified, to answer such questions. As background, plaintiff served defendants with a Notice of

---

[6] Because the question of numerosity also implicates the arguments raised by defendants regarding identity of the class, these arguments are also incorporated herein by reference.

15

Deposition, dated January 15, 2008 that stated his intent to take the deposition of "plaintiffs or plaintiff's witnesses or agents, having knowledge of the facts herein." See Exhibit "F" annexed to Hazan Decl.  By letter, dated January 28, 2008, defendants objected to the Notice because it was vague, confusing, overbroad and did not comply with the Federal Rules of Civil Procedure. See Exhibit "G" annexed to Hazan Decl.  Nevertheless, after discussion with plaintiff's counsel, defendants agreed to produce Officer Triffon  as a fact witness who would testify about the facts known to him related to plaintiff's leased vehicle. See Exhibit "H" annexed to Hazan Decl.  Officer Triffon was explicitly produced as a fact witness. Id.  Moreover, plaintiff was reminded that defendants listed at least thirteen additional fact witnesses that may be used to support their defenses. Id.; See Exhibits "D" and "E" annexed to Hazan Decl.   Plaintiff never noticed the deposition of a witness who could testify about the policies and procedures of the City of New York pursuant to Fed. R. Civ. P. 30(b)(6).

Furthermore, Tara Schoolkraft's testimony (Honda's witness) that she was familiar with hundreds of leased vehicles given back to Honda by the City over a period of many years is not evidence that the vehicle's were returned in violation of individuals' due process rights.  Importantly, plaintiff conducted no discovery into the circumstances surrounding the return of vehicles to Honda.  If Ms. Schoolkraft is correct, there are many scenarios wherein vehicles may have been returned to Honda; i.e.: lessee does not request a "Krimstock hearing" despite being given notice of the option; lessee agrees to have vehicle returned to leasing company; Honda repossessed vehicle from lessee.  Thus, Ms. Schoolkraft's testimony does not have any bearing on plaintiff's allegation that the City of New York has a policy and practice of denying lessees due process.  Moreover, Ms. Schoolkraft's testimony does not in any way bolster plaintiff's argument that the proposed class is sufficiently numerous for purposes of Rule 23(a)(1). Therefore, plaintiff's motion for class certification must be denied.

## 2.  Plaintiff Fails to Satisfy the Rule 23(a) Commonality and Typicality Requirements.

The United States Supreme Court has also held that "the class action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named plaintiffs only.'" General Telephone Co. of Southwest, 457 U.S. 147, 155 (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)).  "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'  For in such cases, 'the class action device saves the resources of the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical

fashion under Rule 23.'" <u>General Telephone Co. of Southwest</u>, 457 U.S. at 155 (quoting <u>Califano v.</u> <u>Yamasaki</u>, 442 U.S. at 700-701)).

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997). "These requirements ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" <u>Id.</u>(quoting <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 157 n. 13)). "The typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability…" <u>Robidoux v. Celani</u>, 987 F.2d 931, 936-37 (2d Cir. 1993).

It is clear that resolution of the asserted claims will turn on highly individualized determinations of fact and law. <u>See</u> Points I through III, *supra*. Before certifying the class, the Court will have to determine: (1) whether the class members had a property interest in their leased vehicle; (2) whether the leasing company repossessed the vehicle; (3) whether the individual from whom the car was seized was the lessee; (4) whether the vehicle was "valuable" as defined within the context of plaintiff's claims; (5) whether the individual would have likely prevailed if he had received a "<u>Krimstock</u> hearing;" (6) whether the individual was ultimately acquitted of the crimes for which he was charges; (7) whether the vehicle was used as an instrumentality of the crime for which he was charged; and (8) whether the City of New York intended to forfeit the seized vehicle. These are just some of the legal and factual determinations that the Court will need to make on a individual case by case basis. The issues involved do not turn on questions of law applicable in the same manner to each member of the class. Rather, the Court will have to conduct individualized mini-trials to determine whether each class members' due process rights were violated and what damages, if any, each class member is entitled to recover. Simply, plaintiff has not met the commonality and typicality prongs of Rule 23(a) and certification should be denied for this reason alone.

### 3. Plaintiff Fails to Show That he and his Counsel are Adequate to Represent the Interests of the Proposed Class Members Under Rule 23(a)(4).

