ORIGINAL

```
 1

 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    ------------------------------------------X
      MARK KAPITI,
 4
                                   PLAINTIFF,
 5

 6            -against-              Case No:
                                     07CV3782
 7

 8    RAYMOND W. KELLY, in his official capacity as
      Commissioner of the New York City Police
 9    Department, and The CITY OF NEW YORK,

10                                 DEFENDANTS.
      ------------------------------------------X
11

12                    DATE:   May 29, 2008

13                    TIME:   2:15 P.M.

14

15

16           EXAMINATION BEFORE TRIAL of a Witness,

17    RITA BIENIEWICZ, taken by the Plaintiff,

18    pursuant to Notice and to the Federal Rules of

19    Civil Procedure, held at the offices of

20    Corporation Counsel, 100 Church Street, New

21    York, New York, before a Notary Public of the

22    State of New York.

23

24

25
```

```
 1                    BIENIEWICZ
 2    duration?
 3         A.    Yes.
 4         Q.    Do you recall if it was, in fact,
 5    late May or early June?
 6         A.    After reviewing the file, I don't
 7    recall.  I can tell you what my notes revealed
 8    which led me to deduce that it was late May or
 9    early June.
10         Q.    What was that?
11         A.    A notation of the day it reached my
12    bureau which is not in my handwriting.  It's
13    made by whoever takes it in that day from my
14    bureau and my first notatin on the action I
15    took on the case which was dated June 5.  I
16    know it had to be between the late May date
17    when it was assigned to my bureau and my first
18    action.
19         Q.    What was the first action you took
20    in the case?
21         A.    A conversation that I had with an
22    officer.
23         Q.    Who?
24         A.    Over Triffon.
25         Q.    When was that conversation?
```

```
 1                    BIENIEWICZ
 2        A.    My notation said June 5.
 3        Q.    What was the substance of that
 4   conversation?
 5        A.    It was regarding a Krimstock
 6   hearing.
 7        Q.    Have you ever done a Krimstock
 8   hearing?
 9        A.    No, I have not.
10        Q.    Is that because you were never
11   asked to or is it the practice of the District
12   Attorney's office not to handle the Krimstock
13   hearings?
14              MR. HAZEN:  Objection to form.
15        Q.    You can answer.
16        A.    Can you rephrase the question?
17        Q.    Do ADA's assigned to the case
18   handle Krimstock hearings to your knowledge?
19              MR. HAZEN:  Objection.
20        A.    I don't know.
21        Q.    Have you ever handled one?
22        A.    No.
23              MR. HAZEN:  Objection.
24        Q.    Has anyone to your knowledge in the
25   rackets bureau ever handled one?
```

```
 1                    BIENIEWICZ
 2              MR. HAZEN:  Objection.
 3         A.   I don't know.
 4         Q.   Do you know of any Assistant DA in
 5    Bronx county who has handled a Krimstock
 6    hearing?
 7              MR. HAZEN:  Objection.
 8         A.   I've never asked.
 9         Q.   Do you know of anyone?
10         A.   No.
11         Q.   What was the substance of your
12    conversation with Officer Triffon?
13         A.   I believe he was asking me if I was
14    going to release the property and he was
15    alerting me to the fact that there was a
16    Krimstock hearing.  As I had only gotten the
17    case that week or a couple of days before I had
18    no intention of seeing the car at that time.
19         Q.   Did you call him or did he call
20    you?
21         A.   I couldn't say with certainty.  I
22    might have received a message and called him
23    back.  My notation didn't reveal who placed the
24    actual phone call but initially he would have
25    called me.
```

```
 1                    BIENIEWICZ
 2      Q.    Have you ever read Krimstock?
 3      A.    No.
 4      Q.    Do you know what takes place at a
 5   Krimstock hearing?
 6            MR. HAZEN:  Objection.
 7      A.    I believe the New York Police
 8   Department determines whether or not they are
 9   going to release a person who has been charged
10   with a crime property that was seized.  I
11   believe it becomes relevant that the DA is
12   going to release the evidence.
13      Q.    What did you tell Officer Triffon
14   if you recall?
15      A.    What I said a moment ago.  The sum
16   and substance would have been that I didn't
17   intend to release the car at that time.
18      Q.    Why was that?
19      A.    Because the car was allegedly used
20   to transport fireworks.  The case was new to my
21   bureau and myself and at that time I hadn't
22   made a determination as to whether or not it
23   was still arrest evidence or investigatory
24   evidence.
25      Q.    How would it be arrest evidence?
```

```
 1                    BIENIEWICZ
 2        A.    If it was used to transport the
 3   car, I might have needed to take pictures of
 4   it.  I might have needed it in my case to prove
 5   that the defendants took the stuff they were
 6   alleging from point A to point B in this
 7   vehicle.
 8        Q.    That's transporting that you are
 9   referring to?
10        A.    Yes.
11        Q.    Transporting from point A to point
12   B?
13        A.    Containing; transporting; holding.
14        Q.    You would need to take photos of
15   the car?
16              MR. HAZEN:  Objection.  That's not
17        what the testimony was.
18              MR. KESSLER:  It's a question.
19        Q.    Would you need to take photos?
20              MR. HAZEN:  In this case.
21        Q.    In this case, I'm only talking
22   about this case?
23        A.    I have the option to take photos of
24   the car as demonstrative evidence, logical
25   evidence.  At that time I hadn't decided yet
```

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com