UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARK KAPITI,                                                                07 Civ. 3782 (RMB) (KNF)

                              Plaintiff,

       -against-

RAYMOND W. KELLY, in his official
Capacity as Commissioner of New York City
Police Department, Property Clerk, New York
City Police Department, and The City of New York,

                              Defendants.
------------------------------------------------------------x    **REPLY AFFIRMATION**
THE CITY OF NEW YORK,                                            **IN SUPPORT**

                            Plaintiff,

       -against-

AMERICAN HONDA FINANCE CORPORATION
d/b/a HONDA FINANCIAL SERVICES,

                            Defendant.
------------------------------------------------------------x

      MICHAEL A. ROSENBERG, an attorney duly admitted to practice law before the Courts of the State of New York and the Federal Courts, Southern District of New York, affirms the following under penalty of perjury:

      1.  I am the attorney for the Third-Party Defendant, AMERICAN HONDA FINANCE CORPORATION s/h/a HONDA FINANCIAL SERVICES ("HONDA"). I submit this Reply Affirmation, pre-answer, for the limited purpose of seeking a dismissal of the Third-Party action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and not for purposes of appearing generally herein.

      2.  I am familiar with the facts and circumstances surrounding this controversy, and have

personal knowledge thereof, based upon my investigation of the facts, the books, records and files maintained by my client, and the interviews conducted by me of my client. The Reply Affidavit of MS. TARA SCHOOLCRAFT submitted in further support is incorporated by reference.

### A. PRELIMINARY REMARKS

3. The CITY has not offered an affidavit by someone with personal knowledge. Instead, it offers only conclusory statements of its counsel sounding like a fact witness. Counsel offers his own "testimony" to explain the actions of the CITY's process server, as well as the unauthorized filing of a second affidavit of service to support the position that the CITY has secured *in personam* jurisdiction.

4. Further, counsel, with no direct contact to MS. SCHOOLCRAFT, and relying upon the information imparted to him by his co-counsel, has concluded that MS. SCHOOLCRAFT's deposition and affidavit testimony are to be completely discarded.

5. The CITY has misstated the standard by which dismissal motions are to be judged. When it appears that any party cannot prove a set of facts in support of a claim which would entitle relief, the Court would be justified in granting a motion to dismiss under FRCP 12(b)(6). (See *Gant v. Board of Education,* 69 F.3d 699, 673-74 (2d Cir. 1995).) In assessing the sufficiency of the pleading, the Court will assume the truth of all factual allegations and give all reasonable inference in favor of the pleader in order to survive a motion to dismiss. *York v. Association of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002).

6. Assuming, *arguendo*, the Court believed the factual allegations of the plaintiff, KAPITI's complaint, then the same would hold true for the Third-Party complaint, which by reference, has subsumed plaintiff's allegations.

**B.  INDEMNIFICATION FOR INTENTIONAL TORTS
IS NOT PERMITTED AS A MATTER OF LAW --- THE CITY CANNOT
PROVE ANY SET OF FACTS THAT JUSTIFIES ITS DEMAND FOR
<u>INDEMNIFICATION FROM HONDA</u>**

7.  **A claim for indemnification for civil rights violations does not exist in the law**. (see *Campers' World Intern Inc. v. Perry Ellis Intern, Inc.,* 2002 WL 1870243 (S.D.N.Y.); *Anderson v. Local Union No. 3, Intern. Broth. Of Elec. Workers* 582 F. Supp. 627 "Indemnity, like contribution, cannot be allowed in favor of an intentional tortfeasor").

8.  All the participants to this litigation can agree, at least, on one thing.  In the present case, the claims for which the CITY seeks indemnification from HONDA consist entirely of those claims made by Plaintiff, KAPITI.  Plaintiff, KAPITI, has sued the defendant, CITY, for violations of his due process and constitutional safeguards (42 U.S.C. § 1983).  Plaintiff, KAPITI, did not commence his lawsuit because the subject vehicle was returned to its lawful owner, HONDA but rather because the CITY denied him his constitutional right to a "*Krimstock*" hearing.  HONDA had to receive its vehicle as owner, regardless of all other facts (*Property Clerk v. BMW,* 293 A.D. 2d, 740 N.Y.S. 2d 608 (1st Dept. 2002)).

