UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MARK KAPITI,

                      Plaintiff,

     -       against     -

RAYMOND W. KELLY, in his official capacity
as Commissioner of the New York City Police
Department, PROPERTY CLERK, New York
City Police Department, and The CITY OF NEW
YORK,

                      Defendants.

--------------------------------------------------------x

Docket No.: 07 Civ. 3782 (RMB)

**Hon. Richard M. Berman (J.)**

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTIONS FOR CLASS CERTIFICATION AND RECONSIDERATION OF ORDER COMPELLING THE UNSEALING OF PLAINTIFF'S CRIMINAL FILE

### PRELIMINARY STATEMENT

Plaintiff Mark Kapiti submits this Reply Memorandum of Law (A) in further support of plaintiff's motions to (1) certify the lessee class pursuant to Rule 23 of the Federal Rules of Civil Procedure (FRCP) and (2) reconsider and vacate the Court's Orders compelling the unsealing of plaintiff's criminal file, and (B) in response to Defendants' Opposing Memorandum of Law.

With respect to the unsealing, plaintiff's requested relief must be granted, as defendants have failed to assert any opposition thereto. With respect to class certification, defendants attempt to repudiate their prior concessions regarding their assertion of class-based defenses. Yet, despite misrepresenting the facts, the law, the discovery in this case and their own prior Court submissions, defendants *still* ultimately concede the existence of the same class-based arguments regarding lessees' rights that gave rise to this motion in the first place. Defendants' opposition thus provides further support for granting plaintiff's motion to certify the class.

## ARGUMENT

## POINT I

## PLAINTIFF'S MOTION TO VACATE THE
## UNSEALING ORDERS SHOULD BE GRANTED AS UNOPPOSED

Defendants' failure to raise substantive opposition to plaintiff's showing regarding the unsealing orders has greatly simplified this Court's task. Defendants' one-page point is a procedural summary, devoid of legal or factual argument. Accordingly, defendants concede that:

- The Court applied the wrong legal standard in ruling on defendants' motion

- The correct standard is pleading necessity under FRCP 11, not the liberal discovery standard of FRCP 26

- Defendants have not alleged a pleading necessity for the sealed criminal file

- Defendants filed their answer nearly one year ago without the sealed records

- The ADA assigned to the criminal case that resulted in plaintiff's acquittal after trial testified that she reviewed her file – which included a copy of every document contained in the sealed criminal file – immediately before her deposition

- The ADA has possessed this duplicate file since the criminal case was resolved, one and a half years before this action was even commenced

- In listing the ADA as a witness ten months ago in defendants' Rule 26 disclosures, defense counsel presumably contacted her regarding her involvement in the case; thus, defendants have had access to the file at least since that time

- Defendants have therefore spent the past eight months seeking to unseal a file whose contents they possessed before they made their initial application

- As a matter of law, there can be no pleading necessity, or even a discovery need, for a file defendants' witness has possessed a copy of from day one of this case

- Plaintiff's sealed criminal file is irrelevant to the class claims and defenses

Thus, in light of the uncontested law and facts, the unsealing orders must be vacated.

2

## POINT II

### DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 23 MOTION FURTHER CONFIRMS THE NEED FOR CERTIFICATION OF THE CLASS

Plaintiff's moving Memorandum established that class certification is warranted because defendants have "refused to act on grounds generally applicable to the class".  FRCP 23(b)(2).  Specifically, defendants have stated that plaintiff was not entitled to a *Krimstock* hearing or to contest the disposition of his vehicle in forfeiture proceedings because, as a lessee "he did not have a property interest in the vehicle."  Kessler Decl. Ex. "E" (1/17/08 Hazan Ltr.).  Defendants further stated that "*Krimstock* is not applicable . . . because plaintiff's claims do not involve the forfeiture of his vehicle . . .  Rather . . . plaintiff's leased vehicle was returned to the innocent owner of the vehicle (Honda)."  *Id.*  Thus, it is defendants' position that they do not have to bring a forfeiture proceeding to dispose of a leased vehicle, but need only return the vehicle to the leasing company for an alleged breach of the lease in exchange for a Hold Harmless Agreement and Release Letter.

