```
                                                          1


 1

 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   ---------------------------------------------X
     MARK KAPATI,
 4
                                      PLAINTIFF,
 5

 6        -against-            Case No:
                               07 CV 3782
 7

 8   RAYMOND W. KELLY, in his official capacity as
     Commissioner of the New York  City Police
 9   Department, and THE CITY OF NEW YORK,

10                                    DEFENDANTS.
     ---------------------------------------------X
11

12                  DATE: May 29, 2008

13                  TIME: 2;15 P.M.

14

15

16        EXAMINATION BEFORE TRIAL of a Witness,

17   RITA BIENIEWICZ, taken by the Plaintiff,

18   pursuant to Notice and to the Federal Rules of

19   Civil Procedure, held at the offices of

20   Corporation Counsel, 100 Church Street, New

21   York, New York, before a Notary Public of the

22   State of New York.

23

24

25
```

23

1
2  recall.  I can tell you what my notes revealed
3  which led me to deduce that it was late May or
4  early June.
5      Q.  What was that?
6      A.  A notation of the day it reached my
7  bureau which is not in my handwriting.  It's
8  made by whoever takes it in that day from my
9  bureau and my first notatin on the action I
10 took on the case which was dated June 5.  I
11 know it had to be between the late May date
12 when it was assigned to my bureau and my first
13 action.
14     Q.  What was the first action you took
15 in the case?
16     A.  A conversation that I had with an
17 officer.
18     Q.  Who?
19     A.  Over Triffon..
20     Q.  When was that conversation?
21     A.  My notation said June 5.
22     Q.  What was the substance of that
23 conversation?
24     A.  It was regarding a Krimstock
25 hearing.

26

1
2        A.   I believe the New York Police
3   Department determines whether or not they are
4   going to release a person who has been charged
5   with a crime property that was seized.   I
6   believe it becomes relevant that the DA is
7   going to release the evidence.
8        Q.   What was the basis of your telling
9   -- so, what did you tell officer Triffon if you
10  recall?
11       A.   What I said moment ago.   The sum
12  and substance would have been that I didn't
13  intend to release the car at that time.
14       Q.   Why was that?
15       A.   Because the car was allegedly used
16  to transport fireworks; the case was new to my
17  bureau and myself and at that time I hadn't
18  made a determination as to whether or not it
19  was still arrest evidence or investigatory
20  evidence.
21       Q.   How would it be arrest evidence?
22       A.   If if was used to transport the
23  car, I might have needed to take pictures of
24  it.   I might have needed it in my case to
25  prove that the defendants took the stuff they

31

```
 1
 2    for?
 3            MR. HAZEN:  Objection. That's not
 4        her testimony.  You are misstating it.
 5        Q.   Is there anything else you needed
 6    hits car for?
 7            MR. HAZEN:  Objection.
 8        A.   I'm not answering the question.
 9        Q.   Why are you not answering the
10    question?
11        A.   You rephrase it in a different way.
12        Q.   What did you need Mr. Kapati's car
13    for you refused to release it when officer
14    Triffon spoke to you on June 5?
15            MR. HAZEN:  Objection. Asked and
16        answered.
17            MR. KESSLER:  It has never been
18        answered.
19        Q.   What did you need it for?
20        A.   When the case was assigned to me,
21    which I testified earlier was either late May
22    or early June, on June 5 which couldn't have
23    been more than ten days after the case was
24    assigned to me, I was not prepared at that
25    moment to say whether or not I would need the
```

```
 1
 2   car in any further way and that's why I said I
 3   wasn't releasing the car at that time.
 4        Q.   I'm not going to put words in your
 5   mouth but you didn't answer my question.
 6        A.   Rephrase it.
 7        Q.   My question was: Well -- my
 8   question was: On June 5, 2006, at the time you
 9   spoke to officer Triffon, what did you need the
10   car for that led to your not releasing it?
11        A.   What I needed the car for.
12             MR. HAZEN:  Objection to form.
13        A.   What I needed the car for was to
14   make sure I had an opportunity to decide
15   whether or not I needed the car.  That's why I
16   needed the car still in my possession.
17        Q.   When did you finally determine that
18   you no longer needed the car as evidence?
19             MR. HAZEN:  Objection to form.
20        A.   There were steps that happened
21   along the way.  If you want to ask me about
22   those first.
23        Q.   Why don't you tell me about them.
24        A.   To the approximate best of my
25   recollection, the defense attorney -- the
```

32

60

```
 1
 2   time.
 3        Q.   When you spoke to officer Triffon,
 4   did he tell you anything about a Krimstock
 5   hearing in the Kapiti case?
 6             MR. HAZEN:  Objection.
 7        Q.   The first time?
 8             MR. HAZEN:  Objection.
 9        A.   I did answer that question before.
10   That's the only reason I was speaking to him.
11             MR. KESSLER:  Tell me again why
12        were you speaking to him on June 5.
13        A.   To tell him that I wasn't prepared
14   to release the car.
15        Q.   But did he tell you about a
16   Krimstock hearing during that conversation?
17        A.   During that conversation, I'm not
18   sure as I testified before, I'm not sure if he
19   called me first, I called him back.  On the
20   conversation I made the notation, I don't know
21   if that exact phone call was myself calling him
22   or him calling me but it was regarding a
23   Krimstock hearing and it was -- -- I was
24   calling to tell him or picking up his phone
25   call to return my call to say not releasing the
```

                                                              62

1
2          Q.   Do you know if it's someone who
3     works with the Bronx DA's office?
4          A.   I'm assuming because of the e-mail.
5     Other than that I have no idea what his status
6     is, if they are staff, ADA.
7          Q.   Is it somebody who works -- --
8     fine.  Withdrawn.  Does the time e-mail
9     address at Bronx DA dot N Y C dot GOV refresh
10    your recollection as to whether Mr. Quelch
11    worked for the DA's office on Wednesday, May
12    31, 2006?
13         A.   I know he was assigned the Bronx DA
14    e-mail address.  My assumption it that he was
15    employed in some sense by the Bronx DA's
16    office. I couldn't tell you what he did or who
17    he was.
18         Q.   Do you know if he's still with the
19    office?
20         A.   I don't know who he is.
21         Q.   Your conversation on June 5, 2006
22    with officer Triffon, did he tell you when the
23    Krimstock hearing was scheduled for?
24         A.   I don't recall.
25         Q.   Did you speak to him -- -- you

63

1
2   spoke to him on that date; correct?
3       A.   My notation says I did.
4       Q.   Do you have any independent?
5       A.   I have a vague independent
6   recollection of speaking with him.
7       Q.   On that date?
8       A.   I couldn't tell you.  I don't
9   specifically remember talking to someone on
10  June 5, 06.
11      Q.   Do you have any recollection of
12  speaking to him about this case on any other
13  dates?
14      A.   I don't recall.
15      Q.   Is there anything that would
16  refresh your recollection as to that?
17      A.   Not that I know of.
18      Q.   Would your folder refresh your
19  recollection?
20      A.   No.  I already looked in my folder.
21      Q.   Would you have kept notes that
22  conversation?
23      A.   The only notation I have regarding
24  officer Triffon to my knowledge is the notation
25  that says I spoke with him on June 5.