1

1          ROUGH DRAFT

2    UNITED STATES DISTRICT COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 07CV3782

5    - - - - - - - - - - - - - - - - - -x

6    MARK KAPITI,

7                    Plaintiff,

8         -against-

9    RAYMOND W. KELLY, in his official
     Capacity as Commissioner of the New York
10   City Police Department, Property Clerk,
     NEW YORK CITY POLICE DEPARTMENT, and THE
11   CITY OF NEW YORK,

12                   Defendants.

13   - - - - - - - - - - - - - - - - - -x

14                   100 Church Street
                     New York, New York
15
                     May 28, 2008
16                   10:40 a.m.

17

18      DEPOSITION of GEORGE TRIFFON, a

19   non-party witness in the above-entitled

20   action, held at the above time and place,

21   taken before Brian Glickman, a Shorthand

22   Reporter and Notary Public of the State of

23   New York, pursuant to the Federal Rules of

24   Civil Procedure, Notice and stipulations

25   between Counsel.

23

```
1                ROUGH DRAFT

2      A     I couldn't say.

3      Q     Did Mr. Fodera have a

4  supervisor?

5      A     Yes.

6      Q     Who was that?

7      A     That would be the commanding

8  officer of the unit, Robert Messner.

9      Q     Is Mr. Messner a police officer?

10     A     No.

11     Q     Is Mr. Fodera?

12     A     No.

13     Q     Are they both attorneys?

14     A     To my knowledge.

15     Q     And what about Ms. Russo, is she

16  a police officer?

17     A     No.

18     Q     Is she an attorney?

19     A     As far as I know.

20     Q     Did Mr. Messner have a

21  supervisor?

22     A     I couldn't say who his

23  supervisor was.

24     Q     Did you ever deal with someone

25  named John Curry?
```

24

```
1              ROUGH DRAFT

2     A     Sure.

3     Q     What was his title?

4     A     I believe he was another

5  executive officer.

6     Q     Similar to?

7     A     Robert Fodera.

8     Q     All right.  As far as you know,

9  has the structure of the Civil Enforcement

10 Unit changed since you've left?

11    A     I don't know.

12    Q     Let's focus on this case.  Do

13 you have any independent recollection as

14 to what happened in this case?

15    A     Specifically?

16    Q     About the vehicle seizure.

17    A     I have no independent

18 recollection of this case.

19    Q     Other than you being called to

20 testify today, do you recall anything out

21 of the ordinary or unusual in the way your

22 office handled this case?

23          MR. HAZAN:  Objection to form.

24    A     I do not recall anything.

25    Q     What role did you play with
```

```
1              ROUGH DRAFT

2   regard to this case, the Kapiti case?

3       A    Again, I have no independent

4   recollection of my role.

5       Q    Do you recall when you became

6   involved in it?

7       A    I do not.

8       Q    Do you remember when the vehicle

9   was seized?

10      A    I do not.

11           MR. KESSLER:  Off the record.

12           (Discussion off the record.)

13           MR. KESSLER:  Could you mark

14      these, please, as Plaintiff's 1

15      through 11.

16           (Marked Plaintiff's Exhibits 1

17      through 11 for identification as of

18      today's date.)

19           MR. HAZAN:  The witness requests

20      a copy of the transcript from

21      plaintiff pursuant to the federal

22      rules so that he can review and

23      correct it for any errors that may be

24      contained in the transcript.

25           MR. KESSLER:  I'm still waiting
```

38

```
 1              ROUGH DRAFT

 2   page two is the oldest date?

 3              MR. HAZAN:  Objection to form.

 4      A      Based exclusively on the time

 5   and date stamps that appear at the

 6   beginning of each entry, I would say that

 7   is a correct statement.

 8      Q      So the first entry on this, on

 9   Plaintiff's Exhibit 1 would be the last

10   entry on page two?

11              MR. HAZAN:  Note my objection to

12      form.

13      Q      Is that correct?

14      A      I would agree with that

15   assessment.

16      Q      Okay.  Look at the earliest

17   entry which would be the full entry on

18   page two, if you would, did you input that

19   entry?

20      A      I have no independent

21   recollection of making this entry.

22      Q      Take a look at the last line

23   where it says Honda Finance will take

24   possession, Honda signed HH file to basket

25   for approval, GT.  Is GT you?
```

```
 1                ROUGH DRAFT

 2        A     GT are my initials.

 3        Q     Would that mean that you put

 4   this information into the computer?

 5        A     It is an indication that I made

 6   that entry.

 7        Q     You have no independent

 8   recollection of it though?

 9        A     I have no independent

10   recollection and it is not certain, but it

11   is an indication that I made that entry.

12        Q     Do you have any recollection of

13   why you would have put this information

14   into the computer?

15        A     None whatsoever.

16        Q     And the date that this was

17   entered was what?

18        A     Reading from the page it says

19   06-02-2006.

20        Q     Other than the date and the time

21   stamp on this document, is it fair to say

22   you have no independent recollection of

23   this?

24        A     Including the time and date, I

25   have no independent recollection of this.
```