Plaintiff has failed to show that he[7] and his counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of counsel requires that counsel be competent and void

---

[7] Plaintiff cannot adequately represent the proposed class because, as explained in Point III B, *supra*, some of his claims conflict with the proposed class members' claims.

of ethical infirmities, including conflicts of interest. 7A Wright Miller & Kane, § 1769.1, at 374-395. See, e.g.., Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346 (2d Cir. 1984); In re Fine Paper Antitrust Litigation, 617 F.2d 22, 26-28 & n. 6 (3d Cir. 1980); Kingsepp v. Wesleyan University, 142 F.R.D. 597, 602-603 & n. 3 (S.D.N.Y. 1992); Kaplan v. Pomerantz, 132 F.R.D. 504 (N.D. Ill. 1990). In addition, the Federal Rule of Civil Procedure 23(g)(1)(C)(ii) states that in appointing class counsel, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23 (g)(1)(C)(ii).

In the instant case, counsel for plaintiff concedes in his motion papers that he does not have experience handling class actions. See Pl. Mem. at 18. Counsel for plaintiff nevertheless argues that despite his inexperience litigating class action lawsuits, he is suitable to represent the proposed class because of his experience in "forfeiture" law. Id. However, as explained in Point I, *supra*, counsel's experience in forfeiture law is irrelevant to this lawsuit because the underlying fact pattern in this case does not involve the "forfeiture" of a vehicle. In fact, the Vehicle was returned to its owner, Honda, rather than ultimately proceeding with forfeiture proceedings. Therefore, counsel's experience in forfeiture law is irrelevant to this lawsuit, and counsel has not provided any evidence that he will be an effective representational class counsel. For these reasons he should not be appointed class counsel if a class is certified.

Second, the fact that counsel for plaintiff sublets office space from counsel for Honda may create an appearance of a conflict of interest that would prevent him from representing the class effectively. Id. at 18, fn. 2. To be clear, defendants are not in any way suggesting any improprieties between counsel. However, the financial relationship between counsel for plaintiff and counsel for Honda, a corporation who may have retained and sold many of the proposed class members' vehicles, may create an appearance of impropriety from the perspective of members of the proposed class. Therefore, defendants disclose this information to the Court in an abundance of caution and defer to the Court regarding whether it feels the financial relationship creates an appearance of impropriety.

**B.**     **The Proposed Class Does Not Meet The Requirements of Fed. R. Civ. P. 23(b).**

Although the defendants have already shown that the plaintiff has not satisfied the threshold requirements of Fed. R. Civ. P. 23(a), or the implicit requirement to ascertain the identity of the proposed class, in the event this Court finds otherwise, the class may also not be certified under Fed. R. Civ. P. 23(b). As initial matter, as explained in Points I through III, *supra*, prosecutions of separate actions by individual parties would not create a risk of inconsistent adjudications because the determination

18

regarding whether each class member's due process rights were violated will be based upon the specific, individual facts related to the seizure and disposal of their vehicle. Therefore, plaintiff's proposed class cannot be certified under Fed. R. Civ. P. 23(B)(1).

Certification under 23(b)(2) is improper because the primary relief sought by plaintiff is monetary, not equitable. In his Complaint, plaintiff seeks compensatory and declaratory relief, as well as attorneys' fees and costs. At plaintiff's deposition plaintiff only claimed that he was entitled to compensatory damages and did not once mention that he was seeking declaratory relief.

These damages are incompatible with certification under Fed. R. Civ. P. 23(b)(2). Courts have consistently held that certification under 23(b)(2) is appropriate only when the relief sought is exclusively or predominately injunctive or declaratory or otherwise equitable. Eisen v. Carlisle & Jacqueline, DeCoppet & Doremus, 391 F.2d 555, 564 (2d Cir. 1968); Kaczmarek v. International Business Machines Corp., 186 F.R.D. 307, 313 (S.D.N.Y. 1999). In Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 164 (2d Cir. 2001). Further, the Second Circuit held that "[t]he district court may allow (b)(2) certification if it finds in its 'informed sound judicial discretion' that (1) 'the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed,' [case omitted], and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy." Id.

In order to determine whether injunctive/declaratory relief predominates such that 23(b)(2) certification is proper, the Court should "at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were plaintiff to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery." Robinson, 267 F.3d at 164.