9.  Accepting plaintiff's allegations as true, the CITY has intentionally violated plaintiff's rights and is not entitled to indemnification for its intentional acts.  Unless it appears that plaintiff, KAPITI, can prove no set of facts in support of his claim, by extension, HONDA, must be entitled to the relief requested.  **There is no legal theory here upon which defendant, CITY, can secure recovery against HONDA.**  (*Conley v. Gibson,* 355 U.S. 41 (1957).)

10.  If plaintiff, KAPITI, wanted to sue over the release of the subject vehicle owned by HONDA, he could have pursued HONDA directly.  Instead, he sued the CITY only because the scheduled *Krimstock* hearing, to which he was entitled by law, was cancelled without justification.  That cancelled hearing, which was never rescheduled abrogated his due process

rights.

11. On the first page of the Verified Complaint, plaintiff, KAPITI, makes the following declaration as to the nature of the case:

> "1.   This civil rights action is brought pursuant to 42 U.S.C. § 1983 for declaratory relief, damages, costs and fees, to redress the denial of plaintiff's right to due process of law, equal protection of the laws, and the right to be free of arbitrary police action, excessive fines and unreasonable searches and seizures, under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution." [emphasis supplied]

12. There can be no dispute as to the nature of plaintiff's claim. **Plaintiff, KAPITI, asserts no common law or state law claim against the CITY. The civil rights violations are the sole basis for the entire litigation**. The CITY therefore, has acknowledged and admitted the civil rights violations as being the underpinning to the entire litigation. Counsel is correct then when he states at page 2 of his Memorandum: "A motion under Rule 12(b)(6) should be granted if an affirmative defense, or other reason barring relief, is apparent from the face of the complaint. Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86-87 (2d Cir. 2000)". The civil rights violation is apparent and bars the Third-Party action.

13. In order for the CITY to avoid dismissal of the Third-Party action for indemnification (for KAPITI's civil rights claim), the CITY must present a set of facts under which it could be possible that indemnification would be proper. The CITY has entirely failed to do so and the Third-Party claim must be dismissed.

14. The CITY, as the claiming authority, is the only party that could have interfered with plaintiff, KAPITI's due process rights. The CITY could not then, and cannot now, argue that HONDA is responsible for deprivation of due process. HONDA can neither give nor deprive anyone of due process, and in particular, plaintiff, KAPITI.

15. The CITY vacillates as to its theory on the Third-Party action (see pages 4 and 14 of

the CITY's Memorandum of Law). The CITY has, however, assiduously avoided any discussion regarding the inability to seek indemnification for intentional torts, and in particular, violations of due process and constitutional safeguards.

16. The CITY also inappropriately characterizes its claim against HONDA as one for "indemnification <u>and contribution</u>". (CITY's Memo of Law at page 1) Contribution is not a part of the Hold Harmless Agreement upon which the CITY predicates its action.

17. The CITY has chosen not to address JUDGE SAND's decision in *Anderson v. Local Union No. 3, Intern. Broth. Of Elec. Workers* 582 F. Supp. 627 which concluded that an intentional tortfeasor, and in particular, one who violates due process and civil rights, cannot avail itself of indemnification and/or contribution. It cannot be by accident that the CITY elected not to respond to this particular issue which is pivotal to this litigation.

18. *Anderson, id* holds that intentional torts, and particularly, civil rights violations, fall outside the purview of any agreements for indemnification or for that matter, contribution. That being said, dismissal of the Third-Party action is warranted as a matter of law and enforcement of the Agreement would be void as against public policy.

## C. <u>THE "SECOND" AFFIDAVIT OF SERVICE</u>

19. Testifying on behalf of the Process server, counsel now says that the first affidavit of service the CITY filed was a mistake. As a result of that mistake, he unilaterally, and without Court authorization, simply filed a second "amended" affidavit of service.

20. Counsel continues to explain, in his own words, what the Process server meant to say and what the Process server really did. Disputes regarding the manner and method of service generally result in a Traverse Hearing for the Court to determine exactly what the Process server did or did not do regarding the events of service.

21. Counsel suggests that HONDA, or for that matter, anyone accessing the Court file, is not entitled to rely upon the affidavits of service. The CITY believes that no matter how, or if, process finds its way into the hands of a named party, affidavits of service are either irrelevant or changeable at will.