Further, when plaintiff relied on these written statements of the defendants in seeking leave to move for class certification in a May 8, 2008 letter to the Court, defendants did not take issue with plaintiff's characterization of defendants' position that lessees "are not entitled to due process protection under *Krimstock*, and, more broadly, are not entitled to the protection of any of the procedures that the City must follow to permanently deprive its citizens of their right to the possession, use and enjoyment of their vehicles."  See Kessler Reply Decl. Ex. "A" at 4 (pre-motion letter); Kessler Decl. Ex. "D" (defendants' response).   As a result, plaintiff's initial moving papers demonstrated that certification should be granted because it is uncontested that

defendants take the position that lessees, by virtue of the nature of their property interest, are not entitled to the due process protections of *Krimstock*, *McClendon* and the applicable laws and regulations, thereby establishing substantial constitutional class issues as a matter of law.

But defendants changed gears in their formal response to plaintiff's motion.  They now rely primarily on five tactics:  **(1)** <u>**Deny the existence of their class-based arguments**</u>: Defendants now deny that they ever took the position that lessees are not entitled to the same due process rights as other registered owners; **(2)** <u>**Misrepresent the facts**</u>: Defendants misstate the facts and the deposition testimony in an effort to show that Mr. Kapiti's claims are not representative of the lessee class when they actually establish further class-wide issues; **(3)** <u>**Repudiate their prior definition of the class**</u>: Defendants' claim that the class is insufficiently defined is a direct repudiation of the position in their pre-motion response that an appropriate class would comprise lessees whose vehicles were seized and returned to the leasing company without commencement of forfeiture proceedings; **(4)** <u>**Misrepresent procedural history**</u>: Defendants for the first time claim prejudice from the timing of this motion by falsely claiming that they lacked an opportunity to conduct discovery on class issues, when in fact it is the defendants who have forcefully and repeatedly prevented discovery on class issues; and **(5)** <u>**Misrepresent the law:**</u> Defendants falsely present the law as (1) favoring non-certification and (2) elevating issues unique to individual class members over issues common to the class, when in fact the law is precisely the opposite on both counts.

Defendants' false and misleading tactics, which often contradict even one another, should be rejected and plaintiff's motion to certify the lessee class, which is ultimately strengthened by defendants' response, should be granted.

**Defendants Deny their Prior Position on Lessees' Rights**

Despite defendants' prior written statements, filed with this Court, that lessees are not entitled to the due process rights enjoyed by other registered owners, defendants' memorandum now claims otherwise:

> [T]hese *are not defendants* [sic] *legal positions* and there is no evidence that defendants' policies comport with these positions. In fact defendants do not contest that lessees are entitled to due process rights under *Krimstock* and *McClendon* and it is wholly untrue that defendants refuse to provide *Krimstock* hearings to lessees of vehicles. (Def. Mem. at 8) (emphasis in original).

Despite this remarkable and factually unsupported statement, however, defendants do not explain why lessees such as Mr. Kapiti do not receive *Krimstock* hearings and why forfeiture proceedings are not commenced with respect to their seized vehicles. Indeed, not one of defendants' thirty-three exhibits even addresses whether *Krimstock* hearings are provided to lessees, let alone establishes that they are in fact provided.

Defendants' attempt to disclaim their prior position is rendered even more absurd by contradictory statements *in their own memorandum*:

> [T]he purpose of a '*Krimstock* hearing' is to determine whether the government is entitled to retain a vehicle until civil forfeiture proceedings are complete. In the instant case, however, the Vehicle was not retained for civil forfeiture proceedings. Instead, the NYPD returned the Vehicle to its owner. Therefore, a '*Krimstock* hearing' was unnecessary. . . . It is defendants' position that the government is not required to have a '*Krimstock* hearing' to determine whether it can return a vehicle in its possession to an uncontested owner, rather than the lessee . . .. (Def. Mem. at 6).