40

```
 1              ROUGH DRAFT

 2      Q     Correct?

 3      A     Right.

 4      Q     Do you have any recollection of

 5   speaking with Honda?

 6      A     I do not.

 7      Q     Or anybody at Honda?

 8      A     I do not.

 9      Q     Let me show you what has been

10   marked Plaintiffs' Exhibit 10, tell me if

11   you recognize it?

12      A     I don't recognize this specific

13   document, but again, the format looks

14   familiar to me.

15      Q     Have you ever seen that document

16   before, to the best of your recollection?

17      A     I don't remember.

18      Q     Let me show you what has been

19   marked Plaintiff's Exhibit 11.  The same

20   question, have you ever seen that before?

21      A     I have not.

22      Q     Do you have any recollection of

23   seeing that document?

24      A     No recollection whatsoever.

25      Q     Okay.  On Plaintiff's
```

```
 1              ROUGH DRAFT
 2   Exhibit 11, do you have any recollection
 3   of the substance of that letter?
 4              MR. HAZAN:  Objection to form.
 5        A     No.
 6        Q     Let's go back to Plaintiff's 1.
 7   Can you tell me, Sergeant Triffon, if the
 8   hearing for Mr. Kapiti ever took place?
 9              MR. HAZAN:  Objection to form.
10        Q     The Krimstock hearing?
11        A     I have no independent
12   recollection of whether or not it took
13   place.
14        Q     Does this document help you?
15              MR. HAZAN:  Objection to form.
16        A     The document doesn't help my
17   independent recollection.
18        Q     Does it indicate if a hearing
19   was held?
20        A     I don't see any indication on
21   here as to whether or not a hearing was
22   held.
23        Q     Does it indicate whether a
24   hearing was not held?
25        A     That's really the same question.
```

42

1              ROUGH DRAFT

2      Q     Only in reverse, but I'm just

3   making sure that it doesn't say anything

4   about whether a hearing was held or not,

5   correct?

6              MR. HAZAN:  Objection to form.

7      A     The hearing disposition line we

8   referred to before gives some indication

9   that no hearing was held.

10     Q     That's the word no at the end of

11  that line?

12     A     Correct.

13     Q     Does it indicate why a hearing

14  was not held?

15     A     Reading from the page, it states

16  needed by DA as evidence.

17     Q     Is that why a hearing was not

18  held?

19     A     I can't say for sure.

20     Q     On the bottom of page one

21  continuing onto page two, there's an entry

22  dated 6-5-06, do you see that?

23     A     I do.

24     Q     The June 5th date is the same

25  date as is listed under hearing notice, do

58

1            ROUGH DRAFT

2      Q      The next entry that would be on

3   page one of Plaintiff's 1, do you see the

4   date on that?

5      A      You are referring to the entry

6   immediately above the June 5th entry?

7      Q      Yes.

8      A      The date reads 7-10-2006.

9      Q      And that entry says awaiting.

10   DAR what does that mean?

11      A      It seems to indicate awaiting

12   the district attorney's release.

13      Q      And at the end of that it says,

14   "File to cabinet.  GT."  Those are your

15   initials again, although you don't have

16   specific recollection of that, correct?

17      A      Correct.

18      Q      Okay.  I want to show you what

19   has been marked Plaintiff's 5, have you

20   ever seen it before?

21      A      I can't say for certain if I

22   have ever seen this particular document,

23   but the format is familiar to me.

24      Q      What is it familiar as?

25      A      Part of a set of interoffice

1                    ROUGH DRAFT

2    memos inside the police department.   In

3    trial office I should say.

4        Q      What's the date on this

5    document?

6        A      Reading from the document, June

7    2nd, 2006.

8        Q      And this is document Bates

9    stamped NYC 15 and turned over as part of

10   the discovery by the City.  Whose

11   signature is in the middle of the page

12   there, if you know?

13              MR. HAZAN:  Objection to form.

14       A      I don't know.

15       Q      You've never seen that signature

16   before?