Courts following Robinson have declined to certify classes under Rule 23(b)(2) where the plaintiffs have made similar claims to those alleged here. See e.g. Harris v. Initial Security, Inc., 05 Civ. 3873 (GBD), 2007 U.S. Dist. LEXIS 18397, at *23-24 (S.D.N.Y. Mar. 7, 2007)(where plaintiffs alleged, inter alia, discriminatory termination by the defendant, and alleging extreme mental distress and humiliation and sought compensatory damages, as well as punitive damages, court declined to certify class under Rule 23(b)(2): "Mere injunctive relief would not compensate Plaintiffs for that mental distress and humiliation."); Parker v. Time Warner Entertainment Company, L.P., 239 F.R.D. 318, 332 (E.D.N.Y.

19

2007)(where court found that requests for equitable relief did not predominate in large part because complaint made only broad requests for injunctive and declaratory relief, and because this relief would not provide a remedy for prior violations); In re Nigeria Charter Flights Contract Litigation, 233 F.R.D. 297, 304 (E.D.N.Y. 2006)(where certification under 23(b)(2) denied because declaratory relief sought would merely establish a basis for money-damages claims).

Applying the criteria set forth in Robinson to the plaintiff's motion, there can be no basis to certify the any of the classes under Rule 23(b)(2). First, the equitable relief sought by the plaintiff does not predominate over his claims for compensatory relief. Here, plaintiff's Complaint does not seek injunctive relief and the declaratory relief sought would merely establish a basis for plaintiff's money-damages claims. See Exhibit "A" at ¶¶ 60-62. The declaratory relief sought by plaintiff could only be for the purpose of assisting plaintiff in recovering compensatory damages. Courts regard a claim for declaratory relief for this purpose as a sham attempt to bootstrap certification under 23(b)(2). See e.g. In re Nigeria Charter Flights Contract Litigation, 233 F.R.D. 297, 304 (E.D.N.Y. 2006)("Plaintiffs in this case seek money damages and a declaratory judgment as to their contractual rights. As the requested judgment would merely declare rights establishing a basis for plaintiffs' money-damages claims, Rule 23(b)(2) certification is unavailable.") In the instant case, plaintiff's Complaint seeks $400,000 in compensatory damages, exclusive of costs and attorneys' fees. Exhibit "A" at p. 16-17. Additionally, plaintiff's Amended Initial Disclosures pursuant to Fed. R. Civ. P. 26(a), dated November 7, 2007, focus solely on compensatory damages. See Plaintiff's Amended Disclosures Pursuant to Fed. R. Civ. P. 26(A). Specifically, plaintiff claims that he is entitled to recover from defendants (1) all sums of money paid to Honda between May 15, 2006 and March, 2007; (2) all sums paid to State Farm Insurance Co. to insure the vehicle during the loss of use period; (3) all initial lease fees, prepaid taxes, title charges, and other fees paid to Honda Finance Co. at the inception of the lease term; (4) loss of use of the vehicle, quantified as the cost of procuring reasonably similar substitute transportation; and (5) all attorneys' fees incurred by plaintiff during the loss of use period for the purpose of resolving the situation with defendants and Honda. Id. Here, it is clear that the plaintiff would not have brought this action seeking equitable relief if there was no possibility of obtaining monetary damages.

Second, the declaratory relief sought by plaintiff is not reasonably necessary and appropriate should the plaintiff succeed on the merits. Plaintiff cannot obtain equitable relief because (1) he has an adequate remedy at law, i.e. monetary damages for the alleged injuries suffered; and (2) he cannot show an immediate risk of injury, as has not identified a specific future situation where he expects to have his

leased vehicle seized from him by the NYPD and returned to the title owner without being provided with due process. See City of Los Angeles v. Lyons, 461 U.S. 95 (1983)(Supreme Court reversed lower court injunction of police department policy to use chokeholds on arrestees, partially on the basis that the plaintiff, who had been injured when placed in a chokehold, had an adequate remedy at law for his injuries). Thus, even if the plaintiff ultimately prevails, he will not be entitled to equitable relief.

Therefore, under Robinson, plaintiff's request for equitable relief does not predominate over his claims for monetary damages. As a result, certification under Rule 23(b)(2) is inappropriate.