22. As to the other "defects" to which the Memorandum refers as being of no consequence, such assertion simply ignores the purpose of having affidavits of service.

23. In an effort to avoid a Traverse Hearing, the CITY, by counsel, saw fit to file two (2) affidavits of service, two (2) months apart. If the Court reads those two (2) affidavits side by side, many of the previously noted defects continue to exist. **What is most telling however, is that nowhere on either of those affidavits does the name CT Corporation System appear**. It is counsel's testimony that anyone accessing the Court file would possess the requisite knowledge to know that 111 Eighth Avenue, New York, New York is the location where CT Corporation System is based.

24. If the Process server, LOUIS J. PASTINA, made an error on the first affidavit wherein he alleged service was made on a person of "suitable age and discretion", then it is entirely possible he made an error when stating service upon a foreign corporation by neglecting to include the name of the alleged designated agent. It is for those reasons that HONDA took exception to the first affidavit of service, and now the second affidavit.

25. Counsel believes that the other objections raised in footnote numbered 1 are also of no moment. I remind counsel that, particularly during a time of armed conflict, as the United States is now engaged, issues of military service is not just a nicety, but quite significant. If MR. PASTINA is a professional Process server (although he appears to be employed by Corporation Counsel's office), he would have no difficulty exhibiting his license number, and certainly

would have a more significant grasp of those items which are required to be stated in all affidavits of service.

26. At a Traverse Hearing, it would be MR. PASTINA, and not counsel testifying as to what he did and what he meant to say. Affidavits of service, and their deficiencies, if any, fall squarely within the rules of practice and procedures with which we all must comply including Process servers. It is the Court's province to determine if service is made and jurisdiction sustained.

27. HONDA recognizes the Court's supplemental jurisdiction. However, HONDA disputes the validity and enforceability of the underlying Hold Harmless Agreement and it contends that the proper adjudication, if any, belongs in State Supreme Court at some later date. In any event, under the Federal cases, dismissal is warranted because of the due process violations.

28. The inclusion of the alleged Third-Party proceeding does nothing more than muddy the waters over what is clearly an issue between the plaintiff and the defendant vis-à-vis constitutional safeguards, and in particular, the Second Circuit's pronouncements in *Krimstock v. Kelly* (cite omitted). **Theirs is not a dispute over a car or its release**. In prior submissions to the Court, the CITY has taken the position that plaintiff, KAPITI, would have lost at the *Krimstock* hearing. How could it know that if it never conducted the hearing in the first instance? It had an obligation to give plaintiff, KAPITI, his opportunity to be heard. His lawsuit stems from the denial of that right, and the damages flowing from those actions belong solely to the CITY.

29. The CITY has compounded its actions by not following its own protocols. (*Alexandre v. Cortes,* 140F. 3d 406, also not addressed by the CITY). It should also have

commenced the mandated forfeiture proceeding which would have afforded the plaintiff his opportunity to address the permanent retention of the vehicle. By failing to hold the hearing and commence a forfeiture proceeding, plaintiff's rights were abrogated, and a material term of the Hold Harmless Agreement was not met by the CITY thereby vitiating the Agreement.

### D. PREMATURE V. RIPE FOR ADJUDICATION

30. The CITY, confuses the notions of what is "premature" and what is "ripe for adjudication".

31. The case law is clear. Unless and until there is a fixed liability (payment or loss) upon the defendant, no indemnity accrues. There has yet been no finding in favor of the plaintiff, KAPITI, against the CITY, and therefore, a claim for indemnification has not yet arisen.

32. The CITY, would have this Court believe that the cost and attorneys fees associated with the plaintiff's lawsuit and alleged in the complaint gives rise to a liability (yet unfixed). These are still only _allegations_ in connection with plaintiff, KAPITI's 1983 claims. Even counsel says the Court "could fix liability" and that is, in and of itself, a statement of a future happening.

33. When counsel refers to the CITY as already suffering "from costs and expenses associated with litigating this lawsuit", I trust he is not referring to the CITY's exemption from filing fees and his position as a salaried, staff attorney of Corporation Counsel. From HONDA's perspective, it appears that most of the litigation to date has been generated by the CITY.