There is no difference between defendants' prior argument that lessees are not entitled to *Krimstock* hearings and their 'new' position that such hearings are "not required" because the claimant is 'only' a lessee. In arguing the law, defendants now attempt to deny their prior

position but, in defending the facts asserted by plaintiff's claims, defendants revert to their prior class-wide defenses. These contradictory statements with respect to a key issue on this motion in *the same document* rob defendants' 'positions' of all credibility.

**Defendants Misrepresent the Facts**

Defendants argue that the facts of this case do not warrant class certification. Defendants' unsupported arguments, however, are contradicted by the documents and testimony adduced in discovery. Discovery firmly establishes that defendants' return of plaintiff's vehicle to the leasing company was undertaken pursuant to a well-defined set of internal policies and procedures established by defendants specifically for dealing with leased cars. These uncontested facts strongly support certification of the lessee class.

Initial Seizure and Discussions with Honda: Within ten days of the May 15, 2006 seizure of plaintiff's vehicle, defendants had already set in motion the mechanisms to return the car to someone other than Mr. Kapiti. Defendants promptly notified Honda of the seizure and initiated arrangements for the 'give-back' of the car, memorializing those arrangements in two documents defendants drafted and faxed to Honda on May 24, 2006 – a Hold Harmless and a Release Letter. (Hazan Decl. Exs. "J" & "K"). The terms were drafted and compelled by defendants, who instructed Honda to retype the Release Letter onto Honda's letterhead, sign it without revision, and return it to defendants promptly. This same procedure had been followed "hundreds" of times before. See Kessler Reply Decl. Ex. "C" (Deposition of Tara Schoolcraft, witness for Honda), at 102-105, 115-116, 121-122, 137. Further, at the time of the seizure of his vehicle and during the period when defendants were arranging to return the vehicle to Honda, plaintiff was

current with his lease payments.   Schoolcraft Dep. at 126 ("Q: So, as of 5/15/2006 the total past

due on this account is? A: Zero dollars.").  Indeed, plaintiff had even made his next month's

payment on time.  *Id.* at 127.

      Notice and Cancellation of Hearing: While defendants were arranging to hand over the

vehicle to Honda, they also went through the motions of providing the lessee with notice of his

right to a *Krimstock* hearing.  Because Mr. Kapiti was so prompt in responding to the notice – he

filed his request in person on May 23, 2006, the day he received the notice – the timing of the

hearing date, which is dictated by *Krimstock*, may have come sooner than was convenient for the

defendants.  The hearing was noticed for June 5, 2006.  Defendants, however, moved quickly.

On May 30, 2006, they received the Hold Harmless and Release from Honda.  (Hazan Decl. Exs.

J & K).  By June 2, defendants had executed their internal "Releases" authorizing the delivery of

plaintiff's car to the bearer of the release.   See Kessler Reply Decl. Ex. "E" (Triffon Dep. Exhs.

3, 4 & 5); *Id.* Ex. "F" ( Deposition of Sgt. George Triffon), at 23-25.[1]

      Thus, three days before plaintiff's scheduled *Krimstock* hearing, defendants had already

completed all of their procedures for the turnover of plaintiff's vehicle to Honda.  From

defendants' perspective, therefore, a *Krimstock* hearing was, as they argue on this motion,

"unnecessary".   Defendants then unilaterally canceled the hearing at the last minute, notifying

Mr. Kapiti with a telephone call just as he was leaving his apartment to attend the hearing.

      Arrest Evidence: Periodically during this litigation, defendants have asserted that

plaintiff's vehicle may have been held as arrest evidence rather than "held for forfeiture".  The

---

[1]Sgt. Triffon's testimony regarding these three documents is a must-read as it is blatantly
incredible.  *Id.* at 58-61, 75-85.

difference for defendants is that, at the time of these events, the City was not required to provide

*Krimstock* hearings for arrest evidence vehicles unless and until the District Attorney issued a