17              MR. HAZAN:  Objection.

18       A      I don't remember, it doesn't

19   look familiar to me.  I do not know.

20       Q      Is there a date next to the

21   signature right underneath the signature

22   line?

23              MR. HAZAN:  Objection.

24       A      I see the digit, 6-2-06.

25       Q      That correlates to the June 2,

```
 1              ROUGH DRAFT

 2   2006, at the top of the page, correct?

 3              MR. HAZAN:  Objection.

 4       A     Yes.

 5       Q     And below the signature it says

 6   the name of Robert F. Messner, correct?

 7       A     Yes.

 8       Q     And he would be the man in

 9   charge at the Civil Enforcement Unit?

10       A     He's the commanding officer of

11   the Civil Enforcement Unit.

12       Q     On the bottom of the page, the

13   left-hand side, do you see where it says

14   DAs release received verbal written?

15       A     Yes.

16       Q     Do you see the box to the left

17   of that?

18       A     I do.

19       Q     Do you see that it's checked?

20       A     I do.

21       Q     And do you see the word written

22   to the right is circled, correct?

23       A     I agree.

24       Q     What does that mean?

25              MR. HAZAN:  Objection.
```

61

```
 1              ROUGH DRAFT

 2      A    What does it mean?

 3      Q    Yes.

 4      A    I mean, I can just read from it

 5  the same as you can.  It says district

 6  attorneys release received and the word

 7  written is circled.

 8      Q    So a written release was

 9  received and that box was checked off?

10           MR. HAZAN:  Objection.

11      A    It would seem to indicate that,

12  I can't say for certain that it was

13  actually received.

14      Q    Do you know whose signature is

15  at the bottom right of the document?

16      A    I don't.

17           MR. KESSLER:  Off the record.

18           (Discussion off the record.)

19      Q    Back on the record.

20           Let me show you what has been

21  marked as Plaintiffs' Exhibit 2.

22      A    Okay.  The document is Bates

23  stamped NYC 16 handed over as part of

24  discovery by the City, have you ever seen

25  this before.
```

```
 1              ROUGH DRAFT

 2              MR. KESSLER:  Off the record.

 3              (Discussion off the record.)

 4      Q       Back on the record.  Let's go

 5    back to Plaintiffs' Exhibit 3.  Did you

 6    prepare this letter, this memo?

 7      A       I don't have any independent

 8    recollection of having prepared it.  My

 9    signature is at the bottom of the letter

10    indicating that I did.

11      Q       Is there any reason for you to

12    believe that you did not prepare this

13    letter as you see it here today?

14      A       You'd have to clarify the word

15    "prepare."  This is a form letter used

16    within the police department.  So likely I

17    did not draft it, but by having signed it,

18    I likely read it.

19      Q       Explain that likely you did not

20    draft it?

21      A       This letter is part of a

22    package, I believe, of three letters that

23    stay within the office generally as just

24    updates for the status of a case.  The

25    language on each of them is typically
```

1              ROUGH DRAFT

2    exactly the same with changes only in the

3    date and the people involved.

4         Q     And the car?

5         A     And the vehicle.  Dates, storage

6    numbers et cetera, so for sake of

7    clarification of my answer, it appears as

8    though I signed this letter, but the word

9    prepare again it's unlikely that I

10   actually drafted the letter in its

11   entirety.

12        Q     Would you have filled in those

13   blanks that you indicated just a moment

14   ago?

15             MR. HAZAN:  Objection.

16        Q     Would you have filled in seizure

17   number, storage number, the date, the type

18   of car things like that?

19        A     Possibly.

20        Q     Who is it sent to, you said it

21   is part of a package, who is the assistant

22   commissioner, Civil Enforcement Unit?

23             MR. HAZAN:  Objection.  Is the

24        question who is that or is it who was

25        it sent to?

77

```
 1                ROUGH DRAFT

 2      Q     This document is addressed to

 3  whom, Sergeant?

 4      A     Based on the document in front

 5  of me, it appears to be addressed to the

 6  assistant commissioner of the Civil

 7  Enforcement Unit, which to the best of my

 8  recollection on the date -- at the time

 9  the letter was dated was Robert Messner.

10      Q     I'm going to show you what has

11  been marked Plaintiff's 4.  Do you know

12  what that is?

13      A     It appears to be the second of

14  three in-house letters that circulate the

15  Civil Enforcement Unit for informational

16  purposes.

17      Q     And if you could, just for a

18  moment, go back to Plaintiff's 3, what was

19  the date on that?

20      A     Plaintiff's 3 is dated June 2nd,

21  2006.

22      Q     What about Plaintiff's 4?

23      A     Plaintiff's 4 is dated June 2nd,

24  2006.

25      Q     And from whom and to whom is
```