A plaintiff seeking to certify a class pursuant to Rule 23(b)(3) must also show that: (1) common questions of fact or law predominate over questions affecting individual class members; and (2) that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). "The predominance criterion is far more demanding" than Rule 23(a) commonality. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-624 (1997). In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiff's cause of action, the proof necessary for the various elements and the manageability of the trial of the issues. In Re IPO, 471 F.3d at 30. "The court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive law, facts, procedural due process and fundamental fairness." Id. Moreover, plaintiffs must make more than "some showing" of compliance that the predominance requirement has been met. In Re IPO, 471 F.3d at 32. "A district judge may certify a class . . . only if the judge . . . is persuaded to rule, based on the relevant facts and applicable legal standard, that the requirement is met." Id.

Based upon the record in this case, for the reasons set forth in Points I through III, *supra,* plaintiff cannot meet that exacting standard for certification of the proposed class as individual issues predominate over common questions of law and fact for each proposed class.

Additionally, for certification under Rule 23(b)(3), the court must also be convinced that maintaining the action as a class action is superior to other methods of adjudication. Burley, 2005 U.S. Dist. LEXIS 4439; Fed. R. Civ. P. 23(b)(3). Courts consider four non-exclusive factors to determine superiority: 1) the interest of the class members in individually controlling the prosecution or defense of separate actions; 2) the extent of litigation concerning similar issues already commenced by members of the class; 3) the desirability of litigating the action in this forum; 4) difficulties in managing the case as a class action. Id.

In the instant case, given the individual factual and legal determinations that must be made with respect to each proposed class member's claim, a class action would not be a superior method of

adjudication. If a class action were utilized, the proposed class members would, in all probability not have a fair and efficient adjudication of the claims and damages unless a mini-trial were conducted on behalf of each class member. Thus, the class action mechanism in this case is not superior to holding individual trials on the issues, facts and damages presented by each class member. For these reasons, plaintiff's application must be denied.

### POINT V

### PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDERS COMPELLING THE UNSEALING OF PLAINTIFF'S CRIMINAL FILE MUST BE DENIED.

Plaintiff's motion for reconsideration of this court's previous orders compelling the unsealing of plaintiff's criminal file must be denied and plaintiff must be compelled to produce an executed unsealing release pursuant to New York Criminal Procedure Law § 160.50 pursuant to Your Honor's Order, dated April 28, 2008. Plaintiff has exhausted all remedies in his refusal to comply with the numerous court orders to execute the unsealing release pursuant to NYCPL § 160.50. As background, on December 27, 2007, defendants moved to compel plaintiff to execute an unsealing release for the underlying police, criminal court, and district attorney records related to the underlying incident in this case, pursuant to New York Criminal Procedure Law § 160.50. By Order, dated February 11, 2008, the Honorable Kevin Nathaniel Fox stated that "it is herby ordered that the plaintiff execute [the release pursuant to NYCPL § 160.50] as will permit the defendants to access the relevant sealed documents expeditiously." (emphasis added). See Exhibit "BB." Furthermore, by Memorandum and Order, dated March 12, 2008, the Honorable Fox denied plaintiff's application for reconsideration of the Order, dated February 11, 2008. See Exhibit "CC." By Order, dated April 28, 2008, Your Honor denied plaintiff's Objections to Judge Fox's Discovery Orders, dated February 11, 2008 and March 12, 2008, respectively. See Exhibit "DD." However, despite the numerous rulings by the Court, to date, plaintiff has not provided the executed unsealing release. Defendants submit that at this juncture plaintiff's application for reconsideration is meritless, made in bad faith, and in violation of Rule 11 of the Federal Rules of Civil Procedure. For the purposes of this motion defendants will rely on the arguments contained in their previous submissions to the Court, annexed to Hazan Decl. as Exhibits "X", "Y", "Z", and "AA." Accordingly, for the reasons set forth herein and for the reasons set forth in defendants' letters to the Court, dated January 17, 2008,

January 28, 2008, March 3, 2008, and April 9, 2008, defendants respectfully request that the Court deny plaintiff's motion for reconsideration of Your Honor's Order, dated April 28, 2008, compelling plaintiff to produce an executed unsealing release pursuant to New York Criminal Procedure Law § 160.50.

## CONCLUSION

For all of the foregoing reasons, defendants' respectfully request that plaintiff's motion be denied in its entirety.

Dated:  New York, New York
        June 24, 2008

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                              City of New York
                              Attorney for Defendants
                              100 Church Street, Room 3-186
                              New York, New York 10007
                              (212) 788-8084

By:    _David M. Hazan_____
       David M. Hazan (DH-8611)
       Assistant Corporation Counsel

23