34. The CITY also takes great pains to distinguish the types of indemnity agreements (even though HONDA disputes the validity of any agreement at all) at page 11 of its Memorandum. Counsel concludes, however, by saying "liability _will_ be fixed in this Court _if_ the

Court enters judgment against the City in the underlying *Kapiti* action. Accordingly the Third-Party action is ripe for adjudication". [emphasis supplied] That statement defines premature.

### E. THE HOLD HARMLESS AGREEMENT REVISITED

35. The CITY would like this Court to believe that there exist issues of fact regarding the Hold Harmless Agreement which would preclude a dismissal. It is upon the very Agreement (documentary evidence) that the contrary is true.

36. The CITY has made that Agreement integral to its pleading and the underpinning to the Third-Party action. The Hold Harmless Agreement was prepared by the CITY and foisted upon HONDA and its language speaks for itself. Once the CITY made the wording of the Agreement its *raison d'etre*, it subjected the Agreement to all manner of attack.

37. The CITY's conclusory allegations and promises of the production of evidence at trial to rebut HONDA's position are absurd. The CITY opted not to offer anything in opposition to this motion except the bald statements by counsel. Counsel's statements, without an affidavit of merit, have no probative weight. If the CITY possesses evidence germaine to these issues, why wait. Offer that evidence now. The Court's attention is again called to the affidavits of TARA SCHOOLCRAFT, and in particular, her deposition testimony which gives credence to the arguments that the Agreement is void and a contract of adhesion, the enforcement of which would violate both public policy and stated law.

38. Because the CITY has chosen to sue upon this Agreement, a fresh look at the timeline of events makes it abundantly clear that the language of the Agreement itself is a bar to any claims against HONDA.

39. It is undisputed that the arrest and seizure in this matter occurred on May 15, 2006 and the Hold Harmless Agreement was executed on May 30, 2006. The *Krimstock* hearing to

which plaintiff, KAPITI, was entitled was scheduled by the CITY for June 5, 2006. That hearing was cancelled by defendant, CITY, that very day. HONDA was not a participant to the scheduling or cancellation of the hearing.

      40. A close reading of the CITY's Hold Harmless Agreement establishes that HONDA was not to be responsible for events subsequent to May 30, 2006. The CITY's own language states that the release (and therefore the indemnification) shall run **"....from the beginning of the world to the day of the date of this RELEASE,…"**. [emphasis supplied]

      41. It was the CITY who prepared this document, and directed how it was to be used. Interpretation of language must be construed against the draftsmen. Therefore, the CITY intended that the release would run from the beginning of the world to the day of execution. <u>The execution date in this case was May 30, 2006</u>. HONDA could not possibly be responsible for an event that was scheduled for June 5, 2006, a date which had not yet occurred. Nor could HONDA possibly know that the CITY would take it upon itself to cancel the *Krimstock* hearing previously scheduled for that date. Therefore, it is not possible to seek indemnification for an event over which HONDA had no knowledge or control and which took place after the operative close date (May 30, 2006) of the Release.

      42. For all of the above, and the prior arguments made, the Third-Party action must be dismissed in its entirety.

      WHEREFORE, your affirmant respectfully prays that an Order be made and entered granting the Third-Party Defendant, AMERICAN HONDA FINANCE CORPORATION, s/h/a HONDA FINANCIAL SERVICES the relief requested, granting dismissal of the Third-Party action together with such other and further relief as the Court may deem appropriate.

Dated: New York, New York
July 11, 2008

               *s/ Michael A. Rosenberg, Esq.*
               MICHAEL A. ROSENBERG, ESQ. (8770)
               Attorney for Third-Party Defendant
               **AMERICAN HONDA FINANCE CORPORATION**
               **s/h/a HONDA FINANCIAL SERVICES**
               122 East 42nd Street, Suite 606
               New York, New York  10168
               (212) 972-3325

TO: By Federal Express
    Hon. Richard M. Berman
    United States District Court
    Southern District of New York
    United States Courthouse
    500 Pearl Street
    New York, New York  10007

    MICHAEL A. CARDOZO
    New York City Corporation Counsel
    The City of New York
    Law Department
    100 Church Street
    New York, New York  10007
    Attn:  Philip Frank, Esq.
      and
    By Hand Delivery
    Steven L. Kessler, Esq.
    122 East 42nd Street, Suite 606
    New York, New York  10168