"D.A.'s Release" stating that the car was no longer needed as evidence. Discovery has

confirmed, however, that defendants' statements are both false and irrelevant. As demonstrated

above, by June 2, 2006 – three days *before* Mr. Kapiti's scheduled *Krimstock* hearing –

defendants had already authorized the release of plaintiff's vehicle. As of this point, according to

the deposition testimony of the Assistant District Attorney who handled plaintiff's criminal case,

she had *never spoken to defendants*, let alone informed them that the car was needed as arrest

evidence. See Kessler Reply Decl. Ex. "D" (Deposition of A.D.A. Rita Bieniewicz), at 23, 31-

32, 60, 62 & 63. Thus, whatever happened *after* June 2, 2006 – the point at which plaintiff's

civil rights had already been violated – is irrelevant.

Yet, even after that point, and contrary to defendants' arguments, the A.D.A. never

informed defendants that she needed the vehicle as arrest evidence. *Id.* at 26 ("at that time I

hadn't made a determination as to whether or not it was still arrest evidence or investigatory

evidence"); *id*. at 32 ("What I needed the car for was to make sure I had an opportunity to decide

whether or not I needed the car. That's why I needed the car still in my possession"). Indeed,

*every document* adduced in discovery states that plaintiff's car was held for forfeiture, not as

arrest evidence. Defendants' seizure voucher and Petition and Notice of Hearing both stated that

the car was held for forfeiture. (Hazan Decl. Ex. "L"). In the Hold Harmless Agreement, signed

by Honda at the demand of the defendants, defendants promised to "commence . . a forfeiture

action to obtain legal title to the subject vehicle" – a promise they never kept. (*Id.* Ex. "K").

Further, even in arrest evidence cases, defendants are required by *Krimstock* to provide a post-

8

seizure retention hearing promptly after the D.A.'s Release was issued.  (*Id.* Ex. "L") (advising claimant that no hearing may be held if property is deemed arrest evidence "*during the period the vehicle is so needed*") (emphasis added).  Here, however, upon issuance of that Release, defendants did not provide plaintiff with a hearing, but instead gave the vehicle to Honda.

Thus, there is only one conclusion to be had after discovery:  (1) defendants had specific procedures for leased vehicles, apparently different from those provided for all other registered owners, and (2) the steps defendants took with respect to plaintiff's vehicle were taken pursuant to those procedures.  Thus, Mr. Kapiti's claims are representative of the entire class of lessees whose vehicles have been, or will be, seized by the defendants.  These undisputed facts warrant class certification.

Defendants can point to no evidence to the contrary.  Indeed, their so-called witness, Sgt. Triffon, would only testify that he had no recollection of the facts of this case, even though his initials were on most of the entries in the defendants' computer file for plaintiff's vehicle.  See Kessler Reply Decl. Ex. "F" (Triffon Dep.), at 24-25, 38-42, 88-89 ("I have no independent recollection of this case . . . I have no independent recollection of my role . . . I have no independent recollection of making this entry [bearing my initials] . . . [I]t is not certain . . . that I made that entry . . . The document doesn't help my independent recollection . . ..").

Having no testimony or documents to contradict the uncontested facts, defendants' counsel takes it upon himself to testify on his clients' behalf in his memorandum of law.  Other than that, there is no support for defendants' position, and thus no evidence to oppose plaintiff's motion for class certification.  Thus, defendants' statements of 'fact' – (1) as plaintiff was in default for non-payment at the time of seizure, the "give-back" was justified; (2) the return of the

car simply complied with Honda's wishes; (3) from June 5, 2006, the date of plaintiff's

scheduled (and canceled) *Krimstock* hearing, until August 9, 2006, plaintiff's "Vehicle remained

in the NYPD's impound lot as 'arrest evidence'", and (4) defendants initially intended to file

civil forfeiture proceedings with respect to plaintiff's vehicle but, "[a]t some point in time . . .

determined that civil forfeiture proceedings . . . would not be commenced"– are simply outright

lies, unsupported by *any* actual evidence in this case.  (See Def. Mem. at 1-2).

   Accordingly, defendants' factual contentions should be rejected.  The uncontested facts

adduced in discovery through sworn testimony and authenticated documentation uniformly

demonstrate that class certification is warranted.