78

```
 1              ROUGH DRAFT

 2   this memo?

 3              MR. HAZAN:  Objection.

 4       Q     It's written by whom?

 5              MR. HAZAN:  Objection.

 6       A     Based strictly on the letter in

 7   front of me, the line from says assistant

 8   commissioner Civil Enforcement Unit.

 9       Q     And that was Mr. Messner at the

10   time?

11       A     To the best of my knowledge on

12   June 2, 2006, that was Robert Messner and

13   it's addressed to the commanding officer

14   of the property clerk division.

15       Q     Who is that?

16       A     That I don't know, or that I

17   don't recall rather.

18       Q     Is this one of the other parts

19   of the packet that you referred to moments

20   ago?

21       A     Correct.

22       Q     Of the three letters?

23       A     Correct.

24       Q     So Plaintiff's 3 is one,

25   Plaintiff's 4 is another?
```

```
 1              ROUGH DRAFT

 2      A     Correct.

 3      Q     And would Plaintiff's 5 been the

 4   third which I believe I've shown you

 5   before?

 6      A     To my memory, this would

 7   represent the third of the package that is

 8   usually prepared together.

 9      Q     And it appears that all three

10   are dated the same date, correct?

11      A     Correct.

12      Q     Plaintiff's 4 indicates in bold

13   letters in the top there, the case has

14   been settled, please release the vehicle

15   to the properly identified bearer of

16   release showing valid ownership of the

17   vehicle, correct?

18      A     That's what it says, yes.

19      Q     Yet on the top right next to the

20   word settle it has the word "none," do you

21   see that?

22      A     I do see that.

23      Q     What does that mean?

24            MR. HAZAN:  Objection.

25      Q     If you know.
```

```
 1              ROUGH DRAFT

 2      A     I do not know or rather I don't

 3   recall.

 4      Q     But based upon these three

 5   documents as a whole I guess, as of

 6   June 2, 2006, the Civil Enforcement Unit

 7   had released the vehicle to the properly

 8   identified bearer of release showing valid

 9   ownership of the vehicle correct answering

10   his questions for him?

11              MR. HAZAN:  What?

12              MR. KESSLER:  Are you answering

13      his questions for him?

14              MR. HAZAN:  I certainly am not.

15      Q     Okay.

16      A     If the question is does this

17   indicate that June 2, 2006, the vehicle

18   was released --

19      Q     No.

20      A     Okay.

21      Q     The question is as of June 2,

22   2006, The Civil Enforcement Unit had

23   released the vehicle and closed its case

24   regarding property clerk versus Mark

25   Kapiti?
```

```
 1              ROUGH DRAFT

 2              MR. HAZAN:  Objection.

 3       Q     The vehicle involving Mr.

 4  Kapiti, correct?

 5              MR. HAZAN:  Objection.

 6       A     No.

 7       Q     No?

 8       A     The documents you are referring

 9  to and I have just looked over appear to

10  indicate an intent to release the vehicle.

11       Q     So if I had -- if I was in

12  possession of let's say all three of these

13  documents and I went to the pound where

14  the car was held and I presented it with

15  proper identification as the owner, would

16  I get the vehicle back?

17              MR. HAZAN:  Objection.

18       A     First of all, I'm not

19  comfortable answering it as a

20  hypothetical.  And even as a hypothetical

21  it's flawed in that, other than the third

22  marked Plaintiffs' Exhibit 5.

23       Q     Yes?

24       A     These documents stay within the

25  police department so --
```

```
 1              ROUGH DRAFT

 2      Q     So let's use Plaintiff's 5.

 3      A     Okay.

 4      Q     I take that to the pound, show a

 5  proper ID, do I get the car back?

 6            MR. HAZAN:  Objection.

 7      A     All other things -- I can't say

 8  with certainty you would get the car back,

 9  but the indication here is that the legal

10  bureau has authorized the release of the

11  vehicle.  So I mean, you're stating simply

12  showing up with this one piece of paper

13  you are asking if that is enough to have

14  the car released, my answer would be no.

15      Q     My question is Plaintiff's 5,

16  this letter, it says notice to vehicle

17  claimant's.  Do you see the bottom

18  portion?

19      A     Yes.

20      Q     This letter gives the titled

21  owner authorization to claim the above

22  vehicle from the college point pound, then

23  next line, in capital letters, claim it

24  immediately.  Do you see that?

25      A     I do.
```