**Defendants Attempt to Repudiate their Own Definition of the Class**

   Defendants further argue that the class, class claims, and class relief are all insufficiently

defined, overly broad and unworkable and fail to take into account a plethora of hypothetical

'fact patterns' that defendants posit without evidentiary support.  Defendants seem to forget,

however, that this is not only the class they created through their treatment of lessees, but also the

same class that *defendants* defined for the Court in their response to plaintiff's pre-motion letter.

See Kessler Decl. Ex. "D" at 4 (proposing a class comprised of lessees whose vehicles were

seized by the NYPD and returned to the leasing company).  A class was thus defined *on consent*.

Apparently, defendants have thought better of this agreement and now claim that the class they

proposed, and plaintiff accepted with minor changes, is not precise enough to be certified.

   In any event, the proposed class, the class claims, and the relief sought are, in fact,

adequately defined.  As noted in plaintiff's moving memorandum, the Court in *Krimstock* did not

10

consider unworkable or ill-defined a class of "all persons whose vehicles have been seized by the [NYPD] upon arrest, and kept in police custody for a prospective or pending action to forfeit such vehicles . . .." *Krimstock v. Kelly*, 2005 U.S. Dist. LEXIS 43845, at *2 (S.D.N.Y. Dec. 2, 2005). Plaintiff's proposed class is a subset of the *Krimstock* class, because it is limited to lessees whose vehicles were disposed of without judicial authorization. The central class claim is that defendants have a policy or practice of denying lessees the right to seek possession of their seized vehicles through *Krimstock* hearings and civil forfeiture proceedings. The class relief sought is (1) an order declaring that lessees are entitled to *Krimstock* hearings and civil forfeiture proceedings prior to the disposition of their vehicles; (2) an injunction directing defendants to provide these procedural rights to vehicle lessees, and (3) damages for those who have sustained financial loss resulting from the denial of their due process rights. Thus, the class, class claims and class relief are more than sufficiently defined to permit certification.

## Defendants Misprepent the Procedural History of this Case

Plaintiff's letter application demonstrated at length that defendants could "hardly claim prejudice by the timing of plaintiff's application." Kessler Reply Decl. Ex. "A" at 4. Defendants did not dispute this assertion, thus conceding that there is no prejudice. Kessler Decl. Ex. "D". Now, however, defendants vaguely claim that they "had no opportunity to engage in discovery related to [class] issues." (Def. Mem. at 8). As certification is sought based on *defendants'* actions, discovery on class issues is in *defendants'* possession, not plaintiff's. Further, defendants' claimed lack of opportunity is untrue, as plaintiff provided notice of his intent to seek class status on May 1, 2008, when *none* of the parties' depositions had even commenced.

Further, because of defendants' refusal to answer class-related interrogatories or permit Sgt.

Triffon to testify on such issues, it is *plaintiff* that has been deprived of such discovery, not

defendants.[2]  But that is no bar to granting the relief sought herein.  If certification is granted,

plaintiff will subpoena from defendants all CEU case files for the past five years to ascertain

class members for notice and trial purposes.  Further, Honda is currently producing documents to

the plaintiff, pursuant to a deposition request, evidencing years of "give-back" arrangements with

defendants.  See Kessler Reply Decl. Ex. "C" (Schoolcraft Dep.) at 118-119.


**Defendants Misrepresent the Law**

Defendants contend that this motion should be denied because individual issues

predominate over class issues.  Plaintiff has already shown that defendants lack any factual basis

for this contention.  Absent factual support, defendants' legal arguments cannot stand.  Further,

defendants' argument misrepresents the law.

Defendants contend, without support, that there are possible factual scenarios within the

lessee class that cause individual issues to predominate over class issues.   (Def. Mem. at 9-10).