83

```
 1              ROUGH DRAFT
 2      Q      Okay.  So let me rephrase my
 3  question.  With the documents that this
 4  letter says I have to have, the
 5  certificate of title, notarized copy of
 6  the title, government issued photo
 7  identification, I take this to the pound,
 8  the pound looks at it with the other
 9  document, do I get the vehicle back?
10              MR. HAZAN:  Objection.
11      A      I mean, reading what you just
12  read it would indicate that to me, but I
13  can't testify that that's true.
14      Q      What would make it not true?
15              MR. HAZAN:  Objection.
16      A      The letter appears to give
17  authority to the person named on it to
18  pick up the vehicle that's about the most
19  I can state.
20      Q      If this didn't give me authority
21  to pick up my car or if this didn't give
22  the person named on here or entity
23  authority to pick up the car, then what
24  value would this document be?
25              MR. HAZAN:  Objection.
```

84

```
 1              ROUGH DRAFT
 2      A     I don't know.
 3      Q     I don't either.  Okay.  If you
 4  wish to have a minute with the witness you
 5  may, but writing notes down on your pad,
 6  I'm not going to tolerate and I'm going to
 7  ask for a copy of the notes that you are
 8  making and crossing out if this continues?
 9          MR. HAZAN:  I'm not writing
10      notes on my pad.
11          MR. KESSLER:  You wrote the word
12      no, you wrote the word which I can
13      read upside down, so please.
14          THE WITNESS:  Can we take a
15      break then?
16          MR. KESSLER:  Sure.
17          Off the record.
18          (Discussion off the record.)
19              (Brief recess was
20      taken.)
21      Q     Back on the record.  Just as a
22  statement for the record, and I know I
23  don't have to tell you this.  You are the
24  one under oath.  I don't want anything
25  that is not true, I don't want anything
```

85

1              ROUGH DRAFT

2    that is fabricated or false from your

3    testimony.  Your attorney can say whatever

4    he wants, he's not the one under oath.

5    Okay.  So if you don't know, you don't

6    know, if you do know, please give the

7    correct and truthful answer.  That's all

8    I'm asking from you here.

9              Refer to Plaintiff's Exhibit 1

10   please.  We said earlier bottom of page

11   one there is an entry on July 10, 2006, do

12   you see that?

13       A    I do.

14       Q    Which has your initials at the

15   end of the entry.  Do you recall what

16   happened on or about July 10, 2006, that

17   caused you to make that entry?

18       A    I do not.

19       Q    Let me show you what has been

20   marked Plaintiff's Exhibits 6 and 7, do

21   these documents refresh your recollection

22   as to what may have happened on July 10,

23   2006, to cause you to make that entry?

24       A    It does not refresh any

25   recollection, no.

88

1              ROUGH DRAFT

2       A       I don't recall any calls from

3    leasing companies.

4       Q       Do you recall any calls from tow

5    truck operators?

6       A       No.

7       Q       In June and July of 2006, was

8    there another George working at Civil

9    Enforcement unit?

10      A       Not that I know.

11      Q       Were you ever involved in a case

12   where there were competing claims to a

13   particular vehicle?

14              MR. HAZAN:  Objection.

15      A       None that I can recall.

16      Q       To your knowledge, did there

17   come a time when you received a copy of

18   the district attorney's release in the

19   Kapiti case?

20      A       Not that I remember.

21      Q       Looking at Plaintiff's

22   Exhibit 1, does it refresh your

23   recollection?

24      A       There's nothing in Plaintiff's

25   Exhibit 1 that refreshes my recollection

89

```
 1              ROUGH DRAFT
 2   as to whether or not I received or our
 3   office received a district attorney's
 4   release.
 5        Q     I'm going to go back for a
 6   minute to Plaintiff's 3, 4 and 5, those
 7   are the three documents, the packet that
 8   you referred to?
 9        A     Okay.
10        Q     This case involves Honda, so if
11   you want to relate it to this case you
12   may, but I'm asking more of a general
13   question, how is the release given to the
14   claimant of the vehicle when the vehicle
15   is returned to the claimant, how is that
16   done; is it mailed, is it picked up by the
17   claimant, in general in your experience,
18   how is that done?
19              MR. HAZAN:  Objection.
20        A     I definitely do not remember,
21   any of the above is certainly possible.
22        Q     You indicated that Plaintiff's 3
23   and 4 are internal documents, correct?
24        A     Correct.
25        Q     So if a vehicle was being
```