However, if, as plaintiff alleges and the evidence indicates, defendants treat all lessees essentially

the same by returning their vehicles to the leasing company without a hearing and without

_____

[2]Defendants claim that Sgt. Triffon "was not prepared, nor qualified" to testify to class-related matters.  Lack of preparation by counsel, however, is no basis for refusal to answer relevant questions.  Further, counsel lacks authority to choose the topics about which a witness is "qualified" to testify.  Sgt. Triffon was questioned not as an expert, but on what he knew and saw during his three-year tenure at the Civil Enforcement Unit ("CEU") as to how lessees were treated versus other registered owners.  Defendants' counsel, aware of plaintiff's intent to seek class certification, directed Sgt. Triffon not to answer such questions seeking information within his personal knowledge.  This refusal warrants an inference that his responses would have, at minimum, further supported class certification.

judicial authorization, that common issue of fact and law is alone more than sufficient to warrant class certification.

Further, defendants misrepresent the law on the issue of whether individual or class issues predominate. As plaintiff already demonstrated in his moving memorandum, proving that "questions affecting only individual members . . . predominate over . . . questions of law of fact common to the members of the class" (FRCP 23(b)(3)), is one of the most difficult grounds for successfully withstanding a motion for class certification. The standard is extremely flexible:

> Although 'a defense may arise and may affect different class members differently, [this] does not compel a finding that individual issues predominate over common ones.' So 'long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification.'

*In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)).

Indeed, FRCP 23 specifically provides that certification is favored to the extent possible, and that the Court shall certify "with respect to particular issues" even if all issues are not common to the class. Further, if circumstances warrant, "a class may be divided into subclasses . . .." FRCP 23(c)(4).

Similarly, defendants try to scare the Court by raising the specter of "individualized mini-trials" for damages. (Def. Mem. at 11). This assertion is both factually and legally misleading. Factually, all lessees whose vehicles are returned to their leasing company without judicial authorization suffer similar damages, such as loss of use, replacement costs, liability to the leasing company, and damage to their credit rating from the repossession.

13

Legally, the Second Circuit has made it clear that the mere fact that damages may differ among class members may not be used as a basis to defeat class status. *See*, *e.g.*, *In re Nassau County Strip Search Cases*, 461 F.3d at 227 (district court erred in failing to certify liability issues for class treatment, regardless of differing damage claims); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 ("[F]ailure to certify . . . on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule"). Thus, defendants mislead the Court because, in fact, individualized mini-trials may be held where appropriate. Here, differences in damages will be slight, depending on the monthly payments, length of the deprivation, and cost of insuring and replacing the car. Further, a liquidated sum can be fixed by expert testimony to compensate class members for the damage to their credit rating, which will greatly simplify this damage element.

Injunctive and Declaratory Relief: Defendants argue that certification should be denied under FRCP 23(b) because, in plaintiff's Verified Complaint, claims for declaratory and/or injunctive relief do not predominate over claims for damages. The law cited by defendants, however, is not applicable because the Verified Complaint does not purport to allege class claims. The need for certification arose from *defendants*' recent submissions, filed well *after* that pleading was filed. Thus, it is misleading for defendants to argue this issue from the perspective of the complaint. The class claims are defined not in plaintiff's complaint, but in his submissions on this motion. *Those* claims primarily seek injunctive and declaratory relief, and are based on defendants' submissions and the undisputed facts established in discovery. Defendants' arguments in this regard are therefore misleading, unfair and irrelevant.

14

Accordingly, plaintiff has more than met his burden under FRCP 23 for class certification, and defendants' response provides yet further support for granting plaintiff's motion.

## CONCLUSION

For all the foregoing reasons, plaintiff Mark Kapiti respectfully requests that this Court grant plaintiff's motions (1) for class certification, and (2) to reconsider and vacate the Court's prior Orders compelling the unsealing of plaintiff's criminal file, together with such other and further relief as this Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF STEVEN L. KESSLER

By:    *Steven L. Kessler*

Steven L. Kessler (SK-0426)
*Attorneys for Plaintiff Mark Kapiti*
122 East 42nd Street, Suite 606
New York, N.Y.  10168
(212) 661-1500

Eric M. Wagner (EW-4153)
*On the Memorandum